UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY BOLDING, and MICHAEL MANFREDI, individually and on behalf of a class of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>BANNER BANK, a Washington Corporation,<br><br>               Defendant. | No. C17-0601RSL<br><br>DEFENDANT BANNER BANK'S OPPOSITION TO PLAINTIFFS' PRE-DISCOVERY MOTION FOR COLLECTIVE ACTION CERTIFICATION UNDER 29 U.S.C § 216(b) AND TO SEND NOTICE TO THE COLLECTIVE<br><br>***Note on Motion Calendar:***<br>September 1, 2017 |

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL)
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 2

    A.   Banner, AWB, and the MLO Position. .................................................... 2

    B.   Banner's and AWB's Pay Policies. .......................................................... 4

        1.   Banner and AWB Prohibited Off-the-Clock Work. ..................... 4

        2.   Banner and AWB Included Commissions in the Overtime Rate.............. 6

    C.   Plaintiffs and Their Allegations. ............................................................. 7

III. ARGUMENT ........................................................................................................ 8

    A.   Plaintiffs Misstate the Conditional Certification Standard in Three
        Respects. .................................................................................................. 8

        1.   Plaintiffs' Showing Cannot Rest on Mere Allegations Without
            Admissible Evidentiary Support. ................................................ 8

        2.   Plaintiffs Must Show a Common Decision, Policy, or Plan that
            Required Off-the-Clock Overtime and Imputed Management
            Knowledge. .................................................................................. 9

        3.   Individualized Inquiries Are Relevant to Plaintiffs' Showing in an
            Off-the-Clock Case. ................................................................... 11

    B.   The Court Should Not Conditionally Certify the Off-the-Clock Claim. ............... 11

        1.   Banner's Evidence of Consistently Lawful Overtime Policies and
            Practices Trumps Plaintiffs' Meager Showing. ......................... 11

        2.   Plaintiffs Have Not Shown Common Proof on Three Required
            Elements..................................................................................... 12

            a.   Plaintiffs Have Not Shown a Company-Wide Policy or Practice
                Requiring Overtime. ..................................................... 12

            b.   Plaintiffs Have Not Shown a Common Practice Prohibiting MLOs
                from Recording and Being Paid for Overtime............................. 15

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - i
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

      c.     Plaintiffs Also Fail to Show Any Common Evidence that Banner and AWB Knew or Should Have Known About Unreported Overtime. ..................................................................................... 16

    3.    Courts Confronting Similar Records Consistently Deny Certification in Off-the-Clock Cases. ....................................... 17

    4.    Plaintiffs Misplace Reliance on Inapposite or Easily Distinguishable Cases. ............................................... 18

C.    The Court Also Should Not Conditionally Certify the Regular Rate Claim. ....... 19

D.    If the Court Conditionally Certifies Any Claims, It Should Modify Plaintiffs' Requested Notice Procedures. ............................................. 19

    1.    The Court Should Limit the Notice to AWB and Banner MLOs Employed Within Three Years Plus Two Weeks of the Mailing. ........... 20

    2.    The Court Should Deny Plaintiffs' Request for Telephone Numbers and Dates of Birth. .................................................... 21

    3.    The Court Should Revise Plaintiffs' Proposed Notice in Several Respects. .................................................................... 21

        a.     The Court Should Revise the Notice to Observe Judicial Neutrality. .................................................................... 21

        b.     The Court Should Omit Plaintiffs' Lengthy and Unnecessary Definition of Hours Worked. ....................................... 22

        c.     The Court Also Should Revise the Notice to Inform Putative Collective Members that They May Be Liable for Banner's Costs if Banner Prevails. ............................... 24

IV.    CONCLUSION .................................................................... 24

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - ii
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Adair v. Wis. Bell, Inc.*,
2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)......................................................9, 18, 19, 24

*Adams v. Inter-con Sec. Sys., Inc.*,
242 F.R.D. 530 (N.D. Cal. 2007)..............................................................................18, 22, 24

*Barrera v. US Airways Grp., Inc.*,
2013 WL 4654567 (D. Ariz. Aug. 30, 2013).....................................................................22

*Benson v. W. Coast Constr.*,
2007 WL 445456 (W.D. Wash. Feb. 6, 2007) (Martinez, J.) ..................................................8

*Castle v. Wells Fargo Fin. Inc.*,
2008 WL 495705 (N.D. Cal. Feb. 20, 2008) ...................................................................10, 18

*Douglas v. Xerox Bus. Servs., LLC*,
2014 WL 3396112 (W.D. Wash. July 10, 2014) ...........................................................8, 10, 17

*Fisher v. Mich. Bell Tel. Co.*,
665 F. Supp. 2d 819 (E.D. Mich. 2009).............................................................................18

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
646 F.2d 413 (9th Cir. 1981) .......................................................................................9, 12

*Greenwald v. Phillips Home Furnishings, Inc.*,
2009 WL 259744 (E.D. Mo. Feb. 3, 2009)............................................................................10

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989).......................................................................................................21

*In re Well Fargo Home Mortg. Overtime Pay Litig.*,
527 F. Supp. 2d 1053 (N.D. Cal. 2007) ...............................................................................18

*Khadera v. ABM Indus. Inc.*,
2011 WL 7064235 (W.D. Wash. Dec. 1, 2011) .......................................................................9

*Labrie v. UPS Supply Chain Solutions, Inc.*,
2009 WL 723599 (N.D. Cal. Mar. 18, 2009)..........................................................................21

*LaFleur v. Dollar Tree Stores, Inc.*,
2012 WL 4739534 (E.D. Va. Oct. 2, 2012)......................................................................11, 18

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Lentz v. Spanky's Rest. II, Inc.*,
   491 F. Supp. 2d 663 (N.D. Tex. 2007) ..................................................9

*Misra v. Decision One Mortg. Co.*,
   673 F. Supp. 2d 987 (C.D. Cal. 2008) ..................................................21

*Nieddu v. Lifetime Fitness, Inc.*,
   977 F. Supp. 2d 686 (S.D. Tex. 2013) ..................................................11

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ..................................................5

*Randolph v. Centene Mgmt. Co.*,
   2015 WL 2062609 (W.D. Wash. May 4, 2015)........................10, 11, 18

*Richardson v. Wells Fargo Bank, N.A.*,
   2012 WL 334038 (S.D. Tex. Feb. 2, 2012) ..................................10, 17

*Richie v. Blue Shield of Cal.*,
   2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ..................................................8

*Sheffield v. Orius Corp.*,
   211 F.R.D. 411 (D. Or. 2002) ..................................................8, 11

*Simmons v. T-Mobile USA, Inc.*,
   2007 WL 210008 (S.D. Tex. Jan. 24, 2007) ..................................................18

*Stickle v. SCI W. Mkt. Support Ctr., LP*,
   2009 WL 3241790 (D. Ariz. Sept. 30, 2009)..................................................21

*Tice v. AOC Senior Home Health Corp.*,
   826 F. Supp. 2d 990 (E.D. Tex. 2011) ..................................................18

*Velasquez v. HSBC Fin. Corp.*,
   266 F.R.D. 424 (N.D. Cal. 2010) ..................................................10, 17

*Walker v. Health & Hosp. Corp. of Marion Cty.*,
   2016 WL 7179370 (S.D. Ind. Dec. 9, 2016)..................................................17

*Wilson v. Maxim Healthcare Servs., Inc.*,
   2014 WL 7340480 (W.D. Wash. Dec. 22, 2014) ..................................10, 18, 21

*Woods v. N.Y. Life Ins. Co.*,
   686 F.2d 578 (7th Cir. 1982) ..................................................9

*Zachary v. Cobalt Mortg., Inc.*,
   2017 WL 1079374 (E.D. Tex. Mar. 22, 2017) ..................................................18

