UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
KELLY BOLDING, *et al.*,

                Plaintiff,

    v.

BANNER BANK,

                Defendants.
_____

Case No. C17-0601RSL

ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR
CONDITIONAL CERTIFICATION

This matter comes before the Court on "Plaintiffs' Pre-Discovery Motion for Collective Action Certification Under 29 U.S.C. § 216(b) and to Send Notice to the Class." Dkt. # 16. Plaintiffs are current and former mortgage loan officers employed by defendant Banner Bank (or by other financial institutions acquired by Banner Bank) who allege that they were required to work "off the clock" without compensation and that the manner in which defendant calculated overtime wages was incorrect. Plaintiffs filed this action on behalf of themselves and all others who are similarly situated. They seek an order granting conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"). Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

---

[1] This matter can be decided on the papers submitted. Plaintiffs' request for oral argument is therefore DENIED. The Court notes that plaintiffs' reply memorandum (Dkt. # 26) contains redactions. An unredacted copy was not filed, and the Court has not considered the blacked out text.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION

The FLSA provides a mechanism, called a "collective action," through which workers can sue jointly for violations of the statute's overtime compensation and other provisions. See 29 U.S.C. § 216(b). The collective action allows a representative plaintiff to bring suit on behalf of a group of workers who are "similarly situated" and serves to (a) reduce the burden on plaintiffs through the pooling of resources and (b) make efficient use of judicial resources by resolving common issues of law and fact together. See Hoffman-La Rouche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). The decision as to whether a collective action is appropriate lies within the court's discretion. Bollinger v. Residential Capital, LLC, 761 F. Supp.2d 1114, 1119 (W.D. Wash. 2011).

In the Ninth Circuit, certification of a collective action is generally a two-step process. Saravia v. Dynamex, Inc., 310 F.R.D. 412, 422 (N.D. Cal. 2015). At the first step, the issue is whether plaintiffs have identified other employees who are similarly situated to them, such that they are potential opt-in plaintiffs and should be given notice of the action. Heath v. Google Inc., 215 F. Supp.3d 844, 850 (N.D. Cal. 2016). Although the named plaintiffs bear the burden of showing "substantial similarity" at the notice stage, discovery has not yet occurred, and courts must rely on the pleadings and affidavits submitted by the parties. Bollinger, 761 F. Supp.2d at 1119. Because the "sole consequence of conditional certification is the sending of court-approved written notice to employees" (Genesis Healthcare Corp. v. Symczyk, __ U.S. __, 133 S. Ct. 1523 (2013)), little more is required than "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan and a showing that plaintiffs are generally comparable to those they seek to represent" (Heath, 215 F. Supp.3d at 851 (internal quotation marks omitted)). The standard is lenient: if plaintiffs present a reasonable evidentiary basis for their claims of collective injury, conditional certification is the usual result. Bollinger, 761 F. Supp.2d at 1119. The second stage of the analysis occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification, and the

1  court engages in a more searching review. Leuthold v. Destination Am., Inc., 224 F.R.D. 462,
2  466-67 (N.D. Cal. 2004).

3        Plaintiffs allege that mortgage loan officers working for Banner Bank and the other banks
4  defendant acquired perform essentially the same functions throughout Washington, Oregon,
5  Idaho, California, and Utah. Plaintiffs allege that the identified functions cannot be
6  accomplished during normal business hours, that defendant requires mortgage loan officers to be
7  available whenever clients need them, and that defendant knew that the mortgage loan officers
8  were working more than 40-hours per week but discouraged accurate reporting of overtime
9  hours and refused to compensate for overtime hours that were not pre-approved. Plaintiffs
10 further allege that, when compensation was paid for overtime hours, it was calculated based
11 solely on the mortgage loan officers' base salary and did not account for earned commissions.

12       In support of these allegations, plaintiffs provide job descriptions for Banner Bank loan
13 officers in Sacramento, San Diego, Ashland, Portland, Kirkland, and Spokane. The descriptions
14 are virtually identical and identify both in-office and out-of-office functions as essential to the
15 position. Many of the identified activities would necessarily be performed outside of normal
16 business hours. Decl. of Scott C.G. Blankenship (Dkt. # 17), Ex. B. Plaintiffs also provide three
17 declarations and a deposition transcript from four mortgage loan officers who worked for
18 AmericanWest Bank and/or Banner Bank. Decl. of Scott C.G. Blankenship (Dkt. # 17), Ex. E, F,
19 G, and H. The statements generally support the allegations that the loan officer positions, the
20 way hours were tracked, and compensation calculations were centrally controlled and did not
21 vary from branch to branch or regional office to regional office. The declarants and/or witness
22 also state that the job descriptions accurately describe the basic tasks and responsibilities of the
23 position, that many of the tasks and responsibilities could not be performed in the office or
24 during normal business hours, that mortgage loan officers were required to make themselves
25 available to customers and potential leads after hours and on weekends, that Banner expected the
26 loan officers to work during the regular banking hours (9 to 5), that Banner expected, knew, and

created circumstances that made loan officers available to customers and potential referral sources after hours, and that Banner knew the mortgage loan officers were working additional hours outside the office but pressured employees not to record overtime and/or refused to approve timesheets that recorded overtime hours. The declarants further state that they do not believe that the overtime hours for which they were compensated were properly calculated.

