THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY BOLDING, and MICHAEL MANFREDI, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANNER BANK, a Washington Corporation,<br><br>    Defendant. | No. 2:17-cv-0601 RSL<br><br>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>NOTE ON MOTION CALENDAR:<br>June 8, 2018 |

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   CLASS DEFINITION AND REQUEST FOR RELIEF ..................................... 3

III.  STATEMENT OF FACTS .................................................................................. 4

   A.   All MLOs (Putative Class Members) Were Subject To the Same Job Requirements, Essential Job Duties, and Compensation Structure ...................................... 4

   B.   MLOs Regularly Worked Over 40 Hours To Complete Their Job Requirements ....... 5

   C.   Defendant's Policies and Practices Prevent MLOs From Reporting All the Hours They Worked ......................................................................................................... 6

      1.   Defendant's Written Pre-Approval Policy and Timekeeping Policy Prevents MLOs From Reporting All the Hours They Worked And Are Legally Owed .................... 7

      2.   Defendant Discouraged MLOs Who Worked Overtime From Reporting the Overtime They Worked ................................................................................... 9

      3.   Defendant Failed To Either Define Compensable Work or Properly Educate MLOs What Is Compensable After Reclassification ............................................... 9

   D.   MLOs Were Not Compensated For Overtime Worked, a Common Issue ................ 10

   E.   Defendant Required and/or Permitted MLOs To Work Without Compensation ....... 10

IV.  AUTHORITY AND ARGUMENT ................................................................. 11

   A.   Class Certification Standards Under Rule 23 ..................................................... 11

      1.   Class Certification Generally .................................................................... 11

      2.   Subclasses Are Appropriate Under Rule 23(c)(5) ....................................... 11

      3.   The Class and Subclasses Are Sufficiently Numerous .................................. 12

      4.   Plaintiffs Pled Issues Of Law and Fact Common To the Class and Subclasses ..... 14

      5.   The Class Representatives' Claims Are Typical Of the Class and Subclasses ....... 14

      6.   Representative Plaintiffs and Counsel Will Protect the Interests Of the Class ....... 15

   B.   The Class Action Meets FRCP 23(b)(3)'s Requirements ..................................... 15

      1.   Common Claims Predominate ................................................................... 16

      2.   Differences In State Law Do Not Defeat Predominance ................................ 20

      3.   A Class Action Is a Superior Means of Adjudication .................................... 21

   C.   The Class Also Meets the Requirement under FRCP 23(b)(1) ............................. 23

   D.   Statutes of Limitations Applicable to Subclasses ............................................... 23

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page ii

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

# I.    INTRODUCTION

Plaintiffs Kelly Bolding and Michael Manfredi move this Court for an order granting class certification under Federal Rule of Civil Procedure 23. Plaintiffs and others similarly situated (hereafter collectively "Plaintiffs" or "MLOs") are current and former Washington State, Oregon, Idaho, and California employees (including Loan Officers, Residential Lenders, and Real Estate Commissioned Loan Officers) of Defendant Banner Bank ("Defendant" or "Bank"). Plaintiffs' Motion for Class Certification is based upon the common issues of whether: (1) Plaintiffs worked without compensation because of written and unwritten Bank policies that discouraged and/or barred them from reporting all the hours they worked; and (2) Defendant knew or should have known that Plaintiffs were working without compensation.

A class should be certified because Defendant had a uniform written policy that barred Plaintiffs from reporting all the hours they worked. Defendant's written policy required Plaintiffs to both request and receive "pre-approval" from supervisors before working overtime. *Exh. C.* However, Plaintiffs' job also required them to be available and responsive to customers twenty-four hours a day, seven days a week. Constant availability was the job requirement when Plaintiffs were classified as "exempt," and nothing about the job changed when mortgage loan officers were re-classified as non-exempt employees. Customers who are buying a house expect their loan officer to be available on demand. Defendant knew this; it even put Plaintiffs' personal cell phone numbers on the company website, so Plaintiffs were always available. *Exh. B.*

The pre-approval policy left Plaintiffs between the proverbial rock and a hard place. Plaintiffs could either work hours they were not pre-approved for and could not report, or they could lose customers (and eventually be fired) because they were awaiting "pre-approval" to check their e-mail, answer their cell phone, go to a closing, or otherwise do their job. A written policy that bars or discourages employees from reporting all the hours they work is a classic common issue that supports a class action. *See, e.g., Allchin v. Volume Servs., Inc.,* 2107 WL 3337141, at \*5 (S.D. Cal. August 4 2017) ("Were Plaintiffs' contention that the application of

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 1

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Defendants' written policy resulted in a miscalculation of overtime pay, then certainly this common contention requirement would be met.")

A class should also be certified because Defendant had a common unwritten policy that discouraged employees from reporting overtime. The Ninth Circuit Court of Appeals previously certified a class based upon this precise issue. In *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015), the Court certified a class of insurance adjusters who were discouraged and/or barred from reporting all the hours they worked. The Court held that the common question of "whether [the defendant] had an 'unofficial policy' of denying overtime payments while requiring overtime work predominated over any individualized issues regarding the specific amount of damages a particular class member may be able to prove." *Id.* at 1164. "Policy-to-violate-the-policy" cases such as this one, where an employer has unwritten policies to violate formal written policies, are also "routinely" found suitable for class certification. *Brinker Restaurant Corp. v. Super. Ct.*, 273 P.3d 513, 531 (Cal. 2012) ("Claims alleging a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

On December 15, 2017, this Court ordered Conditional Certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Dkt. 33. The facts supporting the Court's order granting conditional certification under FLSA are applicable to certification under Rule 23. The Court's conclusion that Plaintiffs presented substantial evidence of common policies is also applicable and relevant to this motion. Finally, Plaintiffs request that the Court order Defendant to produce a list of all employees who worked for Defendant within the applicable statutes of limitations for each of the respective states.[1]

---

[1] On May 4, 2018, Plaintiffs timely filed a Motion for Leave to File an Overlength Brief under Local Civil Rule 7(f). Dkt. 70. Plaintiffs requested six additional pages for this Motion, for 30 total pages. The Court has not yet ruled on Plaintiff's Motion. Plaintiffs believe additional pages are very necessary; Plaintiffs would not have otherwise requested an overlong brief. Plaintiffs request that the Court grant its Motion For Leave to File an Overlength Brief after this Motion is filed. In the alternative, although Plaintiffs have requested 30 pages, they have only used 26 pages. If the Court denies Plaintiff's motion for an overlength brief, Plaintiffs respectfully request leave to re-draft and re-file this Motion within 24 pages.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 2

