THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY BOLDING, MICHAEL MANFREDI, and SARAH WARD, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANNER BANK, a Washington Corporation,<br><br>Defendant. | No. 2:17-cv-0601 RSL<br><br>PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES<br><br>NOTE ON MOTION CALENDAR:<br><br>AUGUST 10, 2018 |

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page i

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

# I.   INTRODUCTION

Despite repeated assurances that it will produce responsive Outlook e-mail accounts and Outlook calendars (hereafter collectively, "Outlook accounts") for the Plaintiffs who opted into the FLSA collective action ("FLSA opt-ins"), Defendant has failed to do so. Instead of providing them, Defendant has delayed and delayed again. Defendant has also revealed that it is inexplicably unable to produce the full Outlook calendars and e-mail accounts for either the original Named Plaintiffs (Michael Manfredi and Kelly Bolding) or for three of the four opt-in Plaintiffs (Armando Ortiz, Miranda Taylor, and Sarah Ward[1]) who signed declarations. Defendant now refuses to discuss what responsive Outlook accounts it has and has not preserved, or what steps it has taken to find responsive accounts, contrary to the clear requirement that the parties cooperatively discuss ESI discovery. LCR 26. Defendant's timekeeping records generally consist of boilerplate entries between 9:00 a.m. and 5:00 p.m. (or whatever the applicable business hours were), or entries of exactly 8 hours per day, while other evidence, including job descriptions and Defendant's website, demand Mortgage Loan Officers' ("MLOs") availability twenty-four seven. Outlook calendars and e-mail accounts constitute key and essential evidence of when MLOs worked, and key proof MLOs worked off the clock. Defendant also continues to withhold responsive training records central to this case.

Defendant's pattern of delay in production has caused severe prejudice to Plaintiffs, especially given the upcoming August 8, 2018 expert witness disclosure deadline, October 9, 2018 discovery cut-off, and other case deadlines. *Dkt*. 96. Plaintiffs now move to compel: (1) immediate disclosure of all Outlook calendars and e-mail accounts of FLSA opt-in Plaintiffs in Defendant's possession or control, to the extent they exist in any form; (2) an evidentiary hearing addressing what responsive Outlook accounts Defendant has and has not preserved and where

---

[1] Sarah Ward is now a Named Plaintiff. *Dkt*. 96. The Court granted Plaintiff's motion to amend the complaint and add Ms. Ward as a Named Plaintiff on July 13, 2018. *Id.* However, Ms. Ward was not a Named Plaintiff at the time most of the discovery conferences relevant to this motion took place. Because Ms. Ward was referred to as a "declarant" during most if not all of the parties' discussions about discovery deficiencies, for clarity, this Motion also refers to Sarah Ward as a declarant, although she is now also a Named Plaintiff.

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

those accounts are located; and (3) immediate disclosure of responsive training records, including records that Defendant's own declarants have stated exist. Plaintiffs hereby certify that pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Court Rule 26(c) and (f), they have conferred in good faith with Defendant and attempted to meet and confer about the topics set forth in LCR 26(f)(1)(I), and have reached an impasse. *Sanders Dec.* ¶¶ 2-8.

## II.    DISCOVERY DEFICIENCIES

**A.  RFPS B, GGG, and HHH: Defendant Should Be Compelled To Disclose Outlook Calendars and E-mail Accounts For FLSA Opt-In Plaintiffs**

### 1.    Relevant Facts

Plaintiffs served Defendant with First Interrogatories and Requests for Production over nine months ago, in October of 2017. *Ex. A.* Request for Production No. B asked Defendant to produce "the complete Outlook or other work-related calendars and schedules" for all Mortgage Loan Officers ("MLOs") employed by Defendant, from April 17, 2014 through present. *Ex. A* at 9:12-14. Defendant responded after objection, and without explanation, that it could not locate Named Plaintiffs' Outlook calendars. *Ex. B* at 7:19-23 (emphasis added). In short, Defendant did agree to produce any Outlook calendars. *Id.*

In May of 2018, Plaintiffs sent Defendant a deficiency letter. *Ex. C.* At a subsequent meet and confer, Plaintiffs voluntarily narrowed RFP B to only the Outlook calendars of FLSA opt-in Plaintiffs (hereafter, "FLSA opt-ins"). *Ex. D* at 3. Defendant, in turn, agreed they would respond to that narrowed request by June 11. *Id.* Plaintiffs also discussed the fact that it would like not only Outlook calendars, but also the accompanying Outlook e-mail accounts for Named Plaintiffs and FLSA opt-ins. *Sanders Dec.* at ¶ 3. Plaintiffs followed up by sending Defendant a formal discovery request for FLSA opt-ins' Outlook e-mail accounts. *Ex. E* at 3:18-20. Defendant responded by stating it would produce them "to the extent Banner locates those files following a reasonably diligent search and inquiry." *Ex. F* at 3:15-19, 4:9-11.

