UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLY BOLDING, *et al.*,

          Plaintiff,

v.

BANNER BANK,

          Defendants.

Case No. C17-0601RSL

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter comes before the Court on "Plaintiffs' Motion for Class Certification." Dkt. # 71. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the

---

[1] Defendant's request for judicial notice of bankruptcy court filings and dockets (Dkt. # 91) is DENIED. The information has virtually no relevance to the issues raised in this motion. Defendants' vague suggestion that putative class members may have waived their wage claims by failing to include them in their asset lists borders is not supported by case law or an appeal to equity. The absent class members did not initiate this litigation, nor is there any indication that they were aware of the wage claim the named plaintiffs have asserted during their bankruptcy proceedings. The re-publication of the information in this case was entirely unnecessary and likely to cause undue embarrassment.

Plaintiffs' motion to supplement the record (Dkt. # 115) is GRANTED. Defendant failed to timely produce relevant documents that were requested in October 2017, waiting until after the class certification motion was filed to begin its rolling production of timekeeping records and after the motion was fully briefed to produce remote access data. It is no excuse to say that plaintiffs should have filed a motion to compel. Defendants declined to produce any records regarding putative class or collective members (at least until a class or collective was certified) and affirmatively stated that it had no Outlook calendars for the named plaintiffs or electronic files showing when they logged into defendant's network systems. Dkt. # 116 at 11 and 13. Those statements were, apparently, untrue. Defendant's suggestion that plaintiffs should have guessed what documents it actually had is rejected. Defendant was obliged to comply with the rules of discovery and did not do so. The Court declines defendant's invitation to exonerate it of that obligation or to shift the burden of chasing down documents to plaintiffs.

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

Court finds as follows:

## I. BACKGROUND

Plaintiffs are current and former mortgage loan officers, real estate commissioned loan officers, and/or residential lenders (collectively, "MLOs") employed by defendant Banner Bank and other financial institutions acquired by Banner Bank. Plaintiffs allege that MLOs are required to work and have worked "off the clock" without compensation. The Court conditionally certified a collective action under the Fair Labor Standards Act ("FLSA") based on plaintiffs' substantial allegations that putative class members were the victims of a single decision, policy, or plan. Dkt. # 33. Plaintiffs now seek to certify four subclasses under Fed. R. Civ. P. 23 to pursue state law wage claims arising from the same alleged conduct. The proposed subclasses are comprised of all MLOs employed by Banner Bank or its various predecessors and affiliates during the relevant limitations periods in (1) Washington, (2) Oregon, (3) California, and (4) Idaho. Dkt. # 71 at 5-6. Plaintiffs also seek to compel Banner Bank to provide a list of all putative class members. Banner Bank opposes the requested relief.

## II. DISCUSSION

**A. Prerequisites of a Class**

Pursuant to Fed. R. Civ. P. 23(a), a court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Rule 23. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012). The Rule "does not set forth a mere pleading standard:" the party seeking class certification must "affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-

Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in original).

**1. Numerosity**

"In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010). On the other end of the spectrum, the Supreme Court has indicated that, although there is no fixed minimum threshold under Rule 23, a class of 15 would almost certainly require joinder rather than class certification. Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980). Following certification of the collective under the FLSA, Banner Bank identified 87 MLOs in Washington, 36 in Oregon, 32 in California, and 11 in Idaho between December 2014 and December 2017. With its response to the motion for class certification, Banner Bank altered the time frames in light of the varying statutes of limitations and identified 110 MLOs in Washington, 42 in Oregon, 47 in California, and 9 in Idaho.

The Washington, Oregon, and California subclasses are presumptively numerous enough to warrant representative litigation. The Court finds that the joinder of over two hundred individual plaintiffs divided over three subclasses would be impracticable. Adding that many plaintiffs, with their attendant counsel, to this litigation would not only raise logistical difficulties and inefficiencies for the Court, but would impose unnecessary inconvenience and expense on the potential class members.

Plaintiffs offer no evidence that the Idaho class exceeds 15 putative class members, however. The Idaho limitations period does not reach back before December 2014, and, despite having ten months in which to conduct discovery before filing their class certification motion, plaintiffs offer nothing but conjecture about how many MLOs Banner Bank may have hired in Idaho since December 2017. Based on the existing record, the Idaho class is too small to warrant class certification. If the claims of Idaho MLOs are to be pursued in this litigation, it must be through joinder.

