1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

KELLY BOLDING, *et al.*,

                     Plaintiff,

9

      v.

10

BANNER BANK,

11

                    Defendants.

12

Case No. C17-0601RSL

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS

13    This matter comes before the Court on "Plaintiffs' Motion for Sanctions for Intentional

14  Spoliation of Evidence Including a Default Judgment Under FRCP 37(e)(2)." Dkt. # 166. In

15  October 2018, the Court granted plaintiffs' motion to compel production of mortgage/residential

16  loan officers' email accounts and work-related calendars. Dkt. # 137. In the context of that

17  motion, defendant's repeated assertions that it had undertaken a "reasonably diligent search and

18  inquiry" rang hollow in light of its subsequent discoveries and disclosures. Defendant's

19  unwillingness or inability to describe its efforts to preserve, search for, and produce

20  electronically-stored information ("ESI") gave rise to a concern that defendant had deleted the

21  email and calendar accounts of putative class members long after it was put on notice of a

22  potential wage and hour claim (July 2016), months after plaintiffs had filed this litigation (April

23  2017), and even after plaintiffs had served their first discovery requests (October 2017).

24    At the time, the Court deemed an evidentiary hearing to be premature, but required

25  defendant to supplement its discovery responses and provide, among other things, (a) detailed

26  information regarding its document preservation and discovery efforts to date, (b) an explicit

statement regarding when each class member's calendar and email account was destroyed or

otherwise rendered inaccessible, and (c) information regarding any other types of documents or

electronic files that could substitute for missing calendars and email accounts for purposes of

this litigation. As part of its First Supplemental Responses, defendant provided a spreadsheet

entitled "ESI Preservation Chart" identifying for each class member the searches performed, the

data located and produced, and the responsive data that had been deleted. Dkt. # 167 at 10-48.

Plaintiffs, after deposing defendant's chosen representatives under Rule 30(b)(6), added two

columns to defendant's chart to indicate (1) what evidence would have been preserved had

defendant stopped destroying electronically stored information when this case was filed and

(2) whether any records remained for a given class member. Dkt. # 167 at 61-85. This spoliation

motion followed. Having reviewed the memoranda, declarations, and exhibits submitted by the

parties and having heard the arguments of counsel, the Court finds as follows:

**BACKGROUND**

In July 2016, plaintiff's counsel, representing individual Banner Bank employees in a

separate sex discrimination/retaliation suit, submitted a mediation memorandum in which he

asserted that there was a "pattern and practice at the Bank of failing to pay overtime to loan

officers." Dkt. # 180-1 at 48. Relying on discovery taken in that litigation, counsel described in

detail a situation in which a supervisor informed a mortgage/residential loan officer ("MLO")

that she would need to work more than 40 hours per week to be successful in the position and

then berated her when she reported such hours on her timesheet. Dkt. # 180-1 at 49. Counsel

threatened to amend the complaint to include overtime wage claims:

> Discovery has been conducted on this matter. Evidence is clear that Defendant was
> not properly allowing employees to record overtime that they worked, and was
> improperly calculating employee regular hourly rates which led to improper
> calculations of time-and-a-half rates by failing to add compensation from
> commissions to determine the proper overtime rate. The law places a responsibility
> on Defendant to keep proper records regarding overtime, and to properly calculate
> overtime using commissions to determine employee's overtime rate. Defendant

1   failed to do this.

2   Dkt. # 180-1 at 50-51. Counsel then provided detailed estimates regarding defendant's damage

3   exposure for wages owed two employees, ranging from $48,089.60 - $96,179.20 for Wendy

4   Anderson and $262,501.20 - $525,002.40 for Beth Thompson: counsel pointed out that those

5   amounts would be doubled if the failure to pay wages were found to be willful. Dkt. # 180-1 at

6   51. Banner Bank agreed to settle the case in September 2016, and the complaint was never

7   amended to add the overtime wage claim.

