1

2

3

4

5                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
6                                 AT SEATTLE

7    _____
                                            )
     KELLY BOLDING, *et al.*,                )
8                                            )      Case No. C17-0601RSL
                            Plaintiff,       )
9              v.                            )
                                            )
10   BANNER BANK,                            )      ORDER GRANTING IN PART
                                            )      DEFENDANT'S MOTION FOR
                                            )      SUMMARY JUDGMENT
11                          Defendants.      )
     _____)
12

13        This matter comes before the Court on "Defendant Banner Bank's Motion for Summary

14   Judgment." Dkt. # 294. Banner asserts (A) that there is a lack of evidence showing that the vast

15   majority of the individuals who make up the class worked hours that were unpaid, (B) that the

16   class claims fail entirely because no reasonable jury could find that Banner knew or should have

17   known that mortgage loan officers ("MLOs") were performing off-the-clock work, (C) that

18   plaintiff Kelly Bolding is judicially estopped from pursuing the wage and hour claims asserted

19   here, and (D) that there is no evidence of bad faith or intent that could support an award of

20   liquidated or double damages. Banner also seeks a declaration regarding the statutes of limitation

21   that apply to the claims of Banner's Oregon employees.

22        Summary judgment is appropriate when, viewing the facts in the light most favorable to

23   the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

24   judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

25   responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that

     ORDER GRANTING IN PART DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT

1   show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving

2   party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

3   designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S.

4   at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .

5   and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of*

6   *Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact

7   genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the

8   "mere existence of a scintilla of evidence in support of the non-moving party's position will be

9   insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th

10  Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose

11  resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion

12  for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In

13  other words, summary judgment should be granted where the nonmoving party fails to offer

14  evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am.*

15  *Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

16          Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] and

17

18          [1] The Court has not considered the declarations from Lee Ann Anderson, Christopher Barnes,
    Sandra Borchers, or Tamara Encinas that were signed in 2018 and arguably should have been produced
19  during discovery. Nor has the Court considered the unsigned and unverified discovery responses from
    Lucy Cleveland, John Ferry, Maria Garcia, Eduard Gubarik, and/or George Hogg. It has, however,
20  considered the discovery responses that were recently signed or verified: the substance of those
    responses was timely disclosed.
21
            With regards to the record reviews performed and compilations created by Reiley Colgan, Mark
22  Miller, and Emily del Rosario, the underlying timekeeping, payroll, communication, and system records
    were produced by defendant in discovery, they are records of regularly conducted activities, the data is
23  voluminous, the declarants thoroughly explain how and why they parsed and compared the records, and
    the resulting summaries appear to be both relevant and admissible. Colgan and Miller's references to
24  "unpaid work" are simply shorthands for "an instance where the date and time of log report activity was
    not reflected in the corresponding timekeeping record" (Dkt. # 314 at ¶ 15) or "an instance where the
25  date and time of an email was not reflected in the corresponding timekeeping record and audit report"
    (Dkt. # 315 at ¶ 22), respectively. To the extent plaintiffs' counsel utilized the Colgan and Miller
26

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -2-

1   taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

2   **A. Uncompensated Hours for Individual Class Members**

3       To establish liability under federal and state law for unpaid wages, a plaintiff must

4   generally prove that (1) he or she performed unpaid work and (2) the employer knew or should

5   have known about it. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

6   Plaintiffs, on behalf of a class of mortgage loan officers ("MLOs") who worked at Banner and/or

7   its predecessor, seek to recover wages owed for unpaid compensable work at both straight and

8   overtime rates. The conditional certification of a collective action under the Fair Labor

9   Standards Act ("FLSA") and the Rule 23 class certification were based on plaintiffs' allegations

10  that Banner had a unified, multi-prong policy designed to prevent MLOs from reporting and

11  receiving compensation for all hours worked. Banner argues that the claims of the vast majority

12  of the class should be dismissed because plaintiffs have neither obtained evidence from each

13  class member regarding the existence or amount of unpaid work nor provided evidence that is

14  probative of the experience of the entire class.

15      To the extent Banner is demanding individualized evidence of the existence and amount

16  of unpaid hours for each MLO, the demand is premature. Which MLOs were deprived of

17  straight or overtime pay and the amount of any related damages were never likely to be

18  determined on a class-wide basis.[2] Those issues have now been bifurcated with regards to all

19  plaintiffs, class, or collective members who are not called to testify in the liability phase.

20

21  summaries to make additional calculations, she may testify regarding the assumptions and evaluations
22  she personally made. Whether, given the limited reviews performed by counsel and her staff, there are
    likely to be other evidence that MLOs engaged in compensable work that was not reflected in their
23  timesheets can be determined by the fact finder and is not properly the subject of testimony from these
    witnesses.
24      The Court has considered the various reports prepared by plaintiffs' economist, William Partin.