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - iv
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**FEDERAL STATUTE**

29 U.S.C. § 255(a) ..........................................................................................................20

**REGULATIONS**

29 C.F.R.
   §§ 778.117–.120 ....................................................................................................6
   § 778.119 .............................................................................................................6

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - v
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

Plaintiffs Kelly Bolding, Michael Manfredi, and Miranda Taylor seek to conditionally certify a Fair Labor Standard Act ("FLSA") collective containing approximately 148 Mortgage Loan Officers ("MLOs") who worked for multiple banks in at least five different states.[1]  In support, they offer their own declarations claiming that they worked unreported overtime in just three offices, along with the deposition of another MLO from one of those offices.  Based on that showing, they claim that Banner Bank ("Banner"), AmericanWest Bank ("AWB") (which Banner acquired), and other banks for which no Plaintiff worked (1) required all MLOs to work overtime and refused to pay them for it; and (2) omitted commissions from the regular rate.  That proof falls far short of Plaintiffs' burden at conditional certification to make at least a modest showing with admissible evidence that the putative collective members are similarly situated— particularly given Banner's MLO and manager declarants who testify that Banner followed its lawful policies.  For the following reasons, the Court should deny conditional certification or at least narrow Plaintiffs' proposed collective and revise Plaintiffs' proposed notice.

*First*, the Court should not certify an off-the-clock claim.  To certify that claim, Plaintiffs must demonstrate a common decision, policy, or practice that AWB and Banner required off-the-clock overtime, and that AWB and Banner knew or should have known about that off-the-clock work.  Here, Banner's and AWB's policies expressly prohibited off-the-clock work, and Plaintiffs' attempts to rebut those policies rely on hearsay, speculation, and statements that their own evidence contradicts.  That showing is not sufficient.

*Second*, the Court also should deny certification on the regular-rate claim, where Plaintiffs' showing is even thinner.  At most, they say they "do not believe" AWB and Banner included the commissions in the regular rate; but Banner undisputedly has shown that it and AWB included commissions in the regular rate.

---

[1] Banner refers to loan officers as "MLOs" in this brief, even though some loan officers had slightly different titles during the purported liability period, such as Residential Loan Officer ("RLO") and Residential Lender ("RL").

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 1
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    ***Third***, if the Court conditionally certifies either claim, it should narrow Plaintiffs'

2    proposed collective to only those who worked for Banner or AWB—and not any other banks

3    Banner acquired—because Plaintiffs provide no evidence regarding compensation practices at

4    those other banks.  The Court also should limit the notice to individuals employed within

5    approximately three years of the notice mailing because only those MLOs could have FLSA

6    claims that are not already time-barred.  Finally, the Court should revise Plaintiffs' proposed

7    notice to ensure it is neutral, concise, and adequately discloses litigation risks.

## II.    FACTUAL BACKGROUND

### A.    Banner, AWB, and the MLO Position.

10    Banner is a Washington-chartered commercial bank serving clients in Washington,

11    Oregon, California, Idaho, and Utah.  Baggarley Decl. ¶ 4.  Banner provides mortgage lending

12    and origination services (among many others).  *Id.*  Since August 2014, Banner employed

13    approximately 139 different MLOS, and those MLOs have worked in approximately 52 branches

14    across five states.  Boettcher-Milleville Decl. ¶ 8.

15    In October 2015, Banner completed the acquisition of AWB, which also provided

16    mortgage services.  Muller Decl. ¶ 1.  Between August 2014 and October 2015 when its

17    operations ceased, AWB employed approximately 31 different loan officers, and those loan

18    officers worked in approximately 29 different branches across four states.  Boettcher-Milleville

19    Decl. ¶ 5.  In total, AWB and Banner together employed approximately 148 different loan

20    officers in at least 52 branches across five states.  *Id.* ¶¶ 8–9.

21    MLOs at both Banner and AWB assisted clients with mortgage lending needs but

22    performed those duties in different ways because they had flexibility to determine their own

23    business plans and hours.  *See, e.g.*, Case Decl. ¶¶ 8, 15, 23 (manager declaration confirming

24    MLOs have flexibility to determine their business plans and hours); Schroder Decl. ¶ 11 (same);

25    Johnson Decl. ¶ 11 ("My job as an RLO is highly self-directed, and I have the flexibility to

26    balance my own schedule."); Hernandez Decl. ¶ 11 ("My managers do not like to 'micromanage'

27

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 2
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

and my job as an RLO is highly self-directed.").[2]  For example, Banner and AWB did not require MLOs to work or be in the office during particular hours.  *See, e.g.*, Case Decl. ¶ 28; Schroder Decl. ¶ 8; Hawley Decl. ¶ 13 ("[S]ometimes when I work late, I take time off during the middle of the next day to run errands or come into work an hour or two later.").  Indeed, many MLOs liked the position because of its flexible hours and their ability to modify their own schedules to accommodate their work and personal lives.  *See, e.g.*, Enrico Decl. ¶ 12 ("I like to have a work-life balance and I would not have accepted my position at Banner Bank if I was told I needed to work more than 40 hours per week."); Hawley Decl. ¶ 11 ("I have the flexibility to balance my own schedule around the client meetings I have scheduled and my own personal schedule.").

Some MLOs chose to work a traditional schedule with little (if any) work outside those hours, while others chose to take more time off during traditional workdays and to work more on nights and weekends.  *See, e.g.*, Hernandez Decl. ¶ 16 ("I rarely work in the early mornings, in the evenings, and on weekends."); Keeney Decl. ¶ 11 ("I have two young children, so often times I will leave the office early to spend time with them and work for a few hours in the evening."); Johnson Decl. ¶ 11 ("[M]y elderly mother lives with me and will often have doctors' appointments during typical hours, so if I had to leave during the day to take her to a doctor's appointment, I may stay late, work on the weekend, or work through the lunch to make up that time.").

MLOs also chose to work inside and outside the office to varying degrees.  *See, e.g.*, Keeney Decl. ¶ 13 ("I usually worked in [the] office for at least part of the day 4–5 days per week for a total of about 25 to 30 hours per week."); Hernandez Decl. ¶ 15 ("Generally speaking, I work outside the office for at least part of the day 5 days per week for a total of about 5 to 10 hours per week.").  For example, some MLOs felt they were more productive in the office completing loan applications and contacting clients, while others wanted to spend more time outside the office meeting with clients and referral sources.  *See, e.g.*, Case Decl. ¶ 23; Schroder

---

[2] The Case, Schroder, Johnson, and Hernandez Declarations, as well as those of Keeney, Hawley, and Enrico, are contained within the accompanying Compendium of Mortgage Loan Officer and Manager Declarations in Opposition to Plaintiffs' Pre-Discovery Motion for Collective Action Certification.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Decl. ¶ 13; Hawley Decl. ¶ 13 ("[M]arketing activities occur outside of the office.  I am not required to do them, but I consider them to be a useful way for me to network and meet potential clients."); Johnson Decl. ¶ 13 ("I spend most of my time in the office filling out paperwork and getting applications off to processing or underwriting.").

To support this flexibility, Banner and AWB provided MLOs administrative support, such as loan processors who helped gather mortgage paperwork and administrative assistants who could handle client calls and messages.  *See* Johnson Decl. ¶ 8; Enrico Decl. ¶ 8; Hawley Decl. ¶ 8; Keeney Decl. ¶ 8.  Although MLOs could choose how best to spend their time, AWB and Banner expected that they would work around 40 hour per week.  *See* Case Decl. ¶ 24; Schroder Decl. at ¶ 8.