In response, Banner offers employee declarations tending to show that mortgage loan officers control their own schedules and have the flexibility to take time off during normal business hours to make up for any after hours activities. Dkt. # 21. Banner states that it expects its loan officers to work around 40 hours per week and has policies that specifically prohibit working "off the clock" and/or failing to record all hours worked. Dkt. # 20 at 10. Banner also provided evidence that it includes commissions when calculating base rate for overtime purposes, but it does so in a two-step process, the second step occurring after commissions for the pay period have been determined.

At this stage of the proceeding, plaintiffs have the burden of providing substantial (not undisputed) evidence that Banner's mortgage loan officers were subject to the same policies that adversely affected the named plaintiffs. That is all that is required under the FLSA, which authorizes representative actions to promote efficiencies for the parties and the court. In this case, both parties have taken the position that the company has uniform compensation policies that apply throughout its branch offices: they simply disagree on what those policies are. Plaintiffs argue that Banner's policies, as applied, invariably compelled "off the clock" work, that Banner knew its loan officers worked more than 40 hours per week, and that requests for overtime pay were not only discouraged, but rejected. Banner, on the other hand, argues that its written policy forbidding off-the-clock work was applied in practice and any after hours work was either compensated or the employee took compensatory time during normal business hours. Defendant may ultimately be able to defeat plaintiffs' wage claim by showing that it did, in fact, compensate its employees for all hours worked. Or the scope of the collective action may be

limited as a result of evidence showing that the pressures plaintiffs report only occurred in certain offices. Or the amount of the unpaid overtime per employee may be relatively small, reflecting only a handful of hours over the course of a year. At this point, however, both plaintiffs' and defendant's versions of the reality at Banner Bank offices are plausible, and the truth cannot be ascertained on the record submitted. Defendants' challenges will be considered after discovery is complete during the second stage of the collective action analysis. In this pre-discovery context, the Court finds that plaintiffs have sufficiently supported their allegations of a uniform policy resulting in unpaid hours and that other loan officers should be given notice of this litigation and an opportunity to opt in if they, too, feel that they have been injured by Banner's alleged failure to pay overtime wages.

With regards to the overtime calculation issue, however, plaintiffs' allegations are not substantial and their evidence is non-existent. Plaintiffs allege that, when overtime compensation was paid, defendant calculated the time-and-a-half rate using only plaintiffs' base salary and did not include earned commissions. Dkt. # 1 at ¶ 25. In their declarations, plaintiffs state only that they do not believe the overtime rate included commissions because "[n]o one said that it did." Dkt. # 17-1 at 86, 96, and 107. The lack of an affirmative statement regarding how the overtime rate was calculated is not evidence of any irregularity. Plaintiffs provide no information regarding the basis for their belief that they have been short-changed: there is no evidence of the calculations Banner used, no pay stubs, and no facts raising a plausible inference of wrongdoing. This claim will not be conditionally certified.

For all of the foregoing reasons, plaintiffs' motion for conditional certification of a collective action is GRANTED as to the "off the clock" issue. Banner shall, within fourteen days of the date of this Order, produce contact information in electronic and importable format (including names, addresses, and email addresses) for all mortgage or residential loan officers who worked for Banner or its predecessor in interest, AmericanWest Bank, at any time since

December 15, 2014.[2] Plaintiffs shall, within fourteen days of receipt of the contact information, mail and/or email notice of this collective action in substantially the form attached hereto. Putative collective members shall have ninety days from the date the notice is mailed to opt-in.

Dated this 15th day of December, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[2] The parties agree that the longest limitations period at issue in this case is three years and two weeks.

Plaintiffs have not provided any evidence regarding the compensation policies of other predecessors in interest. There is no reason to believe that a mortgage loan officer who worked for the Bank of Sacramento before it was purchased by AmericanWest Bank was impacted by the compensation policy of which plaintiffs complain.

If communications sent via U.S. mail and email are unsuccessful, defendant shall, upon receipt of a copy of the returned communication(s), provide telephone numbers and birth dates of potential plaintiffs to assist in their location.