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## II.      CLASS DEFINITION AND REQUEST FOR RELIEF

Plaintiffs ask the Court to certify a class consisting of the following four subclasses under Federal Rule of Civil Procedure 23:

a.      All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers and/or Residential Lenders who were employed by Banner Bank, or by any predecessor, parent, subsidiary, or affiliate of Banner Bank including AmericanWest Bank, Islands Bank, Bank of Sacramento, PremierWest Bank and Siuslaw Bank, **in Washington State, at any time from April 17, 2014 to Present (hereafter, "Washington Subclass").**

b.      All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers and/or Residential Lenders who were employed by Banner Bank, or by any predecessor, parent, subsidiary, or affiliate of Banner Bank, including AmericanWest Bank, Islands Bank, Bank of Sacramento, PremierWest Bank and Siuslaw Bank, **in Oregon, at any time from April 17, 2011 to Present (hereafter, "Oregon Subclass").**

c.      All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers and/or Residential Lenders who were employed by Banner Bank, or by any predecessor, parent, subsidiary, or affiliate of Banner Bank including AmericanWest Bank, Islands Bank, Bank of Sacramento, PremierWest Bank and Siuslaw Bank, **in California at any time from April 17, 2013 to Present (hereafter, "California Subclass").**

d.      All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers and/or Residential Lenders who were employed by Banner Bank, or by any predecessor, parent, subsidiary, or affiliate of Banner Bank including AmericanWest Bank, Islands Bank, Bank of Sacramento, PremierWest Bank and Siuslaw Bank, **in Idaho, at any time from April 17, 2015 to Present (hereafter, "Idaho Subclass")**.

Plaintiffs now move the Court for an order:

(1)     Certifying a class consisting of the California, Oregon, Washington State, and Idaho Subclasses defined above;

(2)     Ordering Defendant to produce a complete list of all current and former Mortgage Loan Officers who worked for Banner Bank, or by any predecessor, parent, subsidiary, or affiliate of Banner Bank including AmericanWest Bank, Islands Bank, Bank of Sacramento, PremierWest Bank and Siuslaw Bank : (1) in Washington State from April 17, 2014 to present; (2) in Oregon from April 17, 2011 to present; (3) in California from April 17, 2013 to present; and (4) in

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 3

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Idaho from April 17, 2015 to present; or any other state where Mortgage Loan Officers worked for the Bank, for the applicable statutory period(s);

(3)     Certifying Scott Blankenship, and the Blankenship Law Firm, as class counsel;

(4)     Certifying Plaintiffs Kelly Bolding, Michael Manfredi, and proposed additional Plaintiff Sarah Ward, as class representatives for the Oregon subclass. *See* Dkt. 73. (Plaintiff's Motion to Amend Complaint).

### III.     STATEMENT OF FACTS

On April 17, 2017, Plaintiffs Kelly Bolding and Michael Manfredi filed this putative class action asserting that Defendant unlawfully denied wages to a putative class.

**A.     All MLOs (Putative Class Members) Were Subject To the Same Job Requirements, Essential Job Duties, and Compensation Structure**

Defendant is a commercial bank headquartered in Washington. Dkt. 6 at 6. MLOs sell residential mortgage loans to Defendant's customers through offices and branches located in Washington, Oregon, Utah, Idaho and California. Some Putative Class Members may have had different titles; virtually all had identical job descriptions. Dkt. 33 at 3:13-14 ("The descriptions are virtually identical and identify both in-office and out-of-office functions as essential to the position."). The applicable job descriptions all have identical "job requirements:"

1. Performs the actions needed to attract desirable loan applications and to select those meeting the Bank's requirements.
2. Call on realtors and builders together with bank branch personnel to encourage them to refer potential borrowers to the Bank.
3. Meeting with potential borrowers and preparing loan applications.

*Exh. A* at 1, 3, 5, 7, 9, 11. The job descriptions contain uniform essential job duties, and job requirements, which applied to all MLOs employed by Defendant, regardless of where they worked. *Exh. F* ¶¶ 15, 16; *Exh. G* ¶¶ 11, 12.

Indeed, the Court noted when certifying the FLSA class that Defendant subjected MLOs to a uniform "Incentive Compensation Plan." Dkt. 33 at 3:19-21 ("The statements [provided by Plaintiff] generally support the allegations that…compensation calculations…were centrally controlled and did not vary from branch to branch or regional office to regional office."); *see*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 4

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*also* Dkt. 26, *Exh. J* (Uniform Compensation Plan signed by MLO Kelly Bolding). Under this plan MLOs were "considered non-exempt employees and paid at an hourly rate…." Dkt. 26, *Exh. J*; *see also* Dkt. 9 at 9:7-8 (stating that MLOs are non-exempt employees).  MLOs received commissions for loans they closed on top of their base salary. Dkt. 9 at 9:7-8.

Finally, Defendant subjects the MLO's to a uniform timekeeping system. Dkt. 33 at 3:19-21 (order noted that Plaintiffs declarations "generally support the allegations that…the way hours were tracked… did not vary from branch to branch…."). MLOs tracked their own time and submitted time sheets reflecting hours reviewed and approved by managers. *Exh. F* ¶ 43.

**B.      MLOs Regularly Worked Over 40 Hours To Complete Their Job Requirements**

MLOs had to work over 40 hours to both serve their current customers and develop a constant "pipeline" of referral sources for new customers. *Exh. E* ¶ 26 ("I regularly did work more than 40 hours in a week…."); *Exh. G* ¶ 34 ("MLOs had to regularly work over 40 hours in a week, and I did work over 40 hours."); *Exh. H* ¶ 14 ("As an MLO at the Bank, I was required to work more than 40 hours per week in order to perform my essential job functions…."). The nature of the MLO job meant that MLOs were generally required to work over 40 hours a week simply to complete their essential job duties. *Exh. E* ¶ 26; *Exh. F* ¶ 4:12-13; *Exh. G* ¶ 4:16-17; *Exh. H* ¶ 14; *Exh. J* ¶ 13; *Exh. K* ¶ 14.

Defendant's policies and practices forced MLOs to both work both during business hours (9:00 to 5:00) and before and after business hours to secure and maintain customers seeking loans. *Exh. E* ¶¶ 29, 31; *Exh. F* ¶¶ 32, 34; *Exh. G* ¶¶ 27, 28; *Exh. H* ¶ 31; *Exh. J* ¶ 30. MLOs had to make themselves available to customers, and did make themselves available both within and outside business hours. *Id.* Qualified customers generally needed to be employed and would not be able to meet or communicate during business hours. *Exh. G* ¶ 19. Additionally, the loan origination process requires MLOs to work with Defendant's customers over a period of weeks or even months. *Exh. J* ¶ 15. Many facets of financing a home, like closing (which require loans and financing) happen on evenings and weekends. *Exh. G* ¶ 20. An MLO unwilling to

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 5

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

accommodate the customer's needs would lose the borrower's business, the commission from the loan, critical income for the bank, and ultimately her job.[2]

Defendant's written essential job duties requires the constant development of referral sources for new customers. An MLO's job duties included "[p]erform[ing] the actions needed to attract desirable loan applications…." *Exh. A.* Job requirements included "calling on realtors and builders…to encourage them to refer potential borrowers…." *Id.* Essential job functions also included developing realtor business through a "structured outside calling program" and "attend[ing] regular Realtor Association and Builder Association meeting." *Id.* at 1, 2.