Defendant did not respond to Plaintiff's request for Outlook calendars by June 11, as promised. Instead, on June 14, Defendant unilaterally narrowed Plaintiffs' discovery request to

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 2

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

only calendars "readily available without resort to legacy systems, tape backup, or the like[.]" *Ex. G* at 3. Defendant also stated it was "willing to make available" FLSA opt-ins' e-mail accounts, without providing a date for its anticipated production. *Id*. at 4.

Plaintiffs requested yet another meet and confer. The parties conferred again on June 20, 2018. *Ex. H*. Plaintiffs asked when Defendant would disclose Outlook calendars and e-mail accounts. *Id.* at 3. Plaintiffs also asked Defendant to prioritize disclosure of calendars and e-mail accounts for Plaintiffs' declarants Sarah Ward, Armando Ortiz, Miranda Taylor, and Rick Clark (hereafter "the declarants"), whose depositions were by then scheduled for July 2018. *Id; Sanders Dec.* ¶ 3-5. Plaintiffs did not agree Defendant could refuse to search for calendars and e-mails on legacy system and backups. *Ex. H* at 3. Defendant finally agreed to produce the declarants' Outlook calendars in whatever format they may exist, including in legacy systems and backups. *Sanders Dec.* ¶ 3-4. Defendant has since confirmed this. *Ex. Y* at 3. Defendant also agreed to produce the declarants' Outlook calendars within "a week or so." *Ex. H* at 3. Defendant agreed to disclose a production schedule for the other FLSA opt-ins' Outlook calendars by June 29, and a schedule for production of Named Plaintiffs' and FLSA opt-ins' e-mail accounts by July 6. *Id.* Finally, despite a prior written assurance that it would explain why it could not produce Named Plaintiffs' Outlook calendars, Defendant stated at the June 20 conference that it "was not prepared" to explain this. *Ex. G* at 6; *Id.*

After the June 20 conference, Defendant once again did not produce what it agreed to produce. Defendant did not produce a single calendar within a week of June 20. *Sanders Dec.* ¶ 5-6. Instead, on July 6, Defendant revealed that it was in fact unable to produce either the full Outlook calendars or email accounts for any of the declarants except Rick Clark. *Ex. I* at 2. Defendant explained that it apparently failed to execute a "restore" process that would have preserved the accounts:

> To preserve Outlook calendars in a .pst format, Banner must complete a process called an "email restore." *Those restores can only be completed while an employee is currently employed or very shortly after the employee leaves. Here, all of the deponents (including the named plaintiffs) left Banner (or AWB) well*

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 3

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*before they joined this lawsuit, except for Rick Clark.* We are pulling his Outlook calendar .pst file and hope to provide it to you by the end of next week.

*Id.* (emphasis added). Defendant's July 6 letter stated the situation was essentially the same for Outlook e-mail accounts. *Id. It is unclear if responsive Outlook accounts have been destroyed.*

Defendant's letter also proposed several plainly insufficient options to search for limited Outlook data.  First, it proposed to search for responsive e-mails to the extent they existed on current employees' accounts; but this search would not capture most of the solitary activities MLOs did, such as e-mails with customers and realtors, that did not generally require e-mailing other MLOs. Second, Defendant proposed to a "journaling tool" to find e-mails. *Id.* But Defendant admitted this "journaling tool" could only find "additional emails for Mr. Clark because he was the only deponent employed after the lawsuit started[.];" meaning the tool presumably would not locate any e-mails for the vast majority of other FLSA opt-in Plaintiffs who left employment before April 2017. *Id.* Defendant then stated it "hope[d] to complete production of e-mail and calendar "data" "to the extent available," by August 10, 2018, without agreeing to complete production by that date. *Id.* Defendant also preserved (but continues to withhold) Named Plaintiff Bolding's Outlook ".pst" account.   *Ex.* I at 2; *Sanders Dec.* ¶ 6.