## 2. Commonality

In order to satisfy the commonality criterion, the class members' claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 338 (2011). A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." <u>Jimenez v. Allstate Ins. Co.</u>, 765 F.3d 1161, 1165 (9th Cir. 2014). Plaintiffs identify the key common question as whether Banner Bank discouraged and/or barred MLOs from reporting all the time they worked. Plaintiffs argue that if the question is resolved in their favor, it will drive the classwide determination of Banner Bank's liability under state wage laws because any unreported overtime hours would be causally related to that policy and Banner Bank, by perpetrating the policy, would have known or be expected to know of the unpaid work.

Plaintiffs identify a number of policies, practices, and systems which, they allege, combine to "uniformly prevent MLOs from reporting all hours worked." Dkt. # 71 at 8. In particular, plaintiffs rely on a written policy requiring pre-approval of overtime hours; a written policy requiring non-exempt employees to clock in during the morning, out and in for a lunch break, and out in the evening; an unwritten policy discouraging any requests for overtime hours or payments therefore; and a written policy prohibiting non-exempt employees from doing work off the clock without educating MLOs on what qualifies as compensable work under the wage laws. Plaintiffs also submitted evidence that the mortgage loan officer job could not be regularly performed in a normal work week (the job duties were not altered when the position was reclassified as non-exempt, and MLOs continued working more than 40 hours per week), that MLOs could not predict when they would need to work overtime making it virtually impossible to obtain pre-approval, and that Banner Bank's timekeeping records and electronic data show that MLOs worked more than eight hours per day but were generally paid for only eight hours. In addition, plaintiffs provide anecdotal evidence that putative class members thought that they could not report overtime unless they

had obtained pre-approval, that managers expressly discouraged MLOs from asking for or recording overtime, and that requests for pre-approval and/or recorded overtime hours were sometimes rejected.

Whether Banner Bank discouraged and/or barred MLOs from reporting all the time they worked is hotly contested. In addition to pointing to its formal policy requiring that all hours be reported, Banner Bank provides evidence showing that most of the proposed class has, at one point or another, been paid overtime, that some MLOs were able to keep their hours to 40 per week, that some supervisors ignored the pre-approval requirement or applied the policy only if the overtime were foreseeable and substantial, and that some MLOs regularly reported and were paid for overtime hours they worked. Defendant argues that the evidence of dissimilarities within the proposed class will impede the generation of common answers to the common contention and precludes class certification. Dukes, 564 U.S. at 350. Classes are almost never homogenous, however. The Court must determine whether the dissimilarities are too great in this case or whether, despite some differences and distinctions between class members, the common contention remains capable of classwide resolution.

This case falls very close to the line, but the Court finds that plaintiffs have identified a key common question that is capable of classwide resolution. Plaintiffs have identified a number of systems, policies, and practices that apply to the class as a whole and are now in possession of classwide timekeeping and electronic records that will provide proof of (or possibly contradict) their contention. Whether Banner Bank discouraged and/or barred MLOs from reporting all the time they worked is either true or false, and the answer will apply to all MLOs employed by Banner Bank. The fact that a few surprisingly stalwart MLOs withstood the employer's efforts to prevent overtime claims or that a handful of MLOs misread the tea leaves and imagined a bar when there was none does not change the analysis: Banner Bank either has or does not have a policy of discouraging and/or barring MLOs from reporting overtime hours, and that is the common contention at issue in this litigation. Defendant may

be able to convince the jury that it took reasonable steps to ensure that its MLOs recorded all hours worked and/or that it had no reason to suspect that they were not doing so. If that were the case, the common question would be answered in the negative and the claims of all class members would be decided in one fell swoop in defendant's favor. See Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1166 n.5 (9th Cir. 2014) (quoting In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 857 (6th Cir. 2013)). On the other hand, plaintiffs may be able to show at trial that, despite a formal policy requiring MLOs to report all hours worked, defendant created other policies, practices, and systems that worked to dissuade MLOs from reporting.

The next question is whether a jury finding that Banner Bank discouraged and/or barred MLOs from reporting all the time they worked would drive the resolution of plaintiffs' state law claims. Two essential elements of the wage claims plaintiffs assert are that an employee worked unpaid overtime and that the employer knew or should have known of the unpaid work. Although an employer's avowed preference for straight time does not necessarily mean that employees actually worked more than 40 hours or that the employer knowingly failed to pay overtime when it accrued, plaintiffs are not relying solely on the fact that Banner Bank encourages MLOs to avoid overtime as proof of their state law claims. Rather, plaintiffs point out that MLOs are expected to be present in the office or otherwise work during normal business hours, that MLOs are expected to be available for customers, referrals, and other activities outside of normal business hours, that the duties of the MLO position are unchanged since they were reclassified as non-exempt and that those duties generally took and continue to take more than 40 hours to accomplish, that Banner Bank's policies make it difficult to obtain pre-approval for overtime hours, and that defendant's timekeeping records and electronic data show that employees worked during normal business hours (for which they were generally paid) and logged into defendant's computer network and/or attended work-related functions before and after hours (for which they were generally

not paid).[2]