8       The individual plaintiffs in the sex discrimination/retaliation case had been employed by

9   AmericanWest Bank ("AWB") before its October 2015 acquisition by Banner Bank. Prior to the

10  acquisition, AWB kept ten years' worth of employee emails and calendars on two separate

11  systems, one called Postini and the other called Symantec. It also stored 90 days' worth of

12  emails and calendars in backup tapes. Dkt. # 177 at 9. In January/February 2016, defendant

13  deleted ESI stored in the Symantec system regarding any AWB employee who did not join

14  Banner Bank: it  transferred the remaining information to its servers. Defendant terminated

15  AWB's other records system, Postini, in September/October 2016, shortly after the sex

16  discrimination/retaliation lawsuit settled.[1] A few months later defendant deleted AWB's backup

17  tapes. Thus, as of January 2017, the only AWB information still in existence was ten years'

18  worth of emails for AWB employees who had joined Banner Bank following the acquisition. In

19  March 2017, defendant applied its own document retention policy[2] to the ESI migrated from

20

21      [1] Defendant asserts in its opposition memorandum that "ESI migrated to Banner's servers . . .

22  largely duplicated ESI contained in Postini date[d] from early 2014, forward." Dkt. # 117 at 10. To the
    extent this statement is intended to convey the impression that possession of the migrated information

23  made continued retention of Postini redundant, it is misleading. The information migrated from
    Symantec (ESI regarding current Banner MLOs) was also found in the Postini system, but Postini

24  contained ESI on all AWB MLOs, not just those who continued to work for Banner after the acquisition.

25      [2] In May 2012, defendant adopted a retention policy requiring the deletion of emails from

26  employee accounts one year from the date the email was sent and the deletion of Outlook calendars that
    were more than three years old. The policy was implemented in February 2013. Dkt. # 182-1 at 22.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS                    -3-

AWB, deleting all but one year's worth of emails and three years' worth of calendars (with the exception of individuals who were involved in the sex discrimination/retaliation case, such as Ms. Bolding).

This lawsuit was filed in April 2017. Plaintiffs alleged that AWB and Banner failed to pay overtime to their MLOs, asserting a federal class claim on behalf of all MLOs and state class claims on behalf of MLOs in Washington, Oregon, California, Utah, and Idaho.

In May 2017, defendant sent a letter to thirty-three employees directing them to search for and save, among other things, emails and other ESI relating or referring to the work schedules and hours of all current and former MLOs. The recipients were instructed to preserve any electronic or magnetic tape backups and any server information that contained potentially relevant information. The recipients of the letter were assured that "Banner Bank has already taken steps to preserve all emails and HR records" and were cautioned that "[y]ou should not make a decision to destroy, otherwise dispose of, or alter a potentially relevant document on your own." Dkt. # 167 at 168 and 170. The letter was not sent to the MLOs themselves.

Defendant's key information technology staff received the letter as an attachment to an email on May 12, 2017. Karl Peterson, Banner's Senior Vice President, Information Security Office Director, states that the email also included a spreadsheet attachment listing all MLOs employed by Banner from 2013 onwards. Dkt. # 181 at ¶ 8. The email and employee list have not been provided for the Court's review, but they apparently put Peterson on notice that he was to preserve all data from the personal drives and email accounts for the 75 listed employees and should capture and preserve that same information going forward. A similar spreadsheet and email was sent a few days later regarding AWB MLOs who had not joined Banner following the acquisition.[3] Instead of altering or disabling defendant's document retention system (whereby

---

[3] As described above, all ESI for this group, with the possible exception of individuals who had been involved in the earlier sex discrimination/retaliation lawsuit, had already been destroyed.

emails were destroyed after one year and calendars were destroyed after three years),[4] Peterson took the following steps:

● He attempted to add the 75 current MLOs identified by counsel to a "journaling" system that would capture and preserve personal drives and emails going forward. He "inadvertently (and unintentionally)" excluded eleven MLOs from the journaling effort. Dkt. # 181 at ¶ 13.

● He attempted to restore and preserve past email and calendar data for all current MLOs from the backup tape created in May 2017, capturing emails back to May 2016 and calendars back to May 2014. He failed to include the same eleven MLOs mentioned above in this effort. He also failed to restore or preserve emails and calendars stored on backup tapes created from July 2015 through April 2017 which, at that time, were still in existence. Dkt. # 167 at 56-59; Dkt. # 177 at 13.

● At some point, Peterson realized that he had excluded eleven MLOs from his preservation efforts and took undefined steps to capture, restore, and preserve their ESI.