25      [2] In the class certification order, the Court noted that individualized inquiries would be necessary
26  to determine "which class members incurred unreported overtime and the calculation of damages." Dkt.
    # 135 at 10.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -3-

To the extent Banner is arguing that plaintiffs' evidence fails to raise a triable issue of material fact regarding the existence of unpaid hours on a class-wide basis, the Court disagrees. Plaintiffs have provided evidence that:

- The duties and responsibilities of an MLO were demanding and required 24/7 responsiveness to customers. MLOs were subject to productivity quotas that generally could not be reached working only 40 hours/week. The nature of the job did not change when MLOs were reclassified from exempt to non-exempt.

- The cell phone numbers of MLOs were posted on Banner's advertising, and their work phones and emails were pushed to the MLOs' cell phones.

- MLOs were generally assigned to branch offices so that they could assist walk-in customers during bank hours. Other job functions had to be performed after hours.

- Banner's predecessor had a policy requiring MLOs to return calls "timely 100% of the time."

- Banner had uniform, written policies requiring pre-approval for overtime and worked breaks, requiring notification of missed breaks, and assuming that missed breaks were voluntary unless Human Resources was informed in advance. There is evidence that predicting when extra hours would be needed was functionally impossible and that the persons responsible for approving overtime were not generally available. Banner provided no information to the MLOs regarding what constituted compensable work or to whom missed breaks had to be reported.

- Before August 2017, Banner's timekeeping system prevented the accurate reporting of time worked, simply reflecting a single entry in the form of either "8 hours" or "8:00am to 4:00pm. There was no ability to indicate a missed break/lunch or to record more than one start/stop block in a day. Other hourly employees were able to enter multiple start and stop times and were trained to do so: MLOs were excluded from this functionality.

1    • MLOs were centrally managed, with their regional managers reporting directly to a

2        single head of Residential Lending/Mortgage Division. There is evidence that a

3        division head was charged with creating the policies for MLO compensation and

4        timekeeping and that his assistant individually reviewed MLO timesheets.

5    • Banner's Rule 30(b)(6) declarant stated that, even if Banner learned that an employee

6        had worked through lunches that had been blocked out in the timekeeping records,

7        he or she would not be paid for those hours.

8    • Internal Banner communications question timesheets that contain overtime hours. One

9        communication suggests that payroll declined to pay the reported overtime until it

10        obtained additional information and/or approvals.

11    • When comparing sixteen months' worth of emails (August 2017 through November

12        2018) to the relevant timekeeping records, plaintiff identified 75 MLOs who

13        worked hours that were not reflected on their timecards (and were presumably not

14        paid). That represents 72% of the class members who were working during that

15        sixteen month period. Approximately 8 million emails from November 2018

16        through October 2020 were produced in November 2020: plaintiffs were not able

17        to review and compare them by the time their opposition was due on December 14,

18        2020.

19    • A comparison of remote access records showed time logged into Banner's system that

20        exceeded a normal workday, was outside reported working hours, and/or occurred

21        when the MLO was on vacation or on a holiday. Sixty three of the 212 class

22        members had unrecorded remote access time.

23    • A review of expense reports shows that 42 MLOs claimed expenses for work-related

24        activities (including weekday business lunches) that are not recorded in the

25        timekeeping records.

26    • Approximately 30 class members have affirmatively stated that Banner discourages

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -5-

1    MLOs from reporting all time worked.

2  Plaintiffs' claim of uncompensated work is not, as Banner would have it, based solely (or even

3  mostly) on the testimony of MLOs. Plaintiffs rely on Banner's written policies, internal

4  correspondence, and records to show the under-reporting of compensable hours and a hostility

5  toward overtime reporting. The class members' testimony confirms this evidence and suggests a

6  causal connection between Banner's policies and the under-reporting. A reasonable jury could

7  conclude that Banner discouraged the reporting of compensable hours and that its policies

8  resulted in widespread under-reporting of both straight and overtime hours.[3]

9  **B. Employer Knowledge**

10    In order to be liable for unpaid wages, Banner must have known or should have known

11  that MLOs were performing compensable work for which they were not being paid. Banner

12  argues that because it had an established procedure for reporting overtime hours and because it

13  would have had to comb through non-payroll records to determine whether a particular MLO

14  were working unreported hours, the evidence cannot support a finding that Banner knew or

15  should have known of uncompensated work. The Court disagrees. As discussed above, there is

16  evidence from which a reasonable jury could conclude that Banner affirmatively and

17  intentionally discouraged the reporting of compensable work. If that were the case, a reasonable

18  inference arises that defendant was aware that unreported work was occurring, but simply chose

19  to turn a blind eye. Other facts also support this inference, such as:

20    ● Banner's electronic record of MLOs' remote access to its system made evident work at