## B.  Banner's and AWB's Pay Policies.

### 1.  Banner and AWB Prohibited Off-the-Clock Work.

Banner and AWB classified MLOs as non-exempt and eligible for overtime during the relevant period.  Baggarley Decl. ¶ 5, Ex. A, at 2; Muller Decl. ¶ 6, Ex. C, at 2.  Banner and AWB also maintained policies that required MLOs to accurately record all their hours worked— including any hours worked away from the office—and Banner and AWB prohibited off-the-clock work in any form.  Baggarley Decl. ¶ 6, Ex. B, at 21; *id.* ¶ 6, Ex. C, at 24; Muller Decl. ¶ 4, Ex. A, at § 4.2.  While Banner and AWB asked MLOs to obtain pre-approval for their overtime, Banner and AWB paid overtime compensation regardless of whether it was pre-approved. Baggarley Decl. ¶ 8; Muller Decl. ¶ 7.

Banner communicated its lawful policies to MLOs in various ways.  For example, the employee handbook that all new employees acknowledge states:

> The Bank does *not* allow non-exempt employees to work "off the clock."  All work time is compensable and must be reported.  If any supervisor or manager asks you to perform any work "off the clock," you are required to immediately report it to Human Resources.  An employee who misrepresents the number of hours worked or fails to record all hours worked, or records time on another employee's timesheet, generally will be terminated.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 4
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Baggarley Decl. ¶ 6, Ex. B, at 21 (2014 Banner employee handbook; emphasis in original);

*accord id.* ("[A]ll nonexempt employees will be required to keep track of their time on a daily

basis."); *id.* ¶ 6, Ex. C, at 24 (same provisions in Banner employee handbook used from 2015

forward). Banner's MLO compensation plans also provided that "[t]he Lender is considered a

non-exempt employee and is paid an hourly rate consistent with Bank policies. The Lender is

expected to accurately track and record all hours worked." *Id.* ¶ 5, Ex. A, at 2.

AWB similarly ensured that MLOs understood its lawful policies. For example, AWB's

employee handbook, which AWB required employees to acknowledge, stated that "[b]y law, the

Company is required to pay overtime and to keep time records for all nonexempt

employees. Nonexempt employees must report the hours worked on an electronic semimonthly

time sheet." Muller Decl. ¶ 4, Ex. A, at § 4.2. The handbook further emphasized that

"[n]onexempt employees are to report *all* overtime to their supervisor daily, including any time

worked outside of normal work hours, and time spent using electronic devices or cell phones for

work purposes." *Id.* (emphasis added).

AWB re-emphasized these policies throughout MLOs' employment. For example, the

MLO compensation plan that AWB issued about once per year stated that "[t]he Lender is

expected to accurately track and record all hours worked," Muller Decl. ¶ 6, Ex. C, at 2, and

Human Resources reminded MLOs about that instruction when reviewing the new compensation

plan with them, *id. See also id.* ¶ 9, Ex. D (discussing payroll reminder to MLOs to enter hours).

Human Resources also held meetings with MLOs regarding proper overtime recording, as

Plaintiff Bolding has testified. Muller Decl. ¶ 8; Bolding Dep. 248:24–249:8 ("[Human

Resources told me that] if you work overtime, you need to log overtime.").[3]

Banner's six MLO declarants who have worked in eight different offices under at least

seven different direct managers confirm that they understood these policies and that no one at

---

[3] Cited excerpts from Plaintiff Bolding's deposition in a prior case are attached as Exhibit B to the Hess Declaration. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002) ("A deposition or extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the court reporter's certification that the deposition is a true record of the testimony of the deponent.").

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 5
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Banner or AWB encouraged or required them to work overtime off the clock, and that they did record and receive pay for overtime. *See* Case Decl. ¶ 10–11; Johnson Decl. ¶¶ 9–10; Keeney Decl. ¶¶ 9–10; Enrico Decl. ¶¶ 9–10; Hernandez Decl. ¶¶ 9–10; Hawley Decl. ¶¶ 9–10; *see also* Hess Decl. ¶ 5 (compiling location worked and manager information from Banner's MLO declarations).

Moreover, both AWB and Banner managers confirm that they also understood the companies' policies and did not encourage or condone off-the-clock overtime or any other form of off-the-clock work. *See* Case Decl. ¶¶ 10, 13; Schroder Decl. ¶¶ 6–7.

Banner and AWB's payroll records provide further support that AWB and Banner lawfully implemented their policies because those records show that both Banner and AWB issued overtime payments to MLOs, including Plaintiff Bolding. *See, e.g.*, Baggarley Decl. ¶¶ 10–12, Exs. G–H; Muller Decl ¶ 7.

## 2. Banner and AWB Included Commissions in the Overtime Rate.

When MLOs recorded overtime, Banner and AWB have had a policy and practice of including commissions in the overtime calculation as required by federal law. *See* 29 C.F.R. §§ 778.117–.120. AWB's policy for calculating and paying overtime on commissions is attached as Exhibit B to the Muller declaration, and Banner's calculations are described in Exhibit F to the Baggarley declaration.

In short, both AWB and Banner paid overtime for reported overtime at 1.5 times the employee's hourly rate because the amounts of the commissions to be included in the regular rate were not calculated until the month after the sales occurred. *See* Muller Decl. ¶ 12; Baggarley Decl. ¶ 11; *see also* 29 C.F.R. § 778.119 (allowing this method). In this way, AWB and Banner ensured that they paid the known amount of overtime as soon as possible. Once the commission amounts (if any) were known for any particular MLO during any particular month, AWB and Banner went back to re-calculate the overtime rate to include the commissions and then paid any difference in the overtime calculation. *See* Muller Decl. ¶ 12; Baggarley Decl. ¶ 12. For example, on her November 25, 2015 wage statement, Bolding reported 8 hours of

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 6
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

overtime. Baggarley Decl. ¶ 11, Ex. G. Banner therefore paid overtime for the pay period at 1.5 times her hourly rate. *Id.* Later, when her November commissions became calculable, Banner went back and recalculated the overtime rate and issued an additional overtime payment indicated as "FLSA Calc." on Bolding's December 10, 2015 wage statement. *Id.* ¶ 12, Ex. H.

**C.    Plaintiffs and Their Allegations.**

Banner briefly summarizes the three Plaintiffs' employment history.

**Bolding**: Plaintiff Bolding worked as an MLO at AWB from June 2011 until October 2015, when she became a Banner MLO as a result of Banner's acquisition of AWB. Boettcher-Milleville Decl. ¶ 10. She left Banner in February 2016. *Id.* Bolding worked at the Northpointe branch in Spokane, Washington, until January 2014 when she moved to the 41 West Riverside branch in Spokane, Washington. Bolding Dep. 21:17–22:11.

**Taylor**: Plaintiff Taylor worked for AWB as a Loan Officer Assistant beginning in September 2013, and in October 2015, she joined Banner as a Loan Officer Assistant as part of the merger. Boettcher-Milleville Decl. ¶ 12. In March 2016, Banner promoted her to the MLO position, but she left Banner nine months later in December 2016. *Id.* While she worked for both AWB and Banner, Taylor was based out of the Downtown Spokane, Washington branch. *Id.*

**Manfredi**: Plaintiff Manfredi worked for AWB from June 2014 until January 2015, and he worked out of the Carmel Valley, California branch. Boettcher-Milleville Decl. ¶ 11. Manfredi never worked for Banner. *Id.*

Plaintiffs also offer deposition testimony from one additional MLO, Lisa Knight. *See* Blankenship Decl. ¶ 9, Ex. H. She worked for AWB from December 2013 until October 2015, when she became a Banner MLO as a result of Banner's acquisition of AWB. Boettcher-Milleville Decl. ¶ 13. During her entire employment, Knight has worked out of the Downtown branch in Spokane, Washington. *Id.*

Plaintiffs allege that AWB and Banner "required" MLOs to work off the clock and that AWB and Banner did not properly calculate the overtime rate for MLOs because it did not

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 7
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

include commissions in the regular rate.  Compl. (Dkt. 1) ¶¶ 17–18.  Based on those allegations,

they assert claims for unpaid wages and liquidated damages under the FLSA, and they seek to

represent a group of MLOs nationwide employed since April 2014.  *Id.* ¶¶ 29, 51.  Plaintiffs also

purport to assert state-law claims under Washington, Oregon, Utah, Idaho, and California law,

*id.* ¶¶ 52–82, and Plaintiffs state that they plan to seek Rule 23 class certification of those claims,

*id.* ¶ 30.