MLOs did not share customers. *Exh. H* ¶ 32. Their only source of new customers was referrals they developed. *Id.* ¶ 39. Defendant put enormous pressure on MLOs to constantly develop referral sources and bringing in new business. *Exh. G* ¶ 13; *Exh. H* ¶ 35. Much of this work developing referral sources, including realtor meetings, realtor "caravans" to open houses, and education classes, happened after regular business hours. *Exh. G* ¶¶ 17, 24; *Exh. H* ¶ 44.

Even if an MLO did not wish to be available around-the-clock, Bank policies ensured they were. Defendant actually listed MLOs' personal cell phone numbers on its website, making MLOs accessible at all times to potential customers. *Exh. B* (Bank website with personal cell phone numbers of MLOs). MLOs were expected to include personal cell phone numbers on their business cards. *Exh. H* ¶ 26. MLOs were generally expected to, and did, check work e-mail on personal cell phones. *Id.* ¶ 28.

## C.  Defendant's Policies and Practices Prevent MLOs From Reporting All the Hours They Worked

Defendant's policies and practices uniformly prevent MLOs from reporting all hours worked. Its class wide written policy requires MLOs to pre-approve overtime, a virtual impossibility when much of the work is undefined depending on what may arise before or after

---

2 *See Exh. G* ¶ 20 ("To be successful at this job and meet the bank's performance expectations MLOs had to be available…."); *Exh. H* ¶ 34 ("If a borrower/realtor/business did not feel I was responsive enough, they could simply find another company to work with); *Exh. J* ¶ 53 ("If I confined my work to business hours and refused to contact my customers on evenings and weekends, I would have lost current customers….I expect the bank would have terminated an MLO who had no customers); *Exh. K* ¶ 54 (same).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 6

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

business hours or on weekends. Defendant's unwritten policy further discourages employees from reporting all hours worked. Its failure to define compensable "work" after Defendant re-classified MLOs as non-exempt also prevents the MLOs from submitting accurate time records, depriving them of wages legally earned and owed including overtime.

      1.    <u>Defendant's Written Pre-Approval Policy and Timekeeping Policy Prevents MLOs From Reporting All the Hours They Worked And Are Legally Owed</u>

The Bank generally requires MLOs to request and receive pre-approval for overtime in advance. The Uniform Compensation Plan states: "All overtime *must* be approved by the Lender's Regional Manager *prior to working those hours*." Dkt. 26, *Exh. J* (emphasis added). Defendant's policy manuals also state in relevant part that "[n]onexempt employees *must obtain approval* from their supervisors *prior to reporting overtime*." *Exh. C* at 3, 4, 7 (excerpts of employee handbooks with highlighted text) (emphasis added). The handbooks additionally state that nonexempt employees are to report overtime to their supervisors "daily" (even though the work day stretched into the evenings and weekends) *Id.*

Defendant's pre-approval policy on its face deters and/or bars MLOs from reporting all the hours they worked. The very nature of an MLO's job duties make it both impractical and often impossible to comply with the pre-approval policy. There was no way for an MLO to know in advance, and thus obtain the required pre-approval for, unplanned calls or e-mails from customers that required a response – calls and e-mails that Defendant knew MLOs had to timely respond to do their jobs. *See* Section II.B, *supra*. It forces MLOs to choose between ignoring the pre-approval policy or complying with the policy and risk losing potential and existing bank customers. *Exh. H* ¶ 59:19-22. MLOs cannot reasonably anticipate the necessary hours in advance and receive approval in advance when much of the work occurs before and after business hours such as checking work e-mails, using their laptops to fill out loan documents, attending a closing, and fielding unanticipated calls from potential and existing customers. *See* Section II.B, *supra* (describing essential job duties, and describing need to be constantly available to customers and referral service).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 7

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

MLOs understood the policy the only reasonable way to construe it: Without preapproval, MLOs could not report (and be paid for) hours they worked including overtime. *Exh*. J ¶¶ 46, 47; *Exh*. K ¶¶ 46, 47; *Exh*. L ¶ 5. The uniform "pre-approval" policy thus operated to deny compensation to MLOs who worked more than 40 hours but had not obtained "pre-approval." It happened in practice. The deposition of putative class member Lisa Knight is illustrative:

> Q: Okay. And did—and did you ever get paid for working overtime as a loan officer at AmericanWest Bank or Banner Bank?
> A: No. *We had to have overtime pre-approved first, so I never*….
> Q: So –
>  A: – *put it in*.
> Q: Okay. So, basically, because you had to have overtime approved first, it – when you  worked overtime, *you basically just wouldn't submit it because it wasn't approved first*. Is that fair to say?
> THE WITNESS: Correct.

*Exh. I* at 89:10-24 (emphasis added). The pre-approval policy caused MLOs not to report hours they actually worked. *Exh. J ¶ 4*; *Exh. K ¶ 46*.

Defendant's uniform timekeeping policies operated in conjunction with the pre-approval policy to prevent Plaintiffs from reporting all hours worked. Defendant required MLOs to clock in and out every time they arrived at work, left work, or took a break.  Defendant's policy states: "All nonexempt employees will be required to keep track of their time on a daily basis. *This will include clocking in during the morning, out and in for lunch periods, and out in the evening*." *Exh. C* at 7 (highlighted text). Defendant also required Plaintiffs to take "an unpaid lunch period of 30 to 60 minutes approximately midway through the day. You may not take a shorter lunch or skip lunch to leave early except in special situations…." *Exh. C* at 6 (highlighted text). But MLOs worked both before the office opened at 9:00 a.m. and after the office closed at 5:00. *Exh. E ¶¶ 29, 31; Exh. F ¶¶ 32, 34; Exh. G ¶¶ 27, 28; Exh. H ¶ 31; Exh. J ¶ 30; Exh. K ¶ 30*. If MLOs "clocked in" when the office opened and "clocked out" when it closed, they were *automatically* not reporting the additional morning, evening hours, and weekend hours they worked.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 8

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

### 2. Defendant Discouraged MLOs Who Worked Overtime From Reporting the Overtime They Worked

There was also an unwritten policy that Defendant knew discouraged MLOs who did work overtime from reporting (and payment for) hours worked regardless of having pre-approval or not. Declarations from MLOs prove they were pressured, and in some cases explicitly told, not to report all hours they worked and were to have no more than 40 hours on their time cards.[3]

### 3. Defendant Failed To Either Define Compensable Work or Properly Educate MLOs What Is Compensable After Reclassification

The Bank forced unpaid work time not only through common written and unwritten polices, but also by knowingly failing to promulgate policies to define compensable "work" or educate MLOs about what work was compensable after properly classified MLOs as non-exempt hourly employees. For many years, the Bank incorrectly classified MLOs as "exempt" employees precluding them from receiving overtime. *Exh. F* ¶ 4. Defendant paid MLOs by commission only and did require time sheets. *Id.* After Defendant properly classified MLOs as hourly employees, Defendant still expected them to work over 40 hours per week. *Id.* "Nothing about the job changed" after MLOs were re-classified. *Id.* ¶ 5