After Plaintiffs received the July 6 letter, they repeatedly attempted to confer with Defendant about what responsive Outlook accounts were and were not preserved in any format. *Ex. J*; *Ex. K* at 2-3. Defendant's counsel stonewalled, claiming multiple times without authority that its preservation efforts were privileged. *Ex. K* at 3-4; *Ex. Y* at 3. Defendant will not explain what accounts it did preserve, what accounts exist, and whether it can produce *any* full Outlook calendars and e-mail accounts other than Rick Clark's calendar. *Ex. Y.*

Rick Clark's deposition went forward on July 12. *Sanders Dec.* ¶ 5.  Defendant did not disclose his Outlook calendar until July 17, after the deposition. *Id.* Defendant to date has not disclosed either Rick Clark's Outlook e-mail account, or a single other e-mail account or Outlook calendar. *Id.* Moreover, after failing to produce declarant Miranda Taylor's Outlook account or any e-mails from that account, Defendant's counsel revealed during Ms. Taylor's deposition that

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 4

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

it possessed an e-mail--specifically, an out-of-office notice from Ms. Taylor's e-mail account--that it never produced to Plaintiffs. *Ex. L* at 170:2-171:15; *Ex. M.*

> 2. **Responsive Outlook Accounts Are Relevant and Discoverable, and Are Potentially Key Class-Wide Proof of Unpaid Work**

The scope of discovery in federal court reaches "any nonprivileged matter that is relevant to any party's claim or defense.*" Adams v. Hartz Mountain Corp.*, 2015 WL 11251745, at *3 (W.D. Wash. April 27, 2015) (Approx. 3 pages) (citation omitted). Federal Rule of Civil Procedure 34(a)(1)(A) specifically allows a party to request "electronically stored information… stored in any medium from which information can be obtained." If requested discovery is not answered, the requesting party may move for an order compelling such discovery. FRCP 37(a)(1). Documents that show when employees were working, including documents from computer systems, are highly relevant and discoverable in wage and hour class actions. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (class-wide proof of unpaid overtime was available through "either the testimony of managers who saw the class members['] work schedules or *through an analysis of the telephone and computer systems used by class members*.") (emphasis added).

Here, the Outlook accounts of FLSA opt-in Plaintiffs are relevant and potentially key class-wide proof of unpaid work. Both e-mails and Outlook calendars are part of the "paper trail" that would "prove decisively" that FLSA opt-in Plaintiffs and putative class members performed unpaid work. *Ex. N* at 212:19-213:3. Mortgage Loan Officers used their work Outlook calendars to record work events that they participated in of outside business hours, including open houses, realtor meetings, and meetings with customers. *E.g. Ex. N* at 167:1-9. Mortgage Loan Officers also used their Outlook e-mail accounts at all hours of the day and night to communicate with customers and others. *Ex. L* at 111:19-23; *Ex. O* at 124:8-18; *Ex. N* at 126:3-5. All this constitutes class-wide proof that MLOs were working outside Defendant's regular business hours.

Outlook calendars and e-mails are particularly key considering Defendant's timekeeping records. Defendant recently produced a number of timekeeping records purporting to show that MLOs worked only during the Defendant's open business hours, or for only 8 hours every day.

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

*Sanders Dec.* at ¶ 12.[2] MLOs' calendars and e-mails, with the communications and appointment they contain, are key evidence these boilerplate timekeeping records are inaccurate and that MLOs worked many uncompensated hours the timekeeping system does not reflect. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 685-87 (1945), *superseded by statute as recognized in Integrity Staffing Solutions, Inc. V. Busk*, 135 S.Ct. 513 (2014) ("[W]here the employer's records are inaccurate and the employee cannot offer convincing substitutes...an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated....").