The Ninth Circuit considered similar circumstances in Jimenez v. Allstate Ins. Co., 765 F.3d 1161 (9th Cir. 2014). Plaintiffs in that case offered evidence that the employer had a policy of discouraging the reporting of overtime, had retained excessive workloads after the insurance adjusters had been reclassified as non-exempt, and had a policy of treating adjusters' pay as salaries to be adjusted only in exceptional circumstances. The Ninth Circuit found that if plaintiffs were able to prove these common contentions at trial, it would drive the resolution of the "performed work for which he did not receive compensation" prong of a California wage claim. Id. at 1165-66. Whether the employer knew or should have known of the unpaid hours (the second common contention raised in that case) was found to be subject to classwide resolution through the testimony of managers and/or a review of the employees' telephone and computer usage. Id. at 1166. In Jimenez, as here, the employer disputed the existence of a policy discouraging overtime and pointed out that, to the contrary, it had a formal policy requiring payment for all overtime worked. The Ninth Circuit noted that, at the class certification stage, whether the common contentions were true or false was immaterial: the issue was "whether any answer that the questions could produce will drive resolution of the class' claims." Id. at 1166 n.5.

Based on the record as supplemented, the Court finds that answering the key common contention - whether Banner Bank has systems, policies, and practices in place that effectively discourage or prevent MLOs from reporting all the hours they worked - is subject to classwide resolution and will drive the resolution of the litigation.

---

[2] The Court recognizes that Banner Bank's timekeeping records may be nothing more than boilerplate entries reflecting a "normal" workday of exactly eight hours a day and may not accurately reflect what an MLO did on a particular day. For purposes of this motion for class certification, however, defendants' records support plaintiffs' contentions that Banner Bank expected MLOs to work during normal business hours and to be responsive to clients and potential referrals at all hours, that Banner Bank knew or should have known that MLOs were working outside normal business hours, and that those hours were generally not captured in the payroll records.

**3. Typicality**

The typicality requirement "ensures that the interests of the class representative aligns with the interests of the class." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). The named plaintiffs' claims need not be identical to those of the absent class members, but they must be reasonably similar in light of the injuries suffered and the conduct that allegedly caused the injuries. Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014); Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1141 (9th Cir. 2016). Class certification is not appropriate if there is a danger that the absent class members will suffer because their representative is preoccupied with defenses unique to him or herself. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Defendant has not challenged the typicality of the three named plaintiffs. The Court finds that the named plaintiffs' claims are "reasonably co-extensive with those of absent class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, the typicality requirement is met.

**4. Adequacy of Representation**

In the Ninth Circuit, the adequacy determination usually focuses on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting Hanlon, 150 F.3d at 1020). Banner Bank does not identify any conflict of interest between the named plaintiffs and absent class members or between counsel and the class. Nor is there any reason to suspect that the named plaintiffs or their counsel lack the will or the ability to vigorously pursue the state wage claims. The Court generally finds that the class representatives are adequate.

The Supreme Court has made clear, however, that a class representative is not adequate if he or she is not a member of the class or does not possess the same interest or

suffer the same injury as other class members. E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). The three named plaintiffs were employed by AmericanWest Bank and/or Banner Bank. To the extent they seek to represent MLOs who worked at Island Bank, Bank of Sacramento, PremierWest Bank, or Siuslaw Bank, plaintiffs have not provided any evidence suggesting that the overtime policies in place in those companies were the same as the ones about which they complain or that MLOs in the predecessor banks suffered injuries similar to theirs. There is no reason to believe that the named plaintiffs are any more capable of pursuing claims on behalf of MLOs from Island Bank, Bank of Sacramento, PremierWest Bank, or Siuslaw Bank than a stranger off the street would be: they have not offered any reason to suppose that their experiences were in any way mirrored in these predecessor banks. Plaintiffs are not, therefore, adequate representatives to the extent they seek to pursue claims arising from the compensation policies of Island Bank, Bank of Sacramento, PremierWest Bank, or Siuslaw Bank.