● Peterson continued to add MLOs to the "journaling" system over some undisclosed period, eventually capturing at least some ESI as it was created for approximately 90% of the class members who were employed by Banner on or after the date it was served with the summons and complaint in this action (April 21, 2017). He was also able to restore and preserve at least some historic ESI for approximately 95% of the class members employed by Banner after April 21, 2017.

Five days after Peterson utilized the May 2017 backup tape to preserve current MLO emails dating back one year and calendars dating back three years, defendant instructed its third party vendor, Iron Mountain, to destroy the monthly backup tapes created in July 2015 through

---

[4] Peterson apparently determined that storing ESI for any period longer than that authorized by Banner's retention policy posed an unacceptable risk of a customer data security breach. Dkt. # 181 at ¶ 11.

1   February 2016. Dkt. # 167 at 56-57 and 139-41. Defendant had to pay a fee for this service, and

2   the last time it had directed Iron Mountain to destroy tapes was in November 2016. Dkt. # 167 at

3   139. The eight tapes that were destroyed pursuant to the June 2017 directive each contained one

4   year's worth of emails and three years' worth of calendars, so the data that was irretrievably lost

5   included emails from July 2014 through February 2015 and calendars from July 2012 through

6   February 2013. *Id.* at 117-18.[5] In August 2017 a similar instruction was sent to Iron Mountain

7   resulting in the loss of emails from March 2015 through May 2015 and calendars from March

8   2013 through May 2013. Dkt. # 167 at 57. A January 2018 directive to destroy backup tapes

9   resulted in the irretrievable loss of emails from June 2015 through September 2016 and

10  calendars from June 2013 through September 2014.

11         It is unclear how, when, or why the June 2017 and August 2017 decisions to destroy

12  backup tapes were made. The January 2018 decision, however, is reflected in a brief email

13  exchange between Peterson and Michael Currie, Banner's Senior Vice President, Technology

14  Infrastructure Manager. On December 13, 2017, Currie sent an email notifying Peterson that

15  defendant had approximately 18 months of tapes and wanted to know if they could "start

16  destroying backup tapes with email on them again?" Dkt.# 181-1 at 5. Peterson responded three

17  weeks later, stating that "[s]ince we created a copy of everyone [sic] mailbox from May of last

18  year for the bolding [sic] case," he was comfortable with destroying the tapes. *Id.* During the

19  Rule 30(b)(6) deposition, Peterson stated that "at no time had [he] ever been told to stop deleting

20  tapes by legal counsel." Dkt. # 167 at 159. In his declaration, he states that he "did not consult

21  with Banner's in-house or outside counsel before resuming backup tape destruction in January

22  2018." Dkt. # 181 at ¶ 17. At some point, Peterson realized his mistake and suspended the

23

24         [5] Defendant's Rule 30(b)(6) designee accurately testified that the destruction included emails and
25  calendars through February 2016 (the date of the most recent tape destroyed), but the later information
    was not necessarily made unavailable by the June 2017 directive. Giving defendant the benefit of the
26  doubt, the more recent emails and calendars would have been backed up on subsequent tapes, such as
    the one made in March 2016.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS                    -6-

backup tape destruction program in March 2018.  The nature of the acknowledged "mistake" is unclear. During the Rule 30(b)(6) deposition, Peterson suggested that he halted tape destruction when legal counsel informed him that tapes were not to be destroyed pursuant to the litigation hold letter he had received in May 2017. Dkt. # 167 at 159. In his declaration, Peterson says his mistake was believing that the information on the backup tapes was duplicative of the ESI he had preserved in response to the litigation hold letter. Dkt. # 181 at ¶ 18.

## DISCUSSION

### A. Spoliation

> Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). However, sanctions may issue only when a party had some notice that the evidence was potentially relevant. *See Leon*, 464 F.3d at 959; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *See Kitsap Physicians*, 314 F.3d at 1001-02 (affirming the district court's finding of no spoliation when potentially relevant documents were destroyed in the defendants' normal course of business).