21

22    [3] In a footnote, Banner seeks summary dismissal of twenty-one opt-in plaintiffs' claims because
23  they either failed to respond to or affirmatively objected to discovery requests. Dkt. # 294 at 20 n.44.
   Rule 37(d), on which defendant relies, authorizes sanctions "if . . . a party, after being properly served
24  with interrogatories under Rule 33 . . . , fails to serve its answers, objections, or written response."
   Counsel's declaration makes clear, however, that the twenty-one individuals did serve objections or
25  responses, they were just not in the form that Banner preferred. Because defendant has not certified that
   it conferred in good faith with plaintiffs about the perceived shortcomings before seeking terminating
26  sanctions (Rule 37(d)(1)(B)), the request for alternative relief is denied.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -6-

1   times that were not captured in the formulaic timekeeping records. There is also

2   evidence that Banner's remote access system auto-generated a report when certain

3   actions occurred, such as pulling a credit report, which would have notified

4   managers of after-hours work.

5   • Regional Managers reviewed and approved MLO time sheets and communicated with

6   MLOs during times when the MLOs were off-the-clock.

7   • Regional Managers approved expense reporting (accompanied by receipts), many of

8   which reflected hours worked during unpaid meal breaks or outside the hours

9   recorded on time cards.

10   • Banner opted to keep payroll records that reflected exactly 8 hours of work per day,

11   usually on the exact same schedule. There is no indication that any manager,

12   Human Resources employee, or compensation specialist believed those records to

13   be accurate, and the jury could reasonably infer that the formulaic and

14   unchangeable entries were part of an effort to prevent accurate reporting and avoid

15   having to pay for all compensable work.

16   • Certain MLOs state that they affirmatively told their managers about work-related

17   activities performed after hours and that they provided schedules/logs/production

18   reports showing work without breaks and outside normal business hours.

19   • Certain MLOs state that their managers observed (if not demanded) off-the-clock work,

20   including meetings and work during lunch or before/after branch hours and work-

21   related meals and conferences.

22   **C. Judicial Estoppel**

23   Plaintiff Kelly Bolding filed for bankruptcy in May 2013. There is no evidence that she

24   was aware that she had wage and hour claims against Banner at the time. Her bankruptcy plan

25   was confirmed in September 2013. She made the required payments to her creditors and filed a

26   certification of completion in October 2017, obtaining a discharge in November 2017. This

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -7-

1   lawsuit was filed in April 2017. She asserts that it did not occur to her than any new step related

2   to her bankruptcy had to be undertaken other than to continue making her payments. After

3   defendant broached the topic of judicial estoppel in this litigation (*see* Dkt. # 87 at 33 n.13),

4   Bolding filed a motion to reopen with amended schedules. The bankruptcy proceeding remains

5   open, and that court will have the opportunity to determine what to do with any money Bolding

6   obtains from this litigation. In these circumstances the Court finds that the initial error was

7   inadvertent, the debtor has not gained an unfair advantage, there is no chance that the bankruptcy

8   court will be deceived, and there is no threat to judicial integrity. *See Ah Quin v. County of*

9   *Kauai Dep't of Transp.*, 733 F.3d 267, 273-76 (9th Cir. 2017). Judicial estoppel does not apply.

10  **D. Good Faith/Lack of Intent**

11          Banner argues that it acted in good faith with regards to the wages paid its MLOs, and

12  that the Court should therefore exercise its discretion to award no liquidated damages under the

13  FLSA, 29 U.S.C. § 260. Similarly, defendant argues that it did not know or intend that MLOs

14  would under-report their hours, precluding an award of double damages under the Washington

15  wage laws, RCW 49.52.070. If the jury were to find that Banner affirmatively discouraged

16  MLOs from reporting all hours worked, it could also find that Banner was attempting to evade

17  its responsibilities under the FLSA and intended to suppress overtime claims. Given the existing

18  record, a determination regarding Banner's subjective good faith or intent cannot be made as a

19  matter of law.

20  **F. Oregon Statutes of Limitation**

21          Oregon has a six-year statute of limitations for claims based on the taking or detaining of

22  wages, Or. Rev. St. § 12.080(4), but a two-year limitations period for "[a]n action for overtime

23  or premium pay or for penalties or liquidated damages for failure to pay overtime or premium

24  pay," Or. Rev. Stat. Ann. § 12.110(3). Neither *res judicata* nor Oregon case law require the

25  application of any other limitations periods. Banner is entitled to a declaration that the Oregon

26  subclass claims are limited to six years for regular wage claims and two years for overtime wage

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    -8-

1   claims.

2

3          For all of the foregoing reasons, Banner's motion for summary judgment (Dkt. # 294) is

4   GRANTED in part and DENIED in part.

5

6          Dated this 13th day of September, 2021.

7                                        Robert S. Lasnik
                                         United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26