### III.    ARGUMENT

**A.    Plaintiffs Misstate the Conditional Certification Standard in Three Respects.**

**1.    Plaintiffs' Showing Cannot Rest on Mere Allegations Without Admissible Evidentiary Support.**

Plaintiffs argue they can obtain conditional certification on "allegations alone."  Mot.

14:10.  While the FLSA conditional certification standard is not onerous, "[p]utative class

members must share more than a common allegation that they were denied overtime or paid

below the minimum wage."  *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002).

The plaintiff must "br[ing] forth ***evidence*** that there is a nationwide ***single decision, policy or***

***plan***" to justify certification.  *Douglas v. Xerox Bus. Servs., LLC*, 2014 WL 3396112, at *4

(W.D. Wash. July 10, 2014) (Coughenour, J.) (emphasis added); *accord Benson v. W. Coast*

*Constr.*, 2007 WL 445456, at *2 (W.D. Wash. Feb. 6, 2007) (Martinez, J.) (requiring "substantial

allegations, ***supported by declarations or discovery***, that the putative class members were

together the victims of a single decision, policy, or plan") (emphasis added) (citation and

quotation omitted).

Only admissible evidence meets a plaintiff's burden.  Hearsay statements, for example,

do not suffice.  *See Benson*, 2007 WL 445456, at *2 & n.3 (denying conditional certification and

refusing to consider inadmissible hearsay); *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at

*9 (N.D. Cal. Dec. 9, 2014) (same).  In addition, "a conclusory assertion that, 'based upon

conversations with others,' plaintiffs believed similar policies and practices were in effect at

other facilities d[oes] not suffice to carry [the] modest burden of showing sufficient similarity."

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 8
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, at *9 (E.D. Wis. Sept. 11, 2008) (quoting *Mares v.*

2   *Caesars Entmt., Inc.*, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007)).  Similarly, an allegation

3   that a plaintiff has an "understanding" that his or her employer had a company-wide policy or

4   practice falls short. *Id.* at *10.

5        Courts require this evidentiary showing for good reason.  "Where the plaintiff has not

6   made at least a modest factual showing that certification is appropriate, '[i]t would be a waste of

7   the Court's and the litigants' time and resources to notify a large and diverse class only to later

8   determine that the matter should not proceed as a collective action because the class members are

9   not similarly situated.'" *Adair*, 2008 WL 4224360, at *4 (quoting *Freeman v. Wal-Mart Stores,*

10  *Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)).  Indeed, when Congress enacted the FLSA's

11  opt-in procedure, it recognized that courts should not impose the "tremendous financial burden"

12  of a collective action on an employer without good cause.  *Woods v. N.Y. Life Ins. Co.*, 686 F.2d

13  578, 581 (7th Cir. 1982); *see also Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D.

14  Tex. 2007) (recognizing "employers should not be unduly burdened by a frivolous fishing

15  expedition conducted by the plaintiff at the employer's expenses").  Therefore, when evaluating

16  conditional certification, courts are "mindful that [they], like practicing attorneys, ha[ve] a

17  responsibility to refrain from stirring up unwarranted litigation." *Lentz*, 491 F. Supp. 2d at 669

18  (internal citations and quotations omitted).

19          **2.      Plaintiffs Must Show a Common Decision, Policy, or Plan that
                       Required Off-the-Clock Overtime and Imputed Management
20                     Knowledge.**

21       Plaintiffs also fail to acknowledge the types of common decisions, policies, or plans they

22  must show to obtain conditional certification in an off-the-clock overtime case.  A plaintiff in

23  such a case must show (among other things) that (1) he or she did work overtime; (2) the

24  overtime was off the clock; and (3) the employer knew or should have known about the off-the-

25  clock overtime.  *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981);

26  *Khadera v. ABM Indus. Inc.*, 2011 WL 7064235, at *3 (W.D. Wash. Dec. 1, 2011).  Therefore, at

27  conditional certification, courts require that plaintiffs provide at least a modest evidentiary

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 9
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

showing: (1) of a common decision, policy, or plan requiring employees to work overtime; (2) a common decision, policy, or practice of working overtime off the clock; and (3) that the employer knew or should have known about the off-the-clock overtime. *See Douglas*, 2014 WL 3396112, at *4; *Greenwald v. Phillips Home Furnishings, Inc.*, 2009 WL 259744, at *5 (E.D. Mo. Feb. 3, 2009) (plaintiffs must demonstrate "evidence of managerial participation or knowledge" at conditional certification).

Plaintiffs ignore this standard and instead argue that they can meet their burden merely by showing individuals had common job duties. *See, e.g.*, Mot. 14:4–13. That argument fails for two reasons.

***First***, common job duties say nothing about the employer's policies or practices regarding pay for hours worked and "[n]owhere do these documents state that these duties are to be performed without compensation." *Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (holding job descriptions did not justify conditional certification).

***Second***, Plaintiffs' cases finding job duties sufficient were decided in the exempt misclassification context where the merits of the claims turn on job duties. *See, e.g.*, *Randolph v. Centene Mgmt. Co.*, 2015 WL 2062609, at *3 (W.D. Wash. May 4, 2015); *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at *2 (W.D. Wash. Dec. 22, 2014). Those cases "are factually distinguishable" from off-the-clock cases: "[E]xempt status [cases] are much more amenable to collective treatment because there the plaintiffs are challenging class-wide policies regarding job classification, and evaluation of the plaintiff's claims depends on common proof" regarding job duties. *Castle v. Wells Fargo Fin. Inc.*, 2008 WL 495705, at *6 (N.D. Cal. Feb. 20, 2008); *accord Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 428 (N.D. Cal. 2010) ("In misclassification cases, it is often easier to show the plaintiffs were the victims of a single decision, policy, or plan" than in an off-the-clock case.).

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 10
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### 3. Individualized Inquiries Are Relevant to Plaintiffs' Showing in an Off-the-Clock Case.

Plaintiffs also argue that the Court should ignore individualized differences between Plaintiffs and putative collective members at conditional certification. Mot. 14:4–7. While not every putative collective member must be identical, individualized inquiries are relevant in off-the-clock cases because they undermine a plaintiffs' allegation of common policies and practices and individual inquiries defeat the key goal of an FLSA collective action—efficient resolution. *See Sheffield*, 211 F.R.D. at 413 (recognizing that conditional certification is inappropriate if the case would be "mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact"); *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *4 (E.D. Va. Oct. 2, 2012) (cited by Plaintiffs; recognizing conditional certification "inquiry is whether the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members"). Plaintiffs misplace reliance on *Randolph v. Centene Management Co.*, 2015 WL 2062609 (W.D. Wash. May 4, 2015), for the opposite proposition. There, the court found that some variation among job duties did not defeat certification in an exempt status case where the employees had "strong similarities." *Id.* at *4. It did not hold that a court should ignore material variations regarding whether employees worked off the clock and whether an employer knew about that work.

### B. The Court Should Not Conditionally Certify the Off-the-Clock Claim.

Under the proper standard, Plaintiffs' thin showing falls short of the conditional certification bar—particularly in the face of AWB's and Banner's lawful policies.