The Bank's Uniform Compensation Plan following re-classification stated as follows: "The Bank does *not* allow non-exempt employees to work "off the clock." *All work time is compensable and must be reported.*" Dkt. 20 at 4:23-26 (emphasis added); *id.* at 5:1-4 (describing same or substantively similar provisions in employee handbooks). The Bank did not define compensable "work time" either in its Uniform Compensation Plan or in any other

---

3 *Exh. E* ¶ 40 ("I felt pressured not to record overtime, even though I had to work overtime to do my job."); *Exh. F* ¶ 13 ("I specifically remember Troy Simms, [Senior VP Director of Residential Lending for AWB] saying, '[y]ou know how this works, I can't give you overtime, but you still have to do the work,'…This was the bank-wide practice throughout the mortgage division."); *Exh. G* ¶ 2:16-18 ("I…knew that I needed to work more than 40 hours per week to succeed ay the job, but could not get compensated for my overtime."); *Exh. H* ¶ 58 ("My managers knew that I was not recording [overtime] and discouraged me from recording it. I felt pressured not to record overtime, even though I had to work overtime to do my job."); *Exh. I* at 94:4-8 (stating she would not be comfortable reporting overtime because of how she had seen manager Ken Hunt [VP and team Lead of the Spokane WA/Northern Idaho Region for AWB and current VP real Estate Regional Manager for Banner] treat another employee for reporting overtime); *Exh. J* ¶ 47 ("myself and other MLOs were expected not to record the overtime we actually worked and were expected to have no overtime on our time sheets.") *Exh. K* ¶ 53 ("I felt pressured not to record overtime….").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 9

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

common written policy. As a result, MLOs did not actually understand what did and did not constitute compensable work. *Exh. E* ¶ 43; *Exh. F* ¶ 49 (same); *Exh. G* ¶ 43 (same).

In addition, the Bank did not properly educate MLOs about what qualified as compensable work after MLOs were re-classified. *Exh. E* ¶ 47; *Exh. F* ¶¶ 49-52; *Exh. G* ¶¶ 43-46. Because Defendant left MLOs in the dark about what was and was not compensable, MLOs did not know what hours to report. *Id.* Defendant's decision to not define "work" or educate MLOs further proves their willful failure to compensate MLOs for all hours worked.

**D.   MLOs Were Not Compensated For Overtime Worked, a Common Issue**

This common issue arises out of the written and unwritten policies and practices described above. There is a common issue that MLOs were regularly uncompensated for all the hours they worked. Because Defendant discouraged MLOs from reporting the hours worked, MLOs did not report them. They were regularly uncompensated for wages and overtime. *Exh. E* ¶ 40; *Exh. F* ¶ 46; *Exh. G* ¶¶ 8, 40; *Exh. H* ¶ 8:26; *Exh. I* at 89:8-24, 91:2-94:11, 97:21-98:11, 98:25-99:19; *Exh. J* ¶ 52; *Exh. K* ¶ 53; *see also* Section II.B, *supra.*

**E.   Defendant Required and/or Permitted MLOs To Work Without Compensation**

Finally, there is a common question of whether Defendant required and/or permitted MLOs to work without compensation. As the evidence shows, Defendant did require work without compensation. Plaintiffs were required to work over 40 hours just to complete their essential job duties. *See supra* § 2.A., B. Defendant also permitted MLOs to work without compensation, because it knew MLOs were working more hours than they reported and yet did nothing. Defendant knew because managers and supervisors regularly received after-hours communications from MLOs, managers and supervisors could see when MLOs logged into the system from home, and MLOs openly discussed their morning, evening, and weekend work during meetings and other conversations. *Exh. E* ¶ 38; *Exh. F* ¶ 43; *Exh. G* ¶¶ 35, 36, 37; *Exh. H* ¶ 56; *Exh. J* ¶ 52; *Exh. K* ¶¶ 51, 53.

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## IV. AUTHORITY AND ARGUMENT

**A.      Class Certification Standards Under Rule 23**

1.      Class Certification Generally

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2006). In determining whether a class should be certified, the court considers the merits of the underlying claims only to the extent that the merits overlap with the Rule 23(a) analysis. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011). The Court should not conduct a "mini-trial" to determine which party would actually ultimately prevail on the claims asserted. *Id.*

Class certification should be decided "at an early practicable time." Fed. R. Civ. P. 23(c)(1). Certification should not be delayed merely because discovery is ongoing. *True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 273188, at *3 (N.D. Cal. January 20, 2015) (rejecting motion to bifurcate discovery when bifurcation would make it impossible for plaintiff to file motion for class certification by deadline in case scheduling order).  Plaintiffs also filed their complaint more than a year ago, meaning Defendant has had over a year to prepare its defense to this Motion. Dkt. 1. The Court should reject any argument that Defendant requires additional time or additional discovery to respond to Plaintiffs' motion.

2.      Subclasses Are Appropriate Under Rule 23(c)(5)

Under Rule 23(c)(5) "a class may be divided into subclasses that are each treated as a class under this rule." *Am. Timber & Trading Co. v. First Nat. Bank of Or.*, 690 F.2d 781, 786–87 (9th Cir. 1982). Plaintiffs move for certification of four state subclasses. Plaintiffs pled these same four subclasses in the complaint. Dkt. 1 at 7- 9.  Rule 23(a) sets forth prerequisites for class certification, commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In determining whether to allow a suit to proceed as a class action, the trial court is afforded great discretion.

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*Brown v. Brown*, 6 Wn. App. 249, 492 P.2d 581 (1971). However, "[i]f there is an error to be made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of trial so requires." *Id.* at 256 (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)). Citing the Tenth Circuit, *Brown* held that a liberal interpretation of Rule 23 rather than a restrictive one is necessary; it avoids multiple lawsuits and costs associated the class members and protects the Defendant from facing identical litigation. *Id.*

      3.    <u>The Class and Subclasses Are Sufficiently Numerous</u>

A class should be certified where Plaintiffs demonstrate the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, where a class contains at least 40 members, federal courts have recognized a rebuttable presumption that joinder is impracticable." *Miller v. Farmer Bros.*, 64 P.3d 49, 53, 115 Wn. App. 815 (2003) (citations omitted). A smaller class will still meet the numerosity requirement when there are future, as-yet-undefined class members, because joinder of unknown members is "inherently impractical." *McMillon v. Hawaii*, 261 F.R.D. 536, 543 (D. Hawaii 2009) (certifying class of 10 identifiable members and other unknown members); *see also Rannis v. Recchia*, 380 F. Appx. 646, 2010 WL 2124096, at *4 (9th Cir. May 27, 2010) (upholding 20-member class); *Inland Empire—Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *8 (slip copy) (C.D. Cal. February 26, 2018) (citing cases certifying classes of less than 40).