### 3. Defendant's Continued Delay In Producing Outlook Accounts Is Prejudicial, and Defendant Should Compelled To Immediately Produce All Responsive Outlook Accounts Of FLSA Opt-In Plaintiffs

After numerous conferences with Defendant about producing responsive Outlook calendars and e-mail accounts, Plaintiffs have only a single Outlook calendar (Rick Clark's) to show for their efforts. Exs. C, D, G, H, I. Plaintiffs still have no idea what responsive Outlook accounts Defendant will choose to produce and when; Defendant has only stated that it anticipates production of unspecified "available" data by August 10. *Ex. I*; *Ex. Y*. The Outlook accounts Defendant has failed to produce include Outlook accounts for at least five opt-in Plaintiffs who left Banner Bank *after this suit was filed* in April 2017, and whose accounts should be easily accessible. *Sanders Dec.* ¶ 6. The discovery cut-off is less than three months away, in October of 2018. *Id.*

Plaintiffs now asks the Court to order Defendant to immediately disclose each Outlook calendar and e-mail account of a FLSA opt-in Plaintiff that is in its possession or control. While Plaintiffs have tried over and over to resolve this issue cooperatively, Defendant's continued delay prejudices Plaintiffs' case and leaves them no choice but to involve the Court. Plaintiffs'

---

[2] This is despite overwhelming evidence MLOs worked outside business hours and over eight hours daily to meet Defendant's written job requirements and demands. Job descriptions required MLOs to "attend open houses," attend realtor events, and attend other events that typically occurred before 9:00 a.m. and/or after 5:00 p.m. *Dkt.* 17-1 at 11-22. Defendant put most MLOs' cell phone numbers on its website, together with the website's statement that those MLOs were "available twenty-four seven." *Dkt.* 17-1 at 129-140. And MLOs testified they generally worked beyond normal business hours daily. *Ex.* L at 79:19-25; *Ex.* N at 114:6-10; *Ex.* O at 49:10-14.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 6

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

months of diligent negotiations with Defendant more than satisfy meet and confer requirements. *Washington v. Franciscan Health System*, 2018 WL 2159920, at *1 (W.D. Wash. May 10, 2018) ("the parties have been negotiating the responses and objections for months. The Court concludes that such negotiations satisfy the meet and confer requirement…").

**B.  Defendant's Refusal to Discuss Its ESI Preservation Efforts, Coupled With Evidence Defendant Has Failed To Preserve Responsive ESI, Is Grounds To Compel An Explanation From Defendant**

**1.  Defendant Has Refused To Meaningfully Discuss the Nature, Scope, and Availability of Responsive Outlook Accounts, Contrary to LCR 26(f)**

Local Civil Rule 26 sets out specific cooperation requirements for ESI discovery, which Plaintiffs have fully met. Under LCR 26(f), the parties should discuss a number of topics related to ESI, including: (1) the nature, location, and scope of ESI to be preserved by the parties; and (2) the formats for production of ESI. LCR 26(f)(1)(J)(i)-(ii).  LCR 26(f) also requires that, before "engaging in any meet and confer discussions" regarding production of ESI, "the attorney for each party *shall review and understand* how their client's data and ESI are stored and restriped." LCR 26(f)(2) (emphasis added). LCR 26 requires the parties to engage in a "substantive discussion" about the difficulty of producing ESI, the extent to which the party has searched, and whether the information is recoverable. *Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.*, 2008 WL 1805727, at *1 (W.D. Wash. April 21, 2008) (Lasnik, J.). Here, in contravention of LCR 26(f) and *Mikron Industries*, even after revealing that it is unable to produce an unknown number of Outlook accounts, Defendant has refused to discuss either what responsive Outlook accounts have been preserved, or what steps it has taken to find them, when Plaintiffs repeatedly sought to confer on these issues. *Ex. K* at 3-4; *Ex. Y* at 3.

**2.  Evidence Also Indicates Defendant Did Not Stop Its Automated Procedures That Archived MLOs' Outlook Data, After This Suit Was Filed**

Named Plaintiff Sarah Ward's last date of employment was April 21, 2017 (clearly within the scope of the FLSA collective action and putative class). Evidence in the record indicates Banner Bank had internal procedures in place to automatically archive Outlook accounts after they left employment, including Sarah Ward's accounts. *Ex. Q*. *Id.* And now, Defendant cannot

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 7

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

produce Ms. Ward's Outlook account. *Ex. I at 3*; *Sanders Dec.* at 6. The logical conclusion is that Defendant did not prevent Sarah Ward's data (and data of an unknown number of other employees) from being archived, and also somehow lost, destroyed, and/or failed to preserve the data after it was archived per Banner Bank's own policy.