**B. Maintenance of a Class under Rule 23(b)**

Plaintiffs primarily argue that the provisions of Rule 23(b)(3) apply,[3] pursuant to which the Court is required to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

---

[3] In the alternative, plaintiffs suggest that a class may be maintained under Rule 23(b)(1), but they have not shown that wage claims brought by an individual who believes he or she has been deprived of overtime compensation would in any way impede or preclude another Banner Bank employee from seeking similar relief.

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION        -9-

**(1) Common Issues Predominate**

The first Rule 23(b)(3) finding involves "the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id. If the named plaintiffs are able to establish that Banner Bank's policies and practices had the effect of discouraging MLOs from reporting hours they actually worked, a fact which Banner Bank's own records would have revealed but which it chose to ignore, individualized inquiries will be limited primarily to determining which class members incurred unreported overtime and the calculation of damages. Such issues arise in virtually every class action and do not predominate over the substantive liability issues. The individualized defenses Banner Bank identified are either too limited (severance agreements negotiated with a handful of departing MLOs) or too insubstantial (judicial estoppel argument related to bankruptcy filings) to forestall class treatment. The Court finds that the underlying question concerning Banner Bank's overtime compensation policies and practices predominates over any individual issues.

**(2) Superiority of Class Action**

The second Rule 23(b)(3) factor requires the court to evaluate alternative mechanisms of dispute resolution based on the factors listed above in Rule 23(b)(3)(A)-(D). See Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1190 (9th Cir. 2001). Banner Bank argues that litigating wage claims under four different states' laws and evaluating the compensation policies of two different banks in these four states will be unmanageable. While there is some variation in the elements of a wage claim in Washington, Oregon, California, and Idaho, they are not particularly complicated. Defendant makes no attempt to identify the numerous and substantial separate issues each class member will allegedly have to litigate in order to establish his or her right to recovery. Nor is there any indication that the compensation policies, practices, or systems varied between banks, regions, or states: any variation defendant identified seemed to

have more to do with the regional manager than the bank or the state in which it was operating.

Banner Bank also argues that the superior mechanism for resolving this dispute is joinder or a wage complaint before the appropriate state agencies. The joinder issue is presumptively resolved under Rule 23(a): three of the proposed classes are too numerous to make joinder practicable. As for the suggestion that the class should seek relief from the state agencies charged with enforcing state wage laws, even if such administrative complaints are not time-barred or otherwise limited, Banner Bank offers no justification for abandoning a class action, where a single class counsel attempts to vindicate all claims arising out of a unified course of conduct, in favor of 200+ relatively small, separate claims brought by unrepresented individuals before multiple hearing officers in four states. If, as appears to be the case, the alternatives involve forcing class members to proceed with individual claims before state agencies or in this Court, the class action is superior. "Even if efficacious, [individual] claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" given the potential litigation costs. Hanlon, 150 F.3d at 1023. Although class members may have individual claims in the thousands of dollars, that amount pales in comparison to the costs of litigation. The relative amounts suggests that each class member will not have a "significant interest in litigating his or her claims separately." Brown v. Consumer Law Associates, LLC, 283 F.R.D. 602, 615-16 (E.D. Wash. 2012) (holding that class adjudication of class members' claims was superior to separate individual actions when the claims were "relatively small," in the range of $5,000 to $10,000).

For all of the foregoing reasons, plaintiffs' motion for class certification is GRANTED in part. It is hereby ORDERED that the following classes are certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers, and/or Residential Lenders who were employed by Banner Bank or its

predecessor, AmericanWest Bank, in Washington State at any time from April 17, 2014 to the present.

All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers, and/or Residential Lenders who were employed by Banner Bank or its predecessor, AmericanWest Bank, in Oregon at any time from April 17, 2011 to the present.

All current and former Mortgage Loan Officers, Real Estate Commissioned Loan Officers, and/or Residential Lenders who were employed by Banner Bank or its predecessor, AmericanWest Bank, in California at any time from April 17, 2013 to the present.[4]

Kelly Bolding, Michael Manfredi, and Sarah Ward are appointed representatives of the class. Plaintiffs' counsel is designated as counsel for the class. Banner Bank shall, within fourteen days of the date of this Order, produce contact information in electronic and importable format (including names, addresses, and email addresses) for all class members.

The Clerk of Court is directed to seal Dkt. # 90. Plaintiffs' motion for leave to supplement the record (Dkt. # 115) is GRANTED. Defendants' objections to the form of the evidence submitted on short notice is overruled without prejudice.

Dated this 10th day of October, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[4] The Court adopts plaintiffs' statute of limitations analysis without prejudice to the issue being more fully briefed.