*U.S. v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009). There is no serious dispute regarding the relevance of the MLO's email accounts and work-related calendars. In response to plaintiffs' claims of unpaid overtime, defendant asserts that MLOs either did not work overtime or were paid for all overtime worked. Because defendant's timekeeping records appear to be formulaic (generally showing a uniform work day with no relationship to the actual hours worked), plaintiffs hoped to use their emails and calendars as evidence that they worked overtime and the number of hours worked. Evidence of when class members were performing work-related tasks is therefore relevant to both liability and damage issues.

Defendant destroyed MLO email accounts and work-related calendars. It argues, however, that its duty to preserve this information arose over time and that it could not have

1    known of a need to preserve all class members' ESI until May 2018 when the parties met and

2    conferred regarding defendant's discovery responses and plaintiffs explicitly stated that all

3    emails and calendars were critical to their case. Dkt. # 177 at 17-21. This argument is

4    extraordinary. In making it, defendant sweeps under the proverbial rug what it knew, when it

5    knew it, and what it did at each stage of this litigation. Even if, as defendant would have it, the

6    2015-2016 testimony revealing overtime wage violations and the July 2016 threat of overtime

7    wage litigation put it on notice only that there was a problem in AWB's operations, defendant

8    fails to acknowledge that it destroyed huge swaths of AWB's ESI within months of counsel's

9    threat to assert a claim. Even if, as defendant would have it, the filing of this complaint were not

10   accompanied by an explicit demand that defendant retain all MLO emails and other ESI as

11   evidence of the hours its MLOs worked during the relevant period, it obviously realized the

12   relevance of the information. The litigation hold letter defendant issued in May 2017 directs

13   recipients to preserve all ESI relating or referring to work schedules or hours, and its information

14   technology staff recognized that that meant retaining all work-related emails and calendars. No

15   substantive review was deemed necessary when defendant used the most recent backup tape to

16   preserve all data regarding sixty-four MLOs. Whatever distinction defendant is now making

17   between "emails that reflect time worked" and "all emails," it did not make that distinction at the

18   time. Finally, any residual confusion about what information plaintiffs were seeking in discovery

19   could not have survived receipt of plaintiffs' discovery requests in October 2017. Those requests

20   sought all ESI showing that an MLO sent, received, reviewed, or drafted email from his or her

21   work account and all MLO work-related calendars, including Outlook calendars, from April 17,

22   2014 onward. Dkt. # 182-1 at 14-17. Defendant's argument that it did not realize that all email

23   accounts and work-related calendars were relevant to plaintiffs' claims until plaintiff made the

24   point (again) during a meet and confer held in May 2018 is simply not supported by the record.

25         More to the point, district courts in the Ninth Circuit generally recognize that the duty to

26   preserve evidence arises when a potential claim is identified which the litigant knows *or*

1   *reasonably should know* is relevant to the action. *See Apple Inc. v. Samsung Elecs. Co.*, 888 F.

2   Supp.2d 976, 991 (N.D. Cal. 2012). Given the information it had, the Court finds that, as of July

3   2016, Banner knew or should have known that evidence showing when AWB MLOs were

4   engaged in work-related activities - such as their emails and calendars - was relevant to the

5   threatened overtime claim and that, as of April 2017, Banner knew that its own practices were

6   similarly accused and knew or should have known that its email and calendaring systems

7   contained relevant information. Defendant's duty to preserve AWB emails and calendars

8   therefore arose no later than July 2016 and its duty to preserve its own data arose no later than

9   April 2017.

10      Banner breached its preservation duties. After learning that employees had accused AWB

11  of not paying overtime and after being threatened with a lawsuit over AWB's practices,

12  defendant intentionally destroyed all ESI related to MLOs who worked for AWB but did not join

13  Banner following the acquisition. It then deleted nine years' worth of emails and seven years'

14  worth of calendars for AWB MLOs who did join Banner (with the exception of a few

15  individuals who were involved in the sex discrimination/retaliation lawsuit). After this class

16  action lawsuit was filed, defendant chose not to halt its document destruction program. Instead,

17  it saved newly-created emails and calendars and preserved historic data contained on its most

18  recent backup tape as to sixty-four MLOs. It then ordered and paid for the destruction of eleven

19  other backup tapes. After receiving formal requests for the production of all emails and work-

20  related calendars, defendant ordered the destruction of sixteen additional backup tapes. In total,

21  defendant issued three orders to destroy documents, orders that were not on any sort of "normal"

22  or "routine" schedule: defendant had to take affirmative steps and incur additional costs to make

23  the evidence disappear. By these means, defendant ultimately rendered unavailable all emails

24  from July 2014 through September 2016 and all calendars from July 2012 through September

25  2014.