### 1. Banner's Evidence of Consistently Lawful Overtime Policies and Practices Trumps Plaintiffs' Meager Showing.

"[E]vidence that employers have, and enforce, appropriate pay policies … weighs *strongly* against conditional certification." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 703 (S.D. Tex. 2013) (emphasis added). That evidence abounds here. AWB's and Banner's handbooks prohibited off-the-clock work, MLOs' compensation agreements required them to

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 11
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

record all hours worked, and AWB and Banner reminded MLOs during their employment about these policies. *See* Section II.B.1, *supra*. Indeed, Plaintiff Bolding admitted at deposition that Human Resources instructed her: "If you take a call at home in the evening or a Saturday or Sunday, any time on your off hours, or take an application, [then] you need to add that to your time for the week, because loan officers are now salary non-exempt." Bolding Dep. 248:24–249:8. Banner's MLO declarants who worked for AWB and Banner in eight different branches in three different states further confirm that they correctly understood and followed AWB's and Banner's policies, *see* Section II.B.1, *supra*, and Banner's Regional Manager declarations show that managers properly implemented AWB's and Banner's policies, *id.*

### 2. Plaintiffs Have Not Shown Common Proof on Three Required Elements.

In the face of Banner's lawful policies, Plaintiffs fail to make even a modest factual showing on three required elements: (a) that AWB and Banner required overtime; (b) that AWB and Banner required overtime to be worked off the clock; and (c) that AWB and Banner knew or should have known that MLOs were working overtime off the clock. *See Forrester*, 646 F.2d at 414.

#### a. Plaintiffs Have Not Shown a Company-Wide Policy or Practice Requiring Overtime.

Plaintiffs fail in their two attempts to support their claim that "MLOs **must** work more than 40 hours per week." Mot. 0:23–25 (emphasis added); *see also id.* 1:20–21 ("[R]egular work above and beyond 40 hours in a week is a **necessity**.") (emphasis added).[4]

***Plaintiffs Have Not Shown MLOs Needed to Work Over 40 Hours Because of Their Job Duties***: Plaintiffs first assert in boilerplate fashion that the "nature of the job duties" required them to work overtime. Manfredi Decl. ¶ 37 ("There was no way to avoid working overtime, given the nature of the job duties."); Taylor Decl. ¶ 34 ("There was no way to avoid

---

[4] Plaintiffs numbered the first page of their motion as page "0."

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1 working overtime, given the nature of the job duties."); Bolding Decl. ¶ 26 ("There was no way

2 around [working over 40 hours] with the duties, responsibilities, and expectations.").[5]

3      Plaintiffs' own evidence and prior statements disprove their allegation.  For example,

4 Plaintiffs offer the deposition of MLO Lisa Knight from a prior case.  She testified she usually

5 worked 40 hours per week:  "Q: So on a regular basis, how many hours a week would you say

6 you worked as a loan officer?  A: Forty."  Knight Dep. 90:2–4 (attached as Exhibit H to the

7 Blankenship Declaration).  In addition, Plaintiff Bolding testified at a prior deposition that, 80%

8 of the time, she worked only 40 hours per week.  *See* Bolding Dep. 254:2–16 (claiming she

9 worked over 40 hours "[p]robably about 20 percent of the time").  That prior sworn testimony

10 stands in stark contrast to Plaintiff Bolding's more recent declaration that "[t]here was no way

11 around extra time with duties, responsibility, and expectations."  Bolding Decl. ¶ 26.

12      Rather than demonstrate an inflexible job requiring over 40-hours per week, the evidence

13 reveals that the flexible nature of the MLO job allowed MLOs to keep their hours to 40 or less.

14 For example, MLO Barbara Johnson testified that she often works through lunch on days when

15 she has to take her elderly mother to doctors' appointments, thus keeping her hours "at, or only

16 slightly below, 40 hours per week."  Johnson Decl. ¶¶ 11–12.  Indeed, the parties' evidence

17 shows that managers instructed MLOs to use the flexible nature of their jobs to balance out their

18 hours.  For example, Knight testified that her manager Ken Hunt told her to "take a couple hours

19 off during the week to go get a pedicure, whatever you want to do" to avoid overtime.  Knight

20 Dep. 89:10–24.  Bolding similarly testified that Hunt instructed her that, "[r]ather than work

21 overtime, if you work in the evenings or weekends, then take a longer lunch or something."

22 Bolding Dep. 251:1–7; *accord id.* 252:9–14.  Banner's declarations are in accord.  *See, e.g.*,

23 Schroder Decl. ¶ 11 ("[S]everal of the RLOs that I supervise will participate in home shows on

24 the weekends, so they will cut their work week short or leave early on a Friday to balance their

25 hours for the week.").[6]

---

26 [5] The three Plaintiffs' declarations are attached as Exhibits E, F, and G, respectively, to the Blankenship Declaration.

27 [6] Plaintiffs also claim they have common proof of off-the-clock overtime because AWB and Banner provided MLOs with laptops.  Manfredi Decl. ¶ 31; Taylor Decl. ¶ 25.  Providing an employee with a laptop does not require off-the-

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 13
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

AWB and Banner also gave MLOs resources to support flexibility. For example, MLO Jeff Keeney testifies he has a Loan Officer Assistant "who prepares and reviews documentation and communicates with clients and referral sources" for him. Keeney Decl. ¶ 7. Similarly, MLO Jeffrey Enrico states he has an Administrative Assistant "who does things like ... answer phones, and take messages." Enrico Decl. ¶ 8. Moreover, Miranda Taylor testified that, while she was a Loan Officer Assistant, "my job was to work directly with MLOs on various aspects of loan applications, meeting customers, and closing loans." Taylor Decl. ¶ 3; *see also* Knight Dep. 86:2–22 ("Q: And if you had an assistant like Miranda Moen, then she could deal with [returning calls] for you, right? A: Yes.").[7]

***Banner and AWB Did Not Require MLOs to Be in the Office from 9 to 5, and Working Outside Business Hours Does Not Require Overtime***: Plaintiffs similarly claim that AWB and Banner required them to be in the office from 9 to 5 each day, and that they needed to work significant amounts of time outside the office. *See, e.g.*, Manfredi Decl. ¶ 7 ("The banks expected us to work during the regular banking hours (9 to 5) and, additionally, to be available to customers when they needed us."). Plaintiffs cite no policy or any managerial instruction supporting their belief. *See, e.g.*, Manfredi Decl. ¶ 7; Bolding Decl. ¶ 27–33; Taylor Decl. ¶ 27–30. Instead, they derive the purported "requirement" by saying they think other unidentified MLOs in unidentified offices worked from 9 to 5 in the office and then worked outside those hours. *See, e.g.*, Taylor Decl. ¶ 27.

Plaintiffs' speculation regarding other MLOs' work schedules does meet their burden to provide admissible evidence of a collective-wide policy or practice requiring overtime. *See* Section III.A, *supra*. Moreover, Banner's and AWB's MLOs worked varying schedules, and neither Banner nor AWB required them to work specific hours. *See, e.g.*, Hernandez Decl. ¶ 12

---

clock overtime, and if anything, the allegation only further shows that MLOs had the flexibility to work when and where they chose.

[7] Plaintiffs also claim that AWB and Banner required more than 40 hours a week "as outlined in the job responsibilities and essential job functions." Mot. 1:12–14. However, the job descriptions that Plaintiffs offer contain no information regarding the number of hours MLOs must work. *See* Blankenship Decl. ¶ 3, Ex. B. Moreover, mere common job descriptions do not support conditional certification in an off-the-clock case. *See* Section II.A.2, *supra*.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

(no one told him what hours he needed to work or what hours he needed to be available); Keeney Decl. ¶ 11 (same); Johnson Decl. ¶ 11 (same). Even Plaintiffs' witness Lisa Knight acknowledged that her MLO co-worker Stephen Boyd could "come and go as he pleased." Knight Dep. 84:13–16.[8]

**b.  Plaintiffs Have Not Shown a Common Practice Prohibiting MLOs from Recording and Being Paid for Overtime.**

Plaintiffs make two attempts to demonstrate a common practice of disregarding Banner's and AWB's requirement to pay MLOs for all hours worked, but Plaintiffs support neither with admissible or credible evidence.