Pursuant to the Court's order following certification of the FLSA class, Defendant produced a list of 167 employees between the dates of December 14, 2014 to December 2017. *Exh. D.* Because FLSA has a more limited statute of limitations, 167 employees is substantially less than the number of putative class members here. In contrast, the Class Complaint here tolls the claims at the date of filing, April 17, 2017, meaning claims stretch from the present back to each state's respective statute of limitations. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983) (holding that filing of a class action complaint tolls statute of limitations for both named plaintiffs and members of the putative class). The putative class also includes MLOs

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 12

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

hired after Defendant provided the list in December 2017. *Exh. D*; *see also* Blankenship Decl. This incomplete list still includes 87 employees in Washington, 36 in Oregon, 32 in California, and 11 in Idaho. *Exh. D*.

Even without including recently hired MLOs, and other MLOs employed from April 17, 2013 to the present, a class of 87 members are presumptively numerous. *Miller*, 115 Wn. App. at 821. The Oregon putative class is subject to a six-year statute of limitations for unpaid wages, and thus this class properly should include MLOs from April 17, 2011 to the present. *See supra* § IV.E(2). Defendant's FLSA list for Oregon class members is incomplete. *Exh. D*. When Defendant produces a complete list of Oregon putative class members and they are added to the 36 known members, the Oregon putative class will unquestionably exceed 40 members, and will be presumptively numerous.

A similar analysis applies to the California Subclass. The California Subclass is subject to a four-year statute of limitations for at least one of its claims. *See infra* § IV.E(3). The list disclosed by Defendant has at least 32 California employees between December 2014 and December 2017 without including putative class members. *Exh. D*. Defendant should produce a list of California Bank employees from April 17, 2013 to April 17, 2017 (the date this case was filed). The additional year of unknown class members who fall within the statute means the California Subclass, like the Oregon Subclass, will almost certainly exceed 40 members.

With respect to the Idaho Subclass, the list disclosed by Defendant includes 11 Idaho employees between December 2014 and December 2017. However, Defendant operates fifteen different offices in Idaho. *See* All Branch Locations, Banner Bank, https://www.bannerbank.com/all-locations#Idaho (last visited May 4, 2018) (listing Idaho branches). Because Defendant has not provided an updated list of putative class members, Plaintiffs do not know how many MLOs have been employed by Defendant since it disclosed the list in December 2017. Assuming each office currently employs at least one MLO, there may be up to 15 additional unknown Idaho class members.  When these unknown class members are added to the 11 known class members, the class will likely be presumptively numerous.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 13

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.   Plaintiffs Pled Issues Of Law and Fact Common To the Class and Subclasses

As long as "a single issue common to all members of the class" is pled, then certification should be granted.  *See* 1 Conte & Newberg § 3:5. "[A]ny error, if there is to be one, should be committed in favor of allowing the class action." *Smith v. Behr Process Corp.,* 113 Wn. App. 306, 318-19, 54 P.3d 665 (2002). In certifying the FLSA class, this Court recognized that the Plaintiffs have pled multiple issues common to all class members.  Specifically, Plaintiffs pled a common "uniform policy resulting in unpaid hours….," and have produced substantial evidence of the same.  Dkt. 33 at 5:7-8; 4:14-16.  Similarly, this issue implicates other common questions of whether "Banner's policies, as applied, invariably compelled 'off the clock' work, Banner knew its loan officers worked more than 40 hours per week, and that requests for overtime pay were not only discouraged but rejected." Dkt. 33 at 4:20-22. Plaintiffs have now provided even more evidence supporting the multiple common issues pled in the class complaint, the same allegations applied in the conditional FLSA certification motion. Because Plaintiffs have pled multiple issues common to all class members, the commonality requirement is satisfied.

5.   The Class Representatives' Claims Are Typical Of the Class and Subclasses

The third requirement for maintaining a class action is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). As this Court previously recognized, the common issues discussed above are typical of the class. Dkt. 33 at 4:15-16 (stating, "at this stage of the proceedings, Plaintiffs have the burden of providing substantial (not undisputed) evidence that Banner's mortgage loan officers were *subject to the same policies that adversely affected the named plaintiffs*.") (emphasis added); Dkt. 33 at 5:6-9 (concluding Plaintiffs have produced substantial evidence MLOs were subject to same policies as named plaintiffs). Typicality is thus satisfied for the entire class.

Typicality is also satisfied with respect to each subclass, since at least one named plaintiff is a member of each subclass. *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005–06 (9th Cir. 1981) ("[A] fundamental requirement in the establishment of a subclass is that the

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 14

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

representative plaintiff must be a member of the class she wishes to represent [.]") Named Plaintiff Michael Manfredi is a member of the California Subclass. Named Plaintiff Kelly Bolding worked in both Washington and Idaho and can adequately represent both the Washington and Idaho subclasses. *Exh. L* ¶ 3 ("I worked for AmericanWest Bank and Banner Bank in both Washington State and Idaho."). Finally, Plaintiffs have filed a contemporaneous motion to amend the complaint and name Sarah Ward as a Class Representative. Ms. Ward is a member of the Oregon Subclass and is willing and able to represent the Oregon Subclass. *Exh. K* ¶ 9 ("I am willing and able to serve as a class representative for other MLOs who worked for the Bank in Oregon."). Typicality is thus satisfied with respect to all subclasses.

      6.    <u>Representative Plaintiffs and Counsel Will Protect the Interests Of the Class</u>

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Named Plaintiffs Kelly Bolding's and Michael Manfredi's claims, and the claims of proposed additional Named Plaintiff Sarah Ward, arise from the same course of conduct that damaged the putative class. There is thus no conflict between the named plaintiffs and class members.

Putative class counsel also has the qualifications and experience to satisfy the adequacy of representation standard with extensive experience in successfully prosecuting wage and hour class action litigation in state and federal courts for over twenty years. Plaintiffs' lead counsel has been previously approved as class counsel in many cases and will prosecute this class action effectively. *Blankenship Decl.* at ¶¶ 3-5.

**B.    The Class Action Meets FRCP 23(b)(3)'s Requirements**

Rule 23(b)(3) requires the Court to find "(1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.  23(b)(3).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 15

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

1.    <u>Common Claims Predominate</u>

The putative class can meet the first requirement of Rule 23(b)(3) that common questions predominate over individual ones. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The predominance analysis "focuses on 'the relationship between the common and individual issues in the case" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013). The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino*, 97 F.3d at 1234.

In wage and hour cases, "[w]here… the claim asserted by a proposed class is based upon a consistent employer practice, *class certification is usually appropriate*." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 398 (C.D. Cal. 2008) (emphasis added); *Brinker*, 273 P.3d at 531 ("Claims a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

The case of *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015) is directly on point. A putative class of insurance adjusters sued under California wage and hour laws. *Id.* at 1163. Before 2005, these adjusters were classified as exempt. *Id.* Before reclassification, they regularly worked over 40 hours per week. *Id.* Their work was a combination of office work and field work outside the office. *Id.* In 2005, when Allstate shifted its adjusters to hourly status, it did not change their work duties. *Id.* The putative class alleged that, after they were re-classified, their employer had an unofficial policy of discouraging its employees from reporting overtime, and that they were denied wages because of this policy. *Id.* at 1164. They specifically alleged there were common issues of:

> [W]hether class members generally worked overtime without receiving compensation *as a result of Defendant's unofficial policy of discouraging reporting of such overtime, Defendant's failure to reduce class members' workload after the reclassification, and Defendant's policy of treating their pay*

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*as salaries for which overtime was an "exception"*; (ii) whether Defendant knew or should have known that class members did so; and (iii) whether Defendant stood idly by without compensating class members for such overtime.