### 3. Defendant Previously Attempted To Destroy AWB Employees' Archived E-mail Accounts, During The Same Time Period Its Employees Were Testifying That They Worked Unpaid Overtime

Defendant's inability to produce responsive Outlook accounts is also troubling in light of the fact AWB (while it was owned by Defendant Banner Bank) sought to destroy former employees' e-mails in the midst of litigation where its own MLO employees testified they were not being paid for the overtime they worked. In 2016, during the *Erickson v. AmericanWest Bank* litigation,[3] several AWB MLOs, including the Named Plaintiff in this suit Kelly Bolding, testified (Ms. Bolding in June 2016) that AWB did not pay them for all the overtime they worked. *Ex. R*; *Dkt.* 17-1 at 120-21. AWB in fact reached out to MLO Lisa Knight after her deposition and asked her to add up the overtime she had worked but not been paid for. *Ex. S*. In July 2016, Defendant AWB (which was by then owned by Banner Bank) also received a mediation brief specifically notifying it of potential wage and hour claims. *Ex. Z* at 3 (emphasis added); *Sanders Decl. 9.*

During these indications of possible wage and hour claims by other MLOs (loan officers), AWB filed two separate motions, in June 2015 and January 2016, for a protective order. *Ex. T*; *Ex. U*. AWB sought to implement a new e-mail system that would destroy all archived Outlook e-mail accounts of AWB employees, other than accounts AWB specifically preserved.  *Ex. BB*. The King County Superior Court denied both motions. *Ex. BB*, *Ex. V*; *Ex. W. Erickson* was dismissed less than six months before this suit was filed. *Sanders Dec.* ¶ 8. Considering Defendant's inability to produce Outlook accounts for former MLO employees, the events in

---

[3] Former AWB employee Dana Copeland brought suit against AWB in September 2015, alleging discrimination and retaliation. *Sanders Dec.* ¶ 8. The complaint was later amended to name other employees as additional Plaintiffs. *Id.*

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 8

**THE BLANKENSHIP LAW FIRM, P.S.**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*Erickson* raise questions about whether Banner Bank (which from at least October 2015 onward owned AWB and controlled the litigation) did in fact destroy AWB employees' archived Outlook accounts[4] some point between the dismissal of *Erickson* and the filing of this suit, and if Defendant anticipated pending wage and hour litigation by MLOs when it did so.[5]

### 4.    Defendant Should Be Compelled To Participate In an Evidentiary Hearing Detailing Its Efforts To Preserve and Locate Responsive Outlook Accounts

When one party raises justifiable concerns that another party has not met its duty to preserve relevant evidence and/or conduct a reasonable search for ESI, it is grounds to compel an explanation. *Moore v. Lowe's Home Centers, LLC*, 2016 WL 687111 (W.D. Wash. Feb. 19, 2016) (Bryan, J.) (compelling Defendant to provide information about preservation of documents); *EEOC v. Fry's Electronics, Inc*., No. 2:10-cv-01562-RSL, *Dkt*. 146 (W.D. Wash. filed February 21, 2012) (compelling defendant employer to identify devices on which documents were located and what became of the documents, when there was evidence information had been destroyed); *Ball v. Manalto, Inc.*, 2017 WL 1788425, at *1 (W.D. Wash. May 5, 2017) (Martinez, J.) (ordering "Defendants to provide to Mr. Ball detailed explanations, via declaration, from the persons who searched Manalto's sources of ESI, as set forth below," when the defendants "failed to present evidence" they preserved  e-mails). An evidentiary hearing is appropriate and often more efficient when there are serious discovery issues. *See Chura v. Delmar Gardens of Lenexa, Inc.*, 2012 WL 940270, at *12 (D. Kan. Mar. 20, 2012)

---

[4] Notably, AWB had a number of inexpensive options available to preserve employees' e-mail accounts. In opposition to Defendant's motion for a protective order in Erickson, the plaintiffs filed an initial and supplemental declarations from a digital forensics and electronic discovery expert. *Ex.* X. The initial declaration explained that AWB and Banner Bank had a number of inexpensive options to preserve employees' Outlook accounts, including but not limited to preserving the hard drives from employees' computers, copying .pst files to another location, and using an inexpensive Google Apps migration tool. *Ex.* X at ¶ 18.