26      Based on the foregoing, the Court finds that discoverable ESI existed at the time the duty

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS                    -9-

1  or duties to preserve the evidence arose, that defendant's efforts to preserve the ESI were

2  deficient, that defendant took affirmative and intentional steps to destroy relevant evidence that

3  it knew or should have known had not been preserved, and that the evidence is now irretrievably

4  lost. Thus, plaintiffs have shown that spoliation occurred.

5  **B. Sanctions**

6       Plaintiffs seek entry of default against defendant as a sanction for the destruction of the

7  ESI discussed above. In the alternative, plaintiffs request that the Court hold an evidentiary

8  hearing on the issue of sanctions. Defendant opposes both requests and, while arguing that no

9  sanction is merited, asserts that at most the jury should be instructed that "some emails and

10  calendar entries were lost." Dkt. # 177 at 30.

11       Dismissal is a viable sanction when "a party has engaged deliberately in deceptive

12  practices that undermine the integrity of judicial proceedings" because "courts have inherent

13  power to dismiss an action when a party has willfully deceived the court and engaged in conduct

14  utterly inconsistent with the orderly administration of justice." *Anheuser–Busch*, 69 F.3d at 348

15  (internal quotation marks and citations omitted). Dismissal is a harsh sanction, however, and

16  courts in the Ninth Circuit consider the following factors before imposing it: "(1) the public's

17  interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the

18  risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their

19  merits; and (5) the availability of less drastic sanctions." *Hester v. Vision Airlines, Inc.*, 687 F.3d

20  1162, 1169 (9th Cir. 2012). In addition, the Court must make a finding of "willfulness, fault, or

21  bad faith" before dismissal is proper. *Anheuser–Busch*, 69 F.3d at 348 (citation omitted).

22       (1) Expeditious Resolution of Litigation

23       The parties recently agreed to continue the case management deadlines in this case, and

24  the Court has established a discovery deadline of November 1, 2020. Although this action was

25  filed more than three years ago, there is still significant discovery contemplated by the parties. If

26  dispositive sanctions are not awarded, the parties will proceed under the current schedule. The

1   first factor neither favors nor disfavors a dispositive sanction.

2        (2) Efficient and Effective Docket Management

3        Due in large part to defendant's tactics during discovery, this case has not proceeded

4   efficiently. Since October 2017, when plaintiff served their initial discovery requests, defendant

5   has attempted to narrow the scope of discovery and has delayed production, forcing plaintiffs to

6   supplement their motion for class certification and to file a motion to compel. Plaintiffs have

7   spent months trying to figure out what ESI defendant had, what happened to it, and when it was

8   destroyed, culminating in this motion for sanctions. Even worse than the non-productive

9   expenses associated with these discovery delays and disputes, defendant's conduct has placed

10  the effective administration of justice in question. The second factor supports entry of dispositive

11  sanctions.

12       (3) Risk of Prejudice to Plaintiffs

13       The risk of prejudice to plaintiffs is high. Plaintiffs have the burden of showing both that

14  they worked overtime and the number of overtime hours worked. There are very few formal time

15  records reflecting overtime hours: plaintiffs argue this is because defendant discouraged MLOs

16  from reporting overtime hours. In this situation, the MLOs hoped to use email and calendar

17  account information to inform their estimates of overtime hours worked and to support those

18  estimates. Defendant destroyed many of the email records from the period before this class

19  action was filed. Although there remains a significant trove of calendar records, those records

20  provide only a partial snapshot of an MLO's day: a combination of emails and calendars would

21  provide a far more accurate picture of how much an MLO worked in a given pay period. There

22  is a very real risk that, when a class member testifies regarding the number of overtime hours he

23  or she worked in, for example, March of 2016, defendant will highlight the lack of corroborating

24  evidence - a deficiency it created - and rely on its formal policies prohibiting unpaid overtime to