***Plaintiffs Provide No Admissible Evidence of Any Errant Managerial Instructions.***

Taylor alleges that Banner manager Ken Hunt "told MLOs explicitly that they could not put overtime on their timesheets," Taylor Decl. ¶ 3, and Manfredi alleges that AWB manager Troy Sims said "I can't give you overtime, but you still have to do the work."[9] The Court should not consider those hearsay statements at conditional certification. *See* Section II.A.1, *supra*. To the extent the Court considers them, allegations that *one* manager at Banner and *one* manager at AWB told two employees not to record overtime does not show or suggest that *all* Banner and AWB managers from April 2014 forward instructed MLOs to not record overtime worked. Indeed, Banner and AWB managers report that they have instructed MLOs to record their overtime, and MLOs agree that they have received those instructions from managers. *See, e.g.*, Case Decl. ¶ 12; Schroder Decl. ¶ 7; Hernandez Decl. ¶ 9; Keeney Decl. ¶ 9.

***Plaintiffs' Single Timecard-Fraud Allegation Also Does Not Meet Their Burden.***

Manfredi—but none of the other Plaintiffs—claims that his AWB manager falsified his timecards if he reported overtime. Manfredi Decl. ¶ 43. Here, again, an allegation regarding one

---

[8] Plaintiffs also claim that MLOs worked around-the-clock because, they say, AWB and Banner **required** MLOs to list their cell phone numbers on the company website. Mot. 1:21–25; 9:7–19. The website excerpts Plaintiffs attach disprove that allegation because many MLOs do not list their cell phone numbers. *See* Blankenship Decl. ¶ 10, Ex. I, at 1, 3; *see also* Case Decl. ¶ 30 (MLOs are not required to list their cell phone numbers on company website); Schroder Decl. ¶ 16 (same).

[9] Manfredi claims that AWB's alleged overtime practices and manager instructions carried over to Banner. Manfred Decl. ¶¶ 13–14. That allegation lacks foundation because Manfredi never worked for Banner. *See* Boettcher-Milleville Decl. ¶ 11.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 15
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

manager's alleged practice does not show a common practice across all managers—particularly because AWB and Banner prohibited timecard fraud. *See* Muller Decl. ¶ 10 (AWB prohibited timecard fraud); Baggarley Decl. ¶ 8 (same regrading Banner). The allegation also makes little sense because, if managers were falsifying timecards to remove overtime, AWB and Banner would not have consistently paid overtime to MLOs. Muller Decl. ¶ 7; Baggarley Decl. ¶ 10; Keeney Decl. ¶ 18 ("I am always paid for the overtime I work."); Case Decl. ¶ 18 (same).

         **c.**      **Plaintiffs Also Fail to Show Any Common Evidence that Banner and AWB Knew or Should Have Known About Unreported Overtime.**

Finally, Plaintiffs have not demonstrated that any common proof will show whether Banner and AWB knew or should have known that MLOs worked unrecorded overtime.

Plaintiffs attempt to meet this burden with conclusory allegations that rely on their debunked allegations discussed above. For example, Plaintiffs claim that supervisors must have known MLOs were working overtime (a) "based simply on the job expectations," Manfredi Decl. ¶ 38, Bolding Decl. ¶ 38, Taylor Decl. ¶ 35; and (b) because managers allegedly knew MLOs worked outside normal business hours, Bolding Decl. ¶ 39, Manfredi Decl. ¶ 40, Taylor Decl. ¶ 36. However, as discussed above, Plaintiffs' own evidence shows that MLOs did not need to work overtime to perform their duties, and Banner has shown that MLOs did not need to work overtime simply because they worked outside normal business hours. *See* Section II.A, *supra*. Moreover, the best evidence of what managers knew—Banner's manager declarations—show that managers did not know about off-the-clock overtime. *See* Case Decl. ¶ 25; Schroder Decl. ¶ 12.

At bottom, Plaintiffs are left with their conclusory allegations that "my managers knew that I was not recording [my overtime]." *See* Bolding Decl. ¶ 40. These clams are insufficient to infer that managers across at least 52 branches and five states knew about off-the-clock overtime.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 16
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### 3. Courts Confronting Similar Records Consistently Deny Certification in Off-the-Clock Cases.

Courts in this District and others repeatedly have denied conditional certification on similar records. For example, in *Douglas*, 2014 WL 3396112, at *4, the court refused to conditionally certify a collective of call-center employees who alleged the defendant had a company-wide policy of pressuring employees to perform off the clock work. The court found that the plaintiffs may have shown that "*[s]ome* supervisors" had instructed employees to work off the clock, but the plaintiffs' vague references to a "policy and practice" requiring off-the-clock work were insufficient to demonstrate "a widespread—or even modestly spread—practice of supervisors instructing agents to work off the clock." *Id.* (emphasis added). Similarly here, Plaintiffs' two hearsay allegations regarding errant manager instructions and speculation that other MLOs worked unrecorded overtime does not warrant conditional certification.

*Richardson v. Wells Fargo Bank, N.A.*, 2012 WL 334038 (S.D. Tex. Feb. 2, 2012), is another apt example. There, the bank's "personal bankers" allege the bank required them to work off the clock based on declarations from the five named plaintiffs. *Id.* at *1. The plaintiffs claimed that "three or four managers allegedly required or condoned off-the-clock work;" that they could not "finish[] all their assigned duties within a forty-hour workweek;" that they "*believed*" their managers knew about off-the-clock work; and that "it was understood" that personal bankers should record only their scheduled hours. *Id.* at *4–5. The court held that those facts did not show "a single decision, policy or plan . . . for the denial of overtime pay for off-the-clock work." *Id.* at *6. Plaintiffs present an even thinner showing here, offering just three declarations vaguely asserting that their job duties required them to work overtime and that just two managers told MLOs to work off the clock.

Many other cases show that Plaintiffs have not met their burden on conditional certification.[10]

---

[10] *See, e.g.*, *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 429–32 (N.D. Cal. 2010) (denying conditional certification despite statements from a handful of plaintiffs that their managers told them to work off the clock and all employees were subject to similar sales targets); *Walker v. Health & Hosp. Corp. of Marion Cty.*, 2016 WL 7179370, at *11 (S.D. Ind. Dec. 9, 2016) (denying conditional certification for alleged off-the-clock case because plaintiffs' vague statements about a "work environment" and "culture" were insufficient to show a common policy);

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### 4. Plaintiffs Misplace Reliance on Inapposite or Easily Distinguishable Cases.

Plaintiffs' cases suggest no other result. Most conditionally certified collective actions involved exempt **misclassification** claims where, unlike here, common job duties may be sufficient and defendants undisputedly failed to pay any overtime to entire groups of employees. *See, e.g.*, *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at *5–8 (W.D. Wash. Dec. 22, 2014) (certifying exempt misclassification case based on common job description); *Randolph*, 2015 WL 2062609, at *3 (same); *In re Well Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1070 (N.D. Cal. 2007) (same).

Plaintiffs' handful of off-the-clock cases granting conditional certification are easily distinguishable because there, unlike here, the plaintiffs credibly showed potential collective-wide violations by offering evidence from more than just three or four hourly employees.[11]

Rather than offer competent evidence from employees across AWB and Banner, Plaintiffs attempt to rely on their claims about their experiences—which often conflict with their prior deposition testimony—and then fill in the gaps with speculation regarding company-wide wrongdoing. That showing does not meet the standard for conditional certification in an off-the-clock case, and the Court therefore should not certify an off-the-clock collective.