*Id.* (emphasis added).

The district court certified the class. It held the common question of "whether [the defendant] had an 'unofficial policy' of denying overtime payments while requiring overtime work predominated over any individualized issues regarding the specific amount of damages a particular class member may be able to prove." *Id.* The Ninth Circuit affirmed the decision, finding predominance because resolution of each of the common questions will "drive the resolution" of plaintiffs' claims on one of the three elements of their wage and hour claims. *Id.* at 1165.

Numerous courts in the Ninth Circuit have echoed the reasoning in *Jimenez* and have certified class actions in so-called "policy-to-violate-the-policy" cases where an employer has an unwritten practice of violating its formal policy. *See, e.g., Abdullah v. U.S. Security Assoc., Inc.,* 731 F.3d 952, 957-61 (9th Cir. 2013) (certifying subclass of employees who alleged employer had a uniform "policy to violate" its formal written meal and rest break policy); *McCowen v. Trimac*, 311 F.R.D. 579, 581 (N.D. Cal. 2015) (certifying class of employees who alleged employer Trimac had a uniform "policy to violate" its formal written meal and rest break policy that led to drivers being denied the meal and rest breaks, and determining common question of whether employer had informal policy predominated over individualized issues); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493 (E.D. Cal. 2004) (upholding certification of class of employees who alleged employers' policy generally permitted uncompensated off-the-clock work, and that they were owed wages for off-the clock work performed, and holding those issues were sufficiently common to support certification).

Courts have also recognized that a class should be certified if Defendant has a common written policy that results in unreported overtime. *Allchin*, 2107 WL 3337141, at *5 ("*Were Plaintiffs' contention that the application of Defendants' written policy resulted in a*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 17

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*miscalculation of overtime pay, then certainly this common contention requirement would be met*); (emphasis added); *see also Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 1105, 1118 (2011) (certifying conditional class of employees under FLSA, when Plaintiffs presented evidence that Defendant's written policies, applied nationwide, discouraged employees from seeking payment for all compensable time worked);"); *Morgan v. Rig Power, Inc.*, 2015 WL 12542545, at *3 (W.D. Tex. December 10, 2015) (noting that "submitting a written policy is one method of establishing that a putative class was a victim…").

Here, as in *Jimenez* and the other cases cited above, the claims asserted by Plaintiffs are based upon an employer's common written policies and unwritten practices that forced employees to work off-of-the-clock. The crux of Plaintiffs' liability case is whether: (1) Plaintiffs worked without compensation because of common written and unwritten policies discouraging and/or barring employees from reporting hours they worked; and (2) whether Defendant permitted and/or required Plaintiffs to work without compensation.

These common questions predominate over any questions affecting only individual members. The common questions predominate because their resolution will drive the answer to the elements of Plaintiffs' state law liability claims. Resolution of the first question, whether Plaintiffs worked without compensation as a result of Defendant's policies, drives the resolution of Class state law wage claims. Proving uncompensated work is an essential element of Washington, Oregon, and California state law wage claims.[4] Resolution of the second question,

---

[4] *United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 52, 925 P.2d 212 (1996), *abrogated on other grounds by Seattle Professional Engineering Employees Ass'n v. Boeing Co.*, 991 P.2d 1126 (2000) (holding that Washington claim for unpaid wages requires employee to prove the employer failed to pay them for all the time they were employed); *Nordling v. Johnston*, 283 P.2d 994, 999 (Or. 1955) (claim for uncompensated work under Oregon law requires proof of earned and unpaid wages); *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010) (to establish liability for unpaid wages under California law, the employee must prove she performed work for which she did not receive compensation).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 18

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

whether Defendant either permitted or required the uncompensated work, will also drive the answer to state law claims.[5]

The consistency of Plaintiffs' declarations also supports finding predominance. Consistent declarations supporting Defendant's practices and unwritten polices alone prove predominance. *Dilts v. Penske Logistics*, LLC, 267 F.R.D. 625, 638 (S.D. Cal. 2010) (finding that common issues predominate even where "[t]he majority of Plaintiff's evidence [was] anecdotal, consisting of the declarations of [employees]"); *see also Campbell*, 2015 WL 7176110, at *3 ("Courts generally hold that sufficient evidence of an unofficial policy exists where the plaintiff offers multiple declarations.").

Plaintiffs have submitted declarations and/or deposition testimony from class members across four states. All declarations state that Defendant had common written and unwritten policies that discouraged and/or barred MLOs from reporting the time they worked beyond 40 hours. *Exh. E ¶ 40; Exh. F ¶ 13; Exh. G ¶ 2:16-18; Exh. H ¶ 58; Exh. I 94:4-11; Exh. J ¶ 47; Exh. K ¶ 45.* All declarations state that because of these policies, they did not report all hours worked and did work without compensation. *Exh. E ¶ 40; Exh. F ¶ 46; Exh. G ¶¶ 8, 40; Exh. H ¶ 8:26; Exh. I 98:9-11; Exh. J ¶ 52; Exh. K ¶ 53.* Finally, all declarants state that Defendant knew MLOs were working more hours than they were paid for, and yet did nothing to stop it. *Exh. E ¶ 38; Exh. F ¶ 43; Exh. G ¶¶ 35, 36, 37; Exh. H ¶ 56; Exh. J ¶ 52; Exh. K ¶¶ 51, 53.*

To the extent class members experienced differences in the way they were as a group discouraged from reporting all the hours they worked, those individualize facts will not defeat predominance, because they "go directly to the common legal question of whether [the employer] should have compensated employees…." *See Kamar,* 254 F.R.D. at 398. If individual

---

5 *United Food,* 84 Wn. App. at 51-52 (explaining that under the Washington State Minimum Wage Act, the employee must prove she was not paid for all the time she was "employed," with "to employ" defined as "to permit" to work, and "permit" in turn defined as having actual or constructive knowledge); *Leonard v. Arrow-Tualatin, Inc.,* 708 P.2d 630, 631, 76 Or. App. 120 (1985) (upholding trial court's conclusion that for wage claim under Oregon statutory scheme, plaintiff must prove work was "authorized," meaning "required or controlled," by employer); *Adoma,* 270 F.R.D. at 548 (holding under California law, plaintiff must prove defendant knew or should have known plaintiff did unpaid work and yet stood idly by).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 19

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

acts or slight differences enforcing a common policy could defeat class certification, "policy-to-violate" class actions would not exist under Rule 23. Groups of employees victimized by unwritten policies would be denied that avenue of justice.

To the extent the hours class may receive compensation for differ, those individualized issues go to damages, and they will also not defeat predominance. *Yokohama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that "amount of damages is invariably an individual question and does not defeat class action treatment."); *Jimenez*, 765 F.3d at 1164 (upholding district court's finding that unofficial policy of denying overtime "predominated over any individualized issues regarding the specific amount of damages a particular class member may be able to prove.").