[5] A party has a duty to preserve evidence as soon as a "potential claim" is identified. *Moore*, 2016 WL 3458353 at *1. The duty to preserve attaches all evidence a party "knows or reasonably should know is relevant to the action." *Id*. Here, it is notable that despite the numerous indications of potential wage and hour claims during *Erickson*, Defendant has denied that it had any duty at all to preserve AWB employees' e-mails before this suit was filed: "the Erickson matter concluded on September 16, 2016, upon entry of the order of dismissal with prejudice, *so any document preservation duties arising from that action expired* well before Ms. Bolding filed the present action." *Ex.* G at 3 (emphasis added).

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

1  (ordering hearing when the "minimal information" provided limited the court's "ability to

2  determine whether Defendant met its duty to conduct a reasonable search for ESI responsive to

3  many of Plaintiff 's discovery requests ….").

4          Here, Defendant has denied opt-in Plaintiffs and putative class members worked off the

5  clock, at the same time evidence indicates it apparently failed to preserve much of the

6  documentary class-wide proof of unpaid overtime. *Leon v. IDX Syss. Corp.*, 464 F.3d 951, 956

7  (9th Cir. 2006) (where "the relevance of...[destroyed] documents cannot be clearly ascertained

8  because the documents no longer exist," a party "can hardly assert a presumption of irrelevance

9  as to the destroyed documents."). There is also a serious concern that Defendant has simply

10 stonewalled and not taken the necessary means to recover this essential proof.

11         Defendant's inability and indeed refusal to explain its preservation efforts, coupled with

12 evidence Defendant may have failed to preserve responsive discovery, is grounds for a motion

13 to compel an evidentiary hearing. Of the 33 FLSA opt-ins and over 200 putative Rule 23 class

14 members, Plaintiffs still do not know whose Outlook accounts still exist and whose accounts

15 have been lost and/or destroyed, and what steps Defendant has taken to find this key

16 documentary evidence. Plaintiffs also do not know if Defendant destroyed AWB/Banner

17 employees' archived e-mail accounts, as it sought to do during the *Erickson* litigation in 2016.

18 See Section III.B.2, *supra*. Finally, as Defendant has been unable to produce the accounts of

19 employees, including Sarah Ward, who left Banner Bank after this suit was filed, Plaintiffs do

20 not know if Defendant allowed those accounts to be archived per Banner Bank's automated

21 procedure and ultimately lost and/or destroyed. See Section III.B.3, *supra*.

22         When Plaintiffs asked Defendant to cooperatively confer about the Outlook accounts it

23 had preserved, Defendant refused. Defendant claims all its preservation efforts are privileged.

24 *Ex. I*; *Ex. Y*. Plaintiffs have reached an impasse and have no choice but to involve the Court.

25 Plaintiffs now respectfully asks that the Court compel Defendant to participate in an evidentiary

26 hearing that addresses: (1) what steps it took to preserve Outlook calendars and e-mail accounts

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 10

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

for current and former MLO employees; (2) what responsive Outlook accounts of FLSA opt-in Plaintiffs it has and has not preserved; (3) the physical location and identification of all computers and other devices where responsive Outlook account data is stored; and (4) to the extent Defendant has lost, destroyed, and/or failed to preserve full Outlook accounts for FLSA opt-in Plaintiffs, when and how account data were lost, destroyed, and/or not preserved. A hearing is an appropriate and efficient remedy for Defendant's serious discovery violations.

**C.    RFP J and RFP MM: Defendant Should Be Compelled To Disclose Responsive Training Documents**

**1.    Defendant Has Withheld Responsive Training Documents**

RFPS J and MM request training materials related to training in recording and payment of overtime, from April 17, 2015 to present. *Ex. A.* After multiple meet and confers about the training documents, beginning in May 2017,[6] Defendant claimed it had produced all responsive training materials it was "reasonably able to locate," without stating that it has in fact disclosed all responsive documents. *Ex. G* at 4; *Ex. I* at 3. Defendant did not amend its discovery responses to state that all responsive documents had been disclosed. Plaintiff later realized Defendant had not in fact disclosed all responsive training records. Defendant did not disclose a single document related to the "Bannertime/Empower" timekeeping system that Banner Bank used for years before August 2017. *Dkt.* 88-1 at 5 ¶ 15. When Plaintiff identified this deficiency in a letter, Defendant responded by producing only four "Bannertime Reference Guides." *Ex. K* at 2; *Ex. AA.* It is inconceivable that Banner Bank used only the Bannertime Reference Guides to train MLOs in their timekeeping system, over the many years the system was in use. The record also indicates Defendant has withheld other responsive training documents. These documents include:

1. All documents from a December 2018 online training that Banner Bank required employees to participate in when it "rolled out" the new employee handbook. *Dkt.* 88-1 at 4 (Declaration of Judi Baggarley).