25  discredit the testimony. The Court finds that the third factor supports entry of dispositive

26  sanctions.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS                 -11-

1

(4) Public Policy Favoring Decisions on the Merits

2      The primary issues in this case are whether defendant has a policy of discouraging MLOs

3 from reporting overtime hours worked and the number of unpaid hours worked by class

4 members. The public has an interest in a determination of those issues based on the facts, rather

5 than by judicial fiat. While the public interest favoring decisions on the merits generally points

6 away from dispositive sanctions, in this case it is likely that defendant's destruction of evidence

7 that would have helped class members calculate their overtime hours and amounts due has

8 reduced the chances that an accurate determination of the facts can ever be made. To the extent

9 this risk cannot be ameliorated, this factor would support the imposition of dispositive sanctions.

10     (5) Availability of Less Drastic Sanctions

11     There are a number of less drastic sanctions available to the Court, including drawing

12 adverse inferences when considering motions for summary judgment, instructing the jury to

13 presume that the destroyed documents were unfavorable to defendant, and/or awarding monetary

14 sanctions. The issue is whether such lesser sanctions or any combination thereof will allow

15 plaintiffs to adequately prepare for trial and ameliorate the risk that defendant's conduct will

16 interfere with the rightful decision of this case. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406

17 (9th Cir. 1990). The details of the document destruction that occurred in this case are important

18 in fashioning a remedy. It is undisputed that defendant destroyed almost all ESI associated with

19 class members who worked for AWB and did not transition to Banner Bank. For a number of

20 class members, therefore, there are no contemporaneous records left. There remains, however, a

21 substantial body of ESI that was created by MLOs in the months immediately preceding the

22 filing of this action. It appears that Peterson preserved emails for sixty-four class members from

23 May 2016 forward, plus additional records for employees who were involved in the earlier sex

24 discrimination/retaliation case. As for the remaining class members, their historic email accounts

25 were preserved from October 2016 forward. Thus, plaintiffs have a representative sample of

26 seven to eleven months of pre-filing emails and calendars that can be used to establish both an

1    unlawful policy and the amount of damages incurred during those months. That still leaves

2    plaintiffs at risk that defendant will use the lack of corroborating evidence from the period

3    before May or October 2016 to contradict or discredit a class member's estimate of unpaid

4    overtime, but that risk can be ameliorated somewhat by preventing defendant from challenging

5    those estimates. Thus, at this juncture, there appears to be a less drastic remedy than dismissal

6    available to the Court. This factor does not favor the imposition of dispositive sanctions.

7        (6) Bad Faith

8        The record contains ample evidence that defendant had notice that the documents it

9    intentionally and affirmatively destroyed were relevant to an anticipated or actual claim. *U.S. v.*

10   *Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). Banner in general, and Peterson in

11   particular, knew there was a duty to preserve MLO email and calendar data when Peterson

12   preserved the information on the May 2017 backup tape. The inexplicable choice to destroy

13   other backup tapes - on three separate occasions - without preserving the information thereon has

14   not been fully explained or persuasively justified. With the exception of a short email exchange

15   regarding the March 2018 destruction order (an exchange which raises more questions than it

16   answers), defendant has been unwilling to provide any details regarding when, how, why, and by

17   whom these extraordinarily destructive decisions were made. Nevertheless, the Court declines at

18   this juncture to make the prerequisite finding of willfulness and bad faith because it finds that

19   dispositive sanctions are not appropriate under the *Anheuser–Busch* factors.

20

21       The availability of less drastic sanctions that have the ability to mitigate the damage

22   caused by defendant's egregious destruction of evidence is a powerful factor that militates

23   against imposing dispositive sanctions. As discussed above, it appears that plaintiffs have seven

24   to eleven months of pre-filing emails and calendars from which to establish that, as a result of

25   defendant's policies, MLOs worked unpaid overtime hours. Defendant will be precluded from

26   contesting a class member's estimate of overtime hours worked as to any month in which

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS                    -13-

1  plaintiffs have been deprived of the employee's emails, calendar account, or both.

2

3      Dated this 22nd day of May, 2020.

4                            *Robt S Lasnik*

5                            Robert S. Lasnik
6                            United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26