---

*Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at *5–6 (N.D. Cal. Feb. 20, 2008) (denying conditional certification because declarations from 24 different plaintiffs demonstrated varying individual experiences that did not evidence a common company-wide practice to deny overtime payment); *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, at *8–10 (E.D. Wis. Sept. 11, 2008) (denying conditional certification where plaintiff alleged, without supporting facts, that two supervisors allowed off-the-clock work and plaintiff alleged she "understood" off-the-clock work was widespread); *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at *2, *6–8 (S.D. Tex. Jan. 24, 2007) (denying conditional certification where plaintiffs offered declarations from handful of employees who claimed their managers told them not to record overtime but they were required to meet common sales quotes).

[11] *See Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 822–23 (E.D. Mich. 2009) (certifying collective where plaintiffs provided declarations from 67 individuals claiming they performed "the same off-the-clock work for the same reasons"); *Adams v. Inter-con Sec. Sys., Inc.*, 242 F.R.D. 530, 534 (N.D. Cal. 2007) (conditionally certifying collective action based on 13 employees declarations and 2 manager declarations alleging employer required employees to work off the clock before their shifts began); *Zachary v. Cobalt Mortg., Inc.*, 2017 WL 1079374, at *1, *3 (E.D. Tex. Mar. 22, 2017) (certifying collective where plaintiffs offered declarations from ten individuals across seven offices who all alleged their managers consistently discouraged overtime reporting); *LeFleur*, 2012 WL 4739534, at *10 (certifying collective where plaintiffs offered declarations from employees and several managers attesting that the company's timekeeping software did not allow employees to punch back in when returning from breaks early). Plaintiffs' remaining case, *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990 (E.D. Tex. 2011), is distinguishable because there, unlike here, the plaintiffs alleged the employer required them and others to sign compensation agreements that unlawfully waived their right to overtime by setting their straight-time rate equal to their overtime rate. *Id.* at 992–93, 996.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 18
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**C.    The Court Also Should Not Conditionally Certify the Regular Rate Claim.**

Plaintiffs also ask the Court to conditionally certify their claim that Banner and AWB miscalculated the regular rate for overtime purposes because Banner and AWB supposedly did not include commissions in that rate. Mot. 15:1–10. That request fails for two reasons.

***First***, Plaintiffs offer no competent evidence to support this allegation. Instead, Plaintiffs assert—in conclusory, cookie-cutter fashion—"I do not believe that what little overtime I was paid reflected commissions in my base rate. No one said that it did." Manfredi Decl. ¶ 48; Bolding Decl. ¶ 42 (same); Taylor Decl. ¶ 42 (same). Plaintiffs fail even to muster an unequivocal allegation in their brief regarding Banner's and AWB's overtime calculation, asserting uncertainly: "When overtime is paid by Defendant, it is allegedly not being calculated correctly. . . . [T]o Plaintiffs' knowledge, commissions are not included in the calculation of overtime . . . ." Mot. 2:15–18. Plaintiffs' unsupported beliefs and speculation fall far short of meeting their modest evidentiary burden. *See Adair*, 2008 WL 4224360, at *9.

***Second***, in contrast to Plaintiffs' speculation, Banner has shown that both AWB and Banner included commissions in the regular rate as a matter of both policy and practice. Muller Decl. ¶ 11, Ex. B (attaching AWB's detailed procedure for calculating the overtime rate to include commissions); Baggarley Decl. ¶ 13, Ex. F (same for Banner). Banner also has provided an example of Plaintiff Bolding's pay statements showing that Banner did in fact pay her an overtime premium that included her commissions. Baggarley Decl. ¶ 11–12, Exs. G–H.

Therefore, the Court should deny conditional certification on the regular rate calculation claim, too.

**D.    If the Court Conditionally Certifies Any Claims, It Should Modify Plaintiffs' Requested Notice Procedures.**

If the Court grants conditional certification—which it should not—the Court should revise Plaintiffs' proposed notice procedures, including the notice text in the manner set forth in Banner's revised proposed order. Proposed Order Denying Conditional Certification (filed concurrently). *See* Hess Decl. ¶ 7, Ex. C (attaching redline showing Banner's proposed changes). Moreover, if the Court conditionally certifies one claim but not the other, Banner

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 19
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

requests that the Court instruct the parties to confer on revising the notice further to reflect that change.

### 1. The Court Should Limit the Notice to AWB and Banner MLOs Employed Within Three Years Plus Two Weeks of the Mailing.

Plaintiffs ask to send notice to any MLO who, since April 17, 2014, worked for Banner or AWB—*or any other banks Banner acquired*. Mot. 3:23–26; Pls.' Proposed Order (Dkt. 16-1) at 1:24–2:2. That request is overbroad in scope and time.

*First*, Plaintiffs undisputedly worked at only AWB and/or Banner, and they have not provided any evidence or allegations—at all—about the overtime policies or practices anywhere else. Plaintiffs accordingly have not met their burden to show that any MLOs who worked anywhere other than Banner and AWB were similarly situated to Plaintiffs. The Court therefore should not issue notice to any MLOs who did not work for Banner or AWB.[12]

*Second*, as Plaintiffs acknowledge, the statute of limitations for an FLSA claim runs until a putative collective member files a consent to join, and a three-year statute of limitations (at most) applies to Plaintiffs' FLSA claims. Mot. 17:1–22; 29 U.S.C. § 255(a). Therefore, the only individuals whose claims will not be time-barred as of the mailing date are those who worked for Banner or AWB as an MLO within three years of the mailing date, plus two weeks for the tolling to which the parties agreed as part of their conditional certification briefing schedule. *See* Dkt.18 ¶ 3 (stipulation on briefing schedule that includes two weeks of tolling). However, Plaintiffs ask to the Court to send notice to a broader group—MLOs that AWB or Banner employed from April 17, 2014, forward. That request will cause MLOs who worked for AWB or Banner since April 17, 2014, but outside of the longest potentially applicable limitations period, to receive notice about time-barred claims. Such notice is unnecessary and may cause harm by misleading some into believing they may have an FLSA claim when they do not.

The Court accordingly should limit the notice to MLOs who worked for AWB and/or Banner within three years and two weeks of mailing any conditional certification notice.

---

[12] For the same reasons, the Court should deny Plaintiffs' request for Banner to identify any additional banks it acquired. *See* Mot. 3:8–9.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 20
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### 2. The Court Should Deny Plaintiffs' Request for Telephone Numbers and Dates of Birth.

In addition to address information, Plaintiffs request putative collective members' telephone numbers and dates of birth to facilitate the mailing. Mot. 4:1–3. Plaintiffs do not need that information to mail the notice, and granting the request would unnecessarily provide to Plaintiffs and their counsel highly confidential information for hundreds of individuals whom they do not—and may never—represent. This Court and others within the Ninth Circuit accordingly have denied requests for telephone numbers and other personal confidential information at conditional certification. *See, e.g.*, *Wilson*, 2014 WL 7340480, at *9 (Lasnik, J.) ("Plaintiffs will not be given the phone numbers of the potential opt-in plaintiffs receiving the notice, out of concern for the latters' privacy."); *Stickle v. SCI W. Mkt. Support Ctr., LP*, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (denying plaintiffs' request for the phone number and social security numbers of the proposed collective members because the production would have been a "needless intrusion into the privacy of these individuals and their families"); *Misra v. Decision One Mortg. Co.*, 673 F. Supp. 2d 987, 999 (C.D. Cal. 2008) (denying plaintiff's request for telephone numbers and Social Security Numbers).