2.   <u>Differences In State Law Do Not Defeat Predominance</u>

As a threshold issue, because Plaintiffs seek to certify single-state subclasses, no choice of law analysis is necessary. *See Schnall v. AT&T Wireless Servs., Inc.,* 171 Wn. 2d 260, 285, 259 P.3d 129 (2011); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) The California, Oregon, Washington, and Idaho Subclasses are governed by the laws of those states.

In cases where, as here, plaintiffs seek adjudication under the laws of multiple states, the court must determine whether common questions will predominate over individual issues and whether litigation of state subclasses may be managed fairly and efficiently. *In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 692 (9th Cir. 2018). Different state laws do not defeat predominance. *See In re: Welding Fume Products Liability Litig.*, 245 F.R.D. 279, 295 (N.D. Idaho 2007) (determining common claims predominated despite minor differences between product liability laws of eight states).

Here, the elements for unpaid wages in Oregon, California, Washington, and Idaho are virtually identical and common issues predominate.  As argued in Section A, all state statutory schemes require the plaintiffs to prove that they: (1) performed uncompensated work; and (2)

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 20

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

the employer either required or permitted the work. Common issues apply to all of the state class members class-wide: Managers pressured MLOs and in some cases explicitly told them not to report all hours worked including overtime. Defendant knowingly failed to promulgate policies to define compensable "work" or educate MLOs about it while keeping the demands and job duties being the same after they became non-exempt. MLO job descriptions actually require work outside business hours. Managers knew class members worked off-the-clock since they regularly received after-hours communications from MLOs, could see when MLOs logged into the system from home, and heard MLOs openly discussing morning, evening, and weekend work but failed to require it be recorded.

Any minor differences between state wage and hour laws are addressed by the resolution of the common issues. California law requires Plaintiffs to have evidence the employer "stood idly by" while employees worked without compensation. *Adoma*, 270 F.R.D. at 548. Similarly, Oregon law requires evidence work was authorized, meaning "required or controlled," by the employer. *Leonard,* 708 P.2d at 632. The common issues discussed above make this a distinction without meaning.  Finally, any differences state laws differences regarding on damages will not defeat predominance, since damages are already an individualized question. *Yokohama*, 594 F.3d at 1094.

### 3.   A Class Action Is a Superior Means of Adjudication

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." The Class can meet the four factors that guide this determination: 1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" 2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" 3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and 4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Applying the first factor, because individual damages are comparatively small and would be cost-prohibitive, the class members derive little to no benefit from controlling their own cases individually. Each class member seeks compensation for portions of days or hours which they worked but were not paid for. In the absence of class treatment, these damages are not likely to be recovered because only some of the potential class members could afford to litigate. *See Trimac*, 311 F.R.D. at 586 (noting plaintiff's argument that claims for "portions of days or hours for which no pay was separately allocated" are small).

Certification of this action presents no risk that the adjudication of the class representatives' claims would be dispositive of the interests of the other members not party to the adjudication. or would substantially impair their ability to protect their interests. The class members are readily identifiable through Defendant's employment records. The notice required by Rule 23(c)(2) will ensure all putative class members are notified and given the opportunity to opt out. Applying the second factor, the nature and extent of litigation already begun, there are no other individuals alleging other claims in this case. There is thus no risk of wasting judicial resources. Turning to the third factor, the desirability of concentrating litigation in a particular forum, concentration in the Western District of Washington is desirable. Washington class members appear to make up the largest subclass, with at least 87 known class members from the FLSA list, and Washington is also a convenient forum because it is accessible to Oregon, Idaho, and California and an airport located near the Courthouse in Seattle.

Finally, turning to the fourth factor, adjudication of the common issues will most certainly serve judicial economy here. Given the legal theories and evidence that Defendant's company-wide policies and practices give rise to liability, class treatment is "likely to reduce litigation costs and promote efficient resolution of cases." *See Trimac,* 311 F.R.D. at 589 (reasoning that where plaintiffs alleged company-wide policy to violate written rest break policy, "[g]iven the legal theories and evidence, class treatment is likely to reduce litigation costs and promote efficiency relative to trying each case individually."). Indeed, it creates extreme waste and

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 22

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

inefficiency if class certification is denied. Forcing individuals to litigate claims individually with the same issues and the same witnesses is an unnecessary waste of judicial resources.

## C.       The Class Also Meets the Requirement under FRCP 23(b)(1)

FRCP 23(b)(1) also provides the basis to certify the class. It allows class certification when prosecuting separate actions by or against individual class members would create a risk of either: "(A) inconsistent or varying adjudications," or "(B) adjudications…that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impeded their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). The putative class meets the requirements of both sub-section (A) and sub-section (B). As argued above, separate actions would create the real risk of separate adjudications of Defendant's liability for the same conduct. It would impair the interests of many class members who inevitably cannot afford to litigate or find a lawyer willing to file an individual claim, thus depriving multiple class members of the right to recover the overtime owed.

Additionally, class certification tolls the statute for the class from April 17, 2017. If a class is not certified, it would substantially impar or impede class members ability to bring timely claim, since the statute would begin to run again against multiple class member many of which have not received notice of this case. Fears of retaliation likely prevented many current employees from affirmatively opting into the FLSA case, and others after December 2017 have not received notice.

## D.       Statutes of Limitations Applicable to Subclasses

Plaintiffs seek to certify four sub-classes in Washington, Oregon, Idaho, and California, where MLOs were employed. Washington class claims under Washington wage statutes, are

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 23

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

brought under Chapter 49.46 RCW, Chapter 49.48 RCW, and Chapter 49.52 RCW. Dkt. 1 ¶ 2(b).[6]
The statute of limitations is three years for each. RCW 4.16.080 (2).

Oregon class claims are brought under the Wage Claim Act, ORS § 652 *et seq.*, under §
653 *et seq.*, and under Oregon Administrative Rules 839-020 *et seq*. Dkt. 1 at 2(d).[7] With respect
to the applicable statute of limitations, Oregon has a six-year statute of limitations for "taking,
detaining, or injury personal property…." Or. Rev. Stat. Ann. § 12.080(4) (West 2018). This six-
year statute of limitations explicitly applies to actions to recover "wages." *Id.*; *see also Fullerton
v. Lamm*, 163 P.3d 941, 955 (Or. 1945) (holding that an employee has 6 years to "recover on a
contract for regular wages…."). Here, Plaintiffs claim they were not paid "wages" *at all* for the
hours they worked.  Dkt. 1 at ¶ 6. Oregon class members are thus subject to the six-year statute
of limitations for "wages" in ORS § 12.080(4). [8] Overtime and/or penalty wages, those specific
claims are subject to the three-year statute.  *Sprague v. Quality Restaurants Northwest, Inc.,* 162
P.3d 331, 334 (Or. 2007) (noting that, when plaintiffs sought both penalty and wages, "[t]he

6 RCW 49.46.130(1) states that employers must pay one and one-half times regular rate when employee works over
40 hours per week. RCW 49.48.010 states that an employer cannot withhold or divert any part of employee's wages
unless specifically authorized to do so. Finally, RCW 49.52.050 states it is a misdemeanor when an employer, with
intent to deprive, willfully pays employee lower wage than mandated by statute or contract.

7 The Wage Claim Act, Oregon Revised Statutes Section § 652 *et seq.*, "imposes time limits within which an
employer must pay all 'wages earned and unpaid' after an employee either quits or is discharged and grants the
employee a right to damages." *Leonard v. Arrow-Tualatin, Inc*., 708 P.2d 630, 76 Or. App. 120 (1985). Oregon
Revised Statutes Section 653 et seq. provides in relevant part for both the minimum wage rate and an overtime
compensation rate.  Or. Rev. Stat. Ann. § 653.025 (West 2018) (minimum wage rate); Or. Rev. Stat. Ann § 653.268
(West 2018) (overtime payment rates for "public employees" only). Finally, Oregon Administrative Rule 839-20-
030 expands the overtime requirement to private employees, by providing that "all work performed in excess of
forty (40) hours per week must be paid for at the rate of not less than one and one-half times the regular rate of pay."
Or. Admin. R. 839-20-030 (2018).

8 Note that the statute of limitations in Oregon for recovery of "overtime pay" and "penalty" wages is two years, or
three years if the violation is "willful." Or. Rev. Stat. Ann. § 12.110(3) (West 2018) ("An action for overtime or
premium pay or for penalties or liquidated damages for failure to pay overtime or premium pay shall be commenced
within two years.") (emphasis added). However, the Oregon Supreme Court has held that this three year statute of
limitations is limited to claims for overtime pay and/or penalty wages. *Fullerton*, 163 P.3d at 955 ("if there is
anything certain about this case, it is that the legislature, in enacting Chapter 265, intended to provide a shorter
period of limitation for the commencement of actions to recover over-time pay…."). The three year statute was not
intended to apply, and does not apply, to the recovery of regular straight-time pay. *Id.* (stating that an "action to
recover upon a contract for regular wages, as distinguished from 'over-time pay,' must be brought within six years
after the cause of action shall have accrued.") (emphasis added) (internal quotations omitted).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 24

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

wage claims that plaintiff alleges would, in court, have three- and six-year statutes of limitation."). . ORS 12.080 (action on liability created by statute must be commenced within six years); ORS 12.100(2) (action on statute for penalty must be commenced within three years.")).

The California class claims are governed by three and four-year statutes of limitations. Claims under the Labor Code § 510 *et seq.*, § 204 *et seq.*, § 226 *et seq.*, § 1174 *et seq.*, and § 1194 *et seq.*, Code Title 8 § 11040, California Business and Professional Code Section 17200, and Industrial Welfare Commission (IWC) Wage Order are 3 years. No. 4. Dkt. 1 at ¶ 2(c). Violation of California Business and Professional Code Section 17200, which includes failure to pay wages is four years. Cal. Bus. & Prof. Code § 17208. The Class may bring a claim under this four-year statute of limitations even if another claim based on the same conduct such as wage claims would be time barred. *See Cortez v. Purolator Air Filtration Products Co.*, 999 P.2d 706, 715 (Cal. 2000).[9] Because the California Subclass brings claims for violation of California Business and Professional Code Section 17200, the applicable statute of limitation for the California Subclass is four years on all of its wage claims.

Claims for "collection of wages" under Idaho state law are governed by Idaho Code Section 45-614 ("Section 45-614"). That section provides for either a six-month or a two-year statute of limitations, depending on the nature of the claim.

The Idaho Supreme Court has provided little guidance as to when the shorter six-month statute of limitations in Section 45-614 applies.  Regarding the six-month statute of limitations, the Court stated, "[a] careful reading of this language, convinces us that a claim made in the text of the above-quoted material, *refers to a claim for additional salary for a specific pay period* from which an employee has already received some payment of salary or wages. *Johnson v. Allied Stores Corp.*, 679 P.2d 640, 644 (Idaho 1984) (emphasis added). The Court went on to

---

9 California Code of Civil Procedure Section 338(a) (stating that a three year statute of limitations governs "An action upon a liability created by statute, other than a penalty or forfeiture...."); *Murphy v. Kenneth Cole Productions, Inc.*, 155 P.3d 284 (Cal. 2007) (affirming use of a three-year statute of limitations under Section 338(a) for claims under California Labor Code Section 226 for missed meal/rest periods); *Gentry v. Super. Ct.*, 165 P.3d 556 (Cal. 2007) (noting that California Code of Civil Procedure [section] 338's three-year statute of limitations applies to claims for overtime wages).

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

state that "the term pay period does not refer to the entire course of an employment relationship." *Id.* It held that because an employee's claim for severance pay was "earned over the entire course of the employment relationship," it was not a claim for a specific pay period was governed by two-year statute of limitations. *Id.*

Applying Section 45-614 to this case, the Idaho class members seek wages, overtime compensation, and penalties as provided for "by law" under that Section. Plaintiffs' claims are not limited to earnings a specific pay period, but rather for work done during their entire period of employment. Indeed, Defendants instituted a policy that denied them overtime wages throughout their employment. Thus, the two-year statute of limitations, rather than the six-month statute of limitations, applies to their claims.

DATED this 10th day of May, 2018.

THE BLANKENSHIP LAW FIRM, P.S.

By:   s/ Scott C. G. Blankenship
    Scott C. G. Blankenship, WSBA No. 21431
    Richard E. Goldsworthy, WSBA No. 40684
    The Blankenship Law Firm, P.S.
    1000 Second Avenue, Suite 3250
    Seattle, WA 98104
    Telephone: (206) 343-2700
    Facsimile: (206) 343-2704
    Email:   sblankenship@blankenshiplawfirm.com
           rgoldsworthy@blankenshiplawfirm.com
Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 26

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## DECLARATION OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant:

Kenneth E. Payson, WSBA No. 26369      ☐ by Electronic Mail
Sheehan Sullivan Weiss, WSBA No. 33189    ☐ by Facsimile Transmission
Ryan Hess, WSBA No. 50738      ☐ by First Class Mail
Laura-Lee Williams, WSBA No. 51358    ☐ by Hand Delivery
Davis Wright Tremaine LLP      ☐ by Overnight Delivery
1201 Third Ave, Suite 2200      ☒ by Notification via E-filing System
Seattle, WA 98101
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: kennethpayson@dwt.com
     sheehansullivanweiss@dwt.com
     ryanhess@dwt.com
     lauraleewilliams@dwt.com

*Attorneys for Defendant*

DATED this 10th day of May, 2018, at Seattle, Washington.

_s/ Scott C.G. Blankenship_____
Scott C. G. Blankenship, WSBA No. 21431
The Blankenship Law Firm, P.S.
1000 Second Avenue, Suite 3250
Seattle, WA 98104
Telephone: (206) 343-2700
Facsimile: (206) 343-2704
Email: sblankenship@blankenshiplawfirm.com

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(Cause No. 2:17-cv-0601 RSL)
Page 27

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700