---

[6]    *Exs. C, D, G, H, and I* (summarizing meet and confers).

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

2.  All documents from off-site MLO trainings that Banner Bank regional manager Jeffrey Case declared he performs at 1-2 times per year, including in February 2017. *Dkt*. 21-1 at 3 ¶ 12

3.  All documents from a "Banner Leadership Essentials training that Banner Bank held for managers in 2018 including MLO managers, and that "covered the requirement that hourly employees like MLOs accurately record their hours worked." *Dkt*. 88-1 at 5 ¶ 14 (Declaration of Judi Baggarley).

Upon information and belief, Defendant has not disclosed any documents from any of the above trainings. *Sanders Dec.* ¶ 9.

## 2.   Defendant Should Be Compelled To Disclose Responsive Training Records

Discovery should not be a game of hide and seek, where a party only receives the documents it realizes are missing. "Plaintiffs have the right to compel withheld discovery." *Wapato Heritage, LLC v. Evans*, 2008 WL 4460271, at *2 (W.D. Wash. October 1, 2008). Plaintiffs' months of conferences with Defendant as to responsive training documents more than satisfies the meet and confer requirement, even if Plaintiffs have not conferred about each and every specific document that Defendant has withheld. *Franciscan*, 2018 WL 2159920 at *1 (concluding that months of discovery negotiations satisfied meet and confer requirement "even in the absence of a specific meet and confer regarding the limited contents of the motion to compel."). Defendant must immediately disclose all responsive training records, including the records listed above. Defendant must also immediately supplement its discovery responses, identify the responsive documents that have been disclosed and/or no longer exist, and clearly state it has produced all responsive documents that exist.

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 12

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

DATED this 26th day of July, 2018.

THE BLANKENSHIP LAW FIRM, P.S.


By:  s/ Charlotte S. Sanders
    Scott C. G. Blankenship, WSBA No. 21431
    Richard E. Goldsworthy, WSBA No. 40684
    Charlotte S. Sanders, WSBA No. 45051
    The Blankenship Law Firm, P.S.
    1000 Second Avenue, Suite 3250
    Seattle, WA 98104
    Telephone: (206) 343-2700
    Facsimile: (206) 343-2704
    Email:   sblankenship@blankenshiplawfirm.com
           rgoldsworthy@blankenshiplawfirm.com
           csanders@blankenshiplawfirm.com
Attorneys for Plaintiffs

PLAINTIFFS' MOTION TO COMPEL DISCOVERY
(Cause No. 2:17-cv-0601 RSL)
Page 13

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## DECLARATION OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant:

Kenneth E. Payson, WSBA No. 26369
Sheehan Sullivan Weiss, WSBA No. 33189
Ryan Hess, WSBA No. 50738
Laura-Lee Williams, WSBA No. 51358
Davis Wright Tremaine LLP
1201 Third Ave, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: kennethpayson@dwt.com
       sheehansullivanweiss@dwt.com
       ryanhess@dwt.com
       lauraleewilliams@dwt.com

☐ by Electronic Mail
☐ by Facsimile Transmission
☐ by First Class Mail
☐ by Hand Delivery
☐ by Overnight Delivery
☒ by Notification via E-filing System

*Attorneys for Defendant*

DATED this 26th day of July, 2018, at Seattle, Washington.

 s/ Charlotte S. Sanders
Charlotte S. Sanders, WSBA No. 45051
The Blankenship Law Firm, P.S.
1000 Second Avenue, Suite 3250
Seattle, WA 98104
Telephone: (206) 343-2700
Facsimile: (206) 343-2704
Email:  csanders@blankenshiplawfirm.com

THE BLANKENSHIP LAW FIRM, P.S.
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700