### 3. The Court Should Revise Plaintiffs' Proposed Notice in Several Respects.

The Court also should revise Plaintiffs' proposed notice (Blankenship Decl., Ex. A) so that it is neutral, concise, and adequately describes the risks and benefits of joining the case.

#### a. The Court Should Revise the Notice to Observe Judicial Neutrality.

The United States Supreme Court has recognized that, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989). Plaintiffs' draft notice violates that rule in two respects.

*First*, a neutral notice must include a fair description of the defendant's position. *See, e.g.*, *Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, at *8 (N.D. Cal. Mar. 18,

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 21
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

2009) (holding notice violated judicial neutrality because it did not fully explain defendant's

position). Here, Plaintiffs' proposed notice contains no information regarding Banner's position.

Therefore, Banner asks the Court to include the following language in Section I as a new

paragraph after the next to last sentence:

> Banner Bank vigorously denies Plaintiffs' allegations and any wrongdoing. It contends that AmericanWest Bank and Banner Bank have strongly prohibited off-the-clock work of any type, and that AmericanWest Bank and Banner Bank have paid Mortgage Loan Officers for all of their hours worked—including all overtime hours. Banner Bank further contends that AmericanWest Bank and Banner Bank properly calculated the overtime rate by including commission payments in the overtime calculation. Banner also contends that the case should not be allowed to proceed to trial as a collective or class action.

*Second*, the notice buries a bare-bones statement of judicial neutrality near the end. *See*

Blankenship Decl. Ex. A at 5 (Section VI). Doing so creates a risk that putative collective

members will wrongly believe that Plaintiffs' self-serving spin on their claims is the Court's

view on the merits of the case. To minimize that risk, the Court should move current Section VI

entitled "No Opinion Expressed as to Merits of the Lawsuit" to the first page of the notice and

add the following sentence: "The Court takes no position on whether the named Plaintiffs, you,

or anyone else have valid claims against Banner Bank." *See Adams*, 242 F.R.D. at 540

(requiring plaintiffs to place expanded neutrality statement at beginning of collective action

notice).

### b. The Court Should Omit Plaintiffs' Lengthy and Unnecessary Definition of Hours Worked.

A collective action notice also should concisely inform putative collective members

regarding their ability to join a case rather than contain an extended definition of the legal

doctrine at play. *Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, at * 8 (D. Ariz. Aug. 30,

2013) (revising notice to be "concise"). Plaintiffs' proposed notice violates that rule by

including a nearly page-long, unnecessary definition of hours worked, Blankenship Decl. Ex. A

at 3, without citing any legal authority for the request, Mot. 19.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 22
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1        Plaintiffs claim the definition is necessary because putative collective members do not

2 understand what hours worked means. Mot. 19:3–8. However, MLOs received instructions

3 about what constitutes hours worked—including working with clients outside usual business

4 hours—and MLOs have testified that they understood and followed those instructions. *See, e.g.*,

5 Johnson Decl. ¶ 12 ("I am including in my hours worked any time I spent performing services

6 for AWB's and Banner Bank's benefit. That includes, among other things, any time I spent

7 answering emails or phone messages while away from the office; any time spent working during

8 the mornings, evenings, and weekends; and any time that I spent performing client development

9 activities like meeting with referral sources."); Keeney Decl. ¶ 12 (same); Muller Decl. ¶ 4, Ex.

10 A, at § 4.2 (AWB employee handbook stating that compensable overtime "include[s] any time

11 worked outside of normal work hours, and time spent using electronic devices or cell phones for

12 work purposes").

13        Plaintiffs offer no competent or credible evidence showing that MLOs misunderstood the

14 meaning of hours worked. For example, they speculate in identical statements that they "***think***

15 that MLOs are not educated about what constitutes work that should be paid as overtime.*"*

16 Bolding Decl. ¶ 43 (emphasis added); *accord* Manfredi Decl. ¶ 49 (identical language); Taylor

17 Decl. ¶ 43 (identical language). Plaintiffs also allege they were "never instructed that checking

18 or responding to client emails before or after work . . . counted as overtime." Bolding Decl. ¶ 44;

19 Manfredi Decl. ¶ 50; Taylor Decl. ¶ 44. That is demonstrably false. In a prior deposition,

20 Plaintiff Bolding testified that Human Resources directly instructed her that "[i]f you take a call

21 at home in the evening or a Saturday or Sunday, any time on your off hours, or take an

22 application, that you need to add that to your time for the week, because loan officers are now

23 salary non-exempt." Bolding Dep. 248:24–249:8. Moreover, all three Plaintiffs received

24 AWB's handbook stating work outside regular business hours is compensable. *See* Muller Decl.

25 ¶ 4.

26        Therefore, Plaintiffs have not shown any justification for complicating the collective

27 action notice with a lengthy definition of hours worked.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 23
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

### c. The Court Also Should Revise the Notice to Inform Putative Collective Members that They May Be Liable for Banner's Costs if Banner Prevails.

Finally, a collective action notice should allow putative collective members to "make informed decisions about whether or not to participate," which includes explaining both the potential benefits *and risks*. *Adams*, 242 F.R.D. at 540 (citations and quotations omitted). A key risk is that an opt-in plaintiff may share in liability for the prevailing defendant's costs, and therefore, an FLSA notice should notify potential opt-ins about that risk, *id.*, which Plaintiffs' proposed notice omits. Banner accordingly asks that the Court amend Plaintiffs' proposed notice by adding the following sentence on page 4 after "If no recovery is obtained . . . .": "In addition, if Banner Bank prevails in the lawsuit, you may be held individually liable for a share of Banner Bank's costs incurred in defending the lawsuit."

## IV. CONCLUSION

For these reasons, Banner respectfully requests that the Court deny conditional certification. "Where [as here] the plaintiff has not made at least a modest factual showing that certification is appropriate, [i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair*, 2008 WL 4224360, at *4 (internal quotation omitted). In contrast, denying conditional certification would not prejudice Plaintiffs in the least, as they would remain free to pursue their individual claims and have the fact finder resolve whether—in violation of Banner's and AWB's express policies and procedures—they failed to receive all wages to which they were entitled.

If, on the other hand, If the Court grants conditional certification, Banner asks the Court to narrow the scope of the proposed collective and amend the notice procedures and text, consistent with the Proposed Order Banner submits with this Opposition.

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 24
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 21st day of August, 2017.

2                                        Davis Wright Tremaine LLP
                                         Attorneys for Defendant Banner Bank
3
                                         By s/*Kenneth E. Payson*
4                                            Kenneth E. Payson, WSBA #26369
                                             Sheehan Sullivan Weiss, WSBA #33189
5                                            Ryan Hess, WSBA #50738
                                             Laura-Lee Williams, WSBA #51358
6                                            1201 Third Avenue, Suite 2200
                                             Seattle, WA  98101-3045
7                                            Telephone: 206.622.3150
                                             Fax: 206.206.757.7700
8                                            E-mail: kennethpayson@dwt.com
                                                      sheehansullivanweiss@dwt.com
9                                                     ryanhess@dwt.com
                                                      lauraleewilliams@dwt.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 25
4831-8110-2669v.4 0058243-000340

                                         Davis Wright Tremaine LLP
                                              LAW OFFICES
                                                Suite 2200
                                            1201 Third Avenue
                                           Seattle, WA  98101-3045
                                     206.622.3150 main · 206.757.7700 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure

Dated this 21st day of August, 2017.

By   *s/ Kenneth E. Payson*
           Kenneth E. Payson, WSBA # 26369

BANNER BANK'S OPP'N TO PLS.' MOT.
FOR COLLECTIVE ACTION CERT.
(C17-0601RSL) - 26
4831-8110-2669v.4 0058243-000340

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax