1

2

THE HONORABLE ROBERT S. LASNIK

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8 AT SEATTLE

9 KELLY BOLDING, MICHAEL MANFREDI,
and SARAH WARD, individually and on behalf
10 of a class of all others similarly situated,

No. 2:17-cv-00601-RSL

11 Plaintiffs,

UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

12 v.

13 BANNER BANK, a Washington Corporation,

NOTE ON MOTION CALENDAR:
September 25, 2023

14 Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page i

**The Blankenship Law Firm, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## I.  RELIEF REQUESTED

Plaintiffs Kelly Bolding, Michael Manfredi, and Sarah Ward ("Plaintiffs" or "Class Representatives") and Banner Bank ("Defendant") (collectively, "Parties") respectively move this Court for preliminary approval of the proposed class action settlement ("Agreement") reached between the Parties. Under the proposed settlement, Defendant will make available a Settlement Fund of up to $15,000,000.00 for the following purposes: cash payments to current and former mortgage loan officers, real estate commissioned loan officers, and residential lenders ("MLOs," "Settlement Class Members," or "Settlement Class") who worked for Defendant and/or its predecessor-in-interest, AmericanWest Bank ("AWB") within the statute of limitations period for their respective state each was employed; notice and settlement administration Costs; Fee Payment and Litigation Expense Payment to Plaintiffs' counsel ("Class Counsel"); and Class Representatives' Service Awards – all of which are subject to this Court's approval. Defendant, however, has agreed to make available a minimum of $7,500,000.00 for cash payments to Settlement Class Members exclusive of the fees, costs, awards, and expenses listed above. Thus, subject to Court approval, Defendant will make available a minimum of nearly $13,000,000.00 (inclusive of the expenses) and up to $15,000,000.00 to resolve this matter.[1]

The settlement is drafted so that Settlement Class Members can participate free of retaliation. The notice and verification form explicitly advises each Settlement Class Member that any claim verification will not be shared with their managers, by law they cannot suffer

---

[1] As detailed further below, the minimum benefit to be made available to the class is $12,890,000.00, assuming Court approval of the settlement and Class Counsel's request for fees and expenses. It is determined based on adding together $7.5 million minimum made available for cash payments, $5 million for the Class Counsel Fees Payment, approximately $300,000.00 for the Class Counsel Litigation Expense Payment, a total of $60,000.00 for three Class Representative Service Awards, and approximately $30,000.00 in estimated settlement administration costs. Settlement Class Members have the potential to earn the remaining amount in the Settlement Fund (approximately $2.110 million) by timely submitting completed claim verification forms.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 1

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

any adverse consequences or retaliation, this is true even if Banner's written policies indicate they must report overtime. *See Exhibits A & D.*[2]

For the reasons set forth in this memorandum and the supporting documents, the proposed settlement is fair and reasonable and serves the best interests of the Class. It also fully satisfies federal courts' substantial interest in utilizing settlements to encourage fair resolution of class action lawsuits.

Accordingly, the Parties respectfully ask this Court take the following initial steps in the settlement approval process: (1) grant preliminary approval of the settlement, including the cash payments to Settlement Class Members, Fee and Litigation Expense Payments to Class Counsel, and the Service Awards to the Class Representatives; (2) appoint Rust Consulting, Incorporated as the Settlement Administrator; (3) approve the proposed notice plan, the settlement notice form, and claim verification form; and (4) schedule a final fairness hearing and related dates as proposed by the Parties.

## II. STATEMENT OF FACTS

### A. Factual and Procedural Background

Most of the facts underlying this motion have been briefed extensively in other pleadings before this Court. Nevertheless, Plaintiffs offer this factual and procedural summary as context for the Parties' proposed settlement.

#### 1. Settlement Class Members and Defendant

Defendant is a state-chartered commercial bank that offers mortgage loans in offices operating in Washington, Oregon, California, and Idaho. *Blankenship Dec.* ¶ 18. Defendant acquired several other banks since its founding, including its predecessor-in-interest, AWB. *Id.* The Settlement Class Members are current and former MLOs who are or were non-exempt employees of Defendant and/or AWB in Washington, Oregon, and California. *Id.* at ¶ 53. The

---

[2] Any "Exhibit" cited herein are those referenced in and attached to the *Declaration of Scott C. G. Blankenship* (hereinafter "*Blankenship Dec.*").

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 2

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Settlement Class also includes Lisa Garrison, who worked as an MLO for Defendant in Idaho and opted into the Fair Labor Standards Act ("FLSA") collective. *Id.*

MLOs originate construction loans and one-to four-family mortgages, primarily focusing on selling loan products to their clients and expanding their client base. As part of the loan origination process, Settlement Class Members also act as a liaison between the customer, loan processing, and underwriting. They must gather, verify, and exchange substantial information and documents from a loan or mortgage's initial intake through its closing. *Id.* at ¶ 19.

Plaintiffs allege that: (1) MLOs' job duties involve work both inside and outside the office; (2) they must work around the schedules of qualified customers, who are generally gainfully employed with day jobs, and network with realtors and other professionals who may be potential referral sources; (3) to do so, MLOs must remain accessible at all hours on weekdays and weekends or else they risk losing customers to competitors; and (4) MLOs regularly had to work overtime to fulfill these duties. *Id.* at ¶ 20.

Defendant paid MLOs hourly and by commission. The Class has alleged that Defendant actively discouraged MLOs from reporting more than 40 hours of work per week and failed to pay them for all hours worked, including overtime hours and time spent working through meal and rest breaks, despite being non-exempt employees under federal law and the law of their respective states. *Id.* at ¶¶ 20-21.

2.    The Lawsuit

On April 17, 2017, Plaintiffs Bolding and Manfredi filed this lawsuit on behalf of themselves and other Settlement Class Members employed by Defendant as MLOs. *Dkt. 1.* They later amended their complaint, adding Plaintiff Sarah Ward as a Class Representative. *Dkt. 97.* They assert claims under FLSA and Washington, California, and Oregon state law respectively on behalf of themselves and other MLOs who worked in those states. *Id.* For their claims, Class Representatives seek unpaid minimum and overtime wages, double damages

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

where applicable, penalties where applicable, pre-judgment interest, post-judgment interest, injunctive relief, attorneys' fees and costs, and all other relief to the fullest extent allowed by law. *Id.*

This case was successfully certified as both a collective and class action. This Court first certified the FLSA collective action on December 15, 2017. *Dkt. 33*. Later, on October 10, 2018, this Court certified a Federal Rule of Civil Procedure 23 ("Rule 23") class action, permitting Class Representatives to pursue wage claims on behalf of Settlement Class Members based on Washington, California, and Oregon state law. *Dkt. 135*. In its order, this Court acknowledged that the "case falls very close to the line," but ultimately ruled that "answering the key common contention – whether Banner Bank has systems, policies, and practices in place that effectively discourage or prevent MLOs from reporting all the hours they worked – is subject to classwide resolution and will drive the resolution of the litigation." *Id.* at 5-7. The certified claims go back to April 17, 2014 for Washington-based MLOs, April 17, 2013 for California-based MLOs, and April 17, 2011 for Oregon-based MLOs.[3] To date, 33 MLOs have opted into the FLSA collective action, and the certified class action has approximately 253 class members. *Blankenship Dec.* ¶ 26.

This lawsuit has spanned well over six years. It has been adversarial and hard-fought with over 370 docket entries. *Id.* at ¶ 27. A significant portion of them relate to the Parties' extensive motions practice. *Id.* at ¶ 28. This includes Class Counsel having to defend against Defendant's attempts to (1) appeal this Court's order granting class certification, (2) disqualify Class Counsel and a Class Representative, (3) exclude the Class's expert's testimony, and (4) dismiss the claims pursuant to a motion for summary judgement. *See Dkt. 152*; *Dkt. 273*; *Dkt. 309*; and *Dkt. 312*. Class Counsel successfully defended against these attempts, enabling Class Representatives to continue pursuing claims against Defendant on behalf of the entire Class.

---

[3] Some Oregon-based damages only extend to April 17, 2015.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

*See Dkt. 152*; *Dkt. 341*; *Dkt. 353*; and *Dkt. 355*. And they did so while doing everything possible to ensure they had the evidence necessary to prosecute their claims. *Blankenship Dec.* ¶¶ 27-29.

Class Counsel fought vigorously to obtain discovery from Defendant. When Defendant objected to some of Plaintiffs' discovery requests, Class Representatives and Class Counsel successfully moved this Court to compel Defendant to produce the materials requested. *Id.* at ¶ 30*; Dkt. 99*; *Dkt. 137*. And when Class Counsel learned that Defendant failed to preserve evidence related to Class Representatives' claims, they successfully moved this Court to impose sanctions against Defendant. *Blankenship Dec.* ¶ 31; *Dkt. 166*; *Dkt. 209*. With these efforts, Class Counsel was able to obtain and analyze vast amounts of discovery (including over 12,000 gigabytes of data and millions of emails) to support claims for the entire Class. *Blankenship Dec.* ¶¶ 32-33. It has been a hard-fought battle at every step of this lawsuit. *Id.* at ¶¶ 16, 27.

Despite these challenges, this lawsuit has been a catalyst of positive change for Defendant's MLOs. *Id.* at ¶ 34. Prior to the lawsuit, Plaintiffs allege Defendant used timekeeping software that led MLOs to often enter "8 hours" per day, Monday through Friday. *Id.* at ¶ 35. MLOs could not enter start times, stop times, or breaks. *Id.* Plaintiffs allege these boilerplate "8 hour" entries prevented MLOs from accurately reporting time worked. *Id.* Other hourly employees, however, could utilize an electronic "punch" that allowed them to accurately document their time worked. *Id.* But around September 2017, after this lawsuit was filed, Defendant instituted a new timekeeping system that allows MLOs to submit timeslips entries that reflect start times, stop times, and breaks *Id.*

That is not all. MLOs had previously been exempt employees before the law changed. *Id.* at ¶ 36. As a result, some MLOs were confused about whether they should be tracking their hours and overtime. *Id.* After the filing of the lawsuit, on August 31, 2017, Senior VP Aaron Miller told them that they needed to do so in an email and a later conference call. *Id.* He

1    instructed employees to track their time on a daily basis and that they were eligible for

2    overtime. *Id.* Additionally, there were changes to employment policies describing the meal and

3    rest breaks in the respective states. *Id.* Plaintiffs believe the lawsuit was a catalyst for

4    Defendant implementing these changes.  *Id.*

5        Altogether, in the face of tremendous risk, throughout the litigation, Class Counsel and

6    the Class Representatives worked incredibly hard on behalf of the Class to ensure they

7    obtained a fair and reasonable resolution for all eligible MLOs. *Id.* at ¶ 37. Indeed, in the order

8    denying Defendant's motion to disqualify Class Counsel from representing the Class, this

9    Court acknowledged that "Plaintiffs and their counsel have amassed a wealth of knowledge

10   regarding defendant's practices and *have obtained significant rulings in their favor.*" *Dkt. 341*

11   at 2 (emphasis added).

12                    3.    Settlement Negotiations

13       Following class certification, several hard-fought battles for discovery, and multiple

14   depositions; the Parties began discussing possible resolutions. *Blankenship Dec.* ¶ 38. It took

15   two separate mediations with two of the most well-regarded and respected mediators in the

16   United States who are skilled at resolving class actions for the Parties to agree on the proposed

17   settlement, which is described in further detail below. *Id.* at ¶ 39. The Parties held the first

18   mediation on October 4, 2019, and the second on December 13, 2022. *Id.* at ¶¶ 40, 47.

19       For the first mediation, the Parties selected Mark Rudy, located in San Francisco,

20   California. *Id.* at ¶ 40. The Class Representatives all participated in the mediation, either in

21   person or remotely, and worked especially hard to ensure the Class received fair and accurate

22   compensation. *Id.* All three Class Representatives were steadfast in their dedication to the

23   interests of fellow Settlement Class Members. *Id.* at ¶ 41. They were adamant that any

24   settlement must be a fair result for the Class as a whole. *Id.* Despite the Parties' best efforts,

25   however, the first mediation was unsuccessful – the Parties were unable to reach a resolution

26   despite several months of follow-up negotiations. *Id.* at ¶ 42.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Afterwards, the Parties sought even more discovery, conducting eight additional depositions of key witnesses, including multiple 30(b)(6) depositions. *Id.* at ¶ 43. The Parties also filed several substantive motions. *Id.* at ¶¶ 44-46. For example, on November 25, 2020, the Class Representatives filed a motion to bifurcate the trial into separate liability and damages phases, which this Court granted in part, requiring the parties to determine the individual damages of "all plaintiffs, class members, and collective members who testify during [the liability] phase." *Dkt. 347.* Defendant also filed a motion for summary judgment, which this Court largely denied on September 13, 2021. *Dkt. 353.*

Facing trial with no other pretrial motions to be filed, the Parties agreed to undergo the second mediation, this time with David Rotman. *Blankenship Dec.* ¶ 47. Much like the first mediation, the Class Representatives and Class Counsel were dedicated to the interests of fellow Settlement Class Members, making every attempt to ensure that the Class received fair and just compensation. *Id.* at ¶ 48. After much back and forth, with the assistance of Mr. Rotman, the Parties finally agreed to a settlement amount after a full day of mediation. *Id.* For the next two and half months, the Parties negotiated several key terms for the settlement agreement. *Id.*

After agreeing to key terms in December 2022, the Parties and their Counsel spent many months making every effort to finalize the settlement agreement. *Id.* at ¶ 49. The Parties asked this Court to stay the proceedings on several occasions to give them enough time to finalize an agreement that would fairly resolve this case while preserving the Parties' rights. *Id.* The extensions granted by this Court, along with the mediation and subsequent negotiations, culminated into the Agreement between Class Representatives and Defendant. *Id.*

At all times, the negotiations were adversarial, non-collusive, and at arm's length. *Id.* at ¶ 16. The Parties diligently reviewed all terms, evaluated all risks, and overturned every stone to ensure the Agreement will resolve this case fairly for all Parties and Settlement Class Members. *Id.* at ¶¶ 17, 50.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

**B.    The Proposed Settlement**

The terms of the Parties' proposed settlement are contained within the Agreement. *See Exhibit 1.* For purposes of preliminary approval, the following summarizes key provisions within the Agreement.

1.    The Settlement Class

Consistent with this Court's orders certifying the FLSA collective action and the Rule 23 class action, the Agreement defines Settlement Class Members eligible for the proposed settlement as follows:

> All current and former MLOs who were employed by Defendant or its predecessor, American West Bank, in Washington State at any time from April 17, 2014, to the Settlement Date.
>
> All current and former MLOs who were employed by Defendant or its predecessor, American West Bank, in Oregon at any time from April 17, 2011, to the Settlement Date.
>
> All current and former MLOs who were employed by Defendant or its predecessor, American West Bank, in California at any time from April 17, 2013, to the Settlement Date.

*Id.* at 4. The "Settlement Date" is the date this Court enters an order preliminarily approving the settlement. *Id.*

Ms. Garrison is also a Settlement Class Member, and her Settlement Class Period is April 17, 2014, to her last date of employment with Defendant. But anyone who validly opts out of this proposed settlement or who previously opted out of the Class after receipt of the original class notice is not subject to the settlement's terms or benefits. *Id.*

2.    Settlement Relief

Pursuant to the Agreement, and with this Court's approval, Defendant will create a Settlement Fund by making available up to $15,000,000.00 as consideration for the release of claims described further below. *Id.* The amount that Defendant will make available for cash payments to Settlement Class Members, called the "Net Settlement Fund," is the Settlement

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 8

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Fund minus settlement administration costs, Counsel Fees Payment, Class Counsel Litigation Expense Payment, Class Representative Service Awards, and reductions for Settlement Class Members who opt out. *Id.* at 3. Thus, subject to Court approval, Defendant will make available a minimum of $12,890,000.00 without any claim verification forms and up to $15,000,000.00 with properly submitted of claim verification forms to resolve this matter. *Blankenship Dec.* ¶¶ 50-51.

The cash payments will be bifurcated between automatic payments and payments conditioned upon submission of a claim verification form. *Exhibit 1* at 5-7. Settlement Class Members who do not opt-out will automatically receive cash payments based on their net share of the Net Settlement Fund for time worked on or before October 31, 2017. *Id.* at 7. If a Settlement Class Member wishes to receive a cash payment for any uncompensated time worked after that date, they must submit a claim form verifying that they regularly worked unreported, uncompensated overtime. *Id.* But any Settlement Class Member who opted into the FLSA collective action will receive automatic payments based on their net share of the Net Settlement Fund for time worked on, before, or after October 31, 2017, without needing to submit a claim verification form. *Id.*; *Blankenship Dec.* ¶ 54.

Specific details of the proposed settlement relief are described further below.

    *a.*  *Net Share Calculations*

Net share is determined by allocating points based on the number of pay periods each Settlement Class Member had within the qualifying time period and multiplying that by the average compensation (excluding any paid overtime) he or she received for those pay periods. *Exhibit 1* at 5-6. The Agreement provides the specific equation for the point allocation as follows:

> multiply[] such Settlement Class Member's average pay period compensation, excluding any paid overtime, for the periods during which the individual held the MLO position during their respective Settlement Class Periods ("Relevant Payroll Periods") by . . . such individual's total number of Relevant Payroll Periods. This number will be the Settlement Class Member's "Base Points."

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

*Id.* at 6.

From there, the Agreement uses the following equation to adjust each Settlement Class Member's base points to account for prejudgment interest:

Establish the mid-point between the Settlement Class Member's earliest payroll date during the Relevant Payroll Periods and the last date of payroll during the Relevant Payroll Periods. The midpoint of these two dates will be the "Average Effective Date of Payroll;"

Calculate the number of years (including fractions of a year) between the Average Effective Date of Payroll and the Settlement Date. This is the "Effective Prejudgment Interest Period;"

Calculate the "Interest Adjustment Factor" by multiplying the Effective Prejudgment Interest Period by the appropriate prejudgment interest rate for the Settlement Class Member's state. This results in the "Interest Adjustment Factor;" and

Multiply half of the Base Points (previously calculated under Paragraph 3.01(a) of the Settlement Agreement) by the Interest Adjustment Factor and add that product to the Base Points. This results in the "Individual Points" allocation for the Settlement Class Member.

*Id.* All of this has been vetted with the parties' respective experts. *Blankenship Dec.* ¶¶ 56-57.

After this adjustment, Settlement Class Members' individual points are added together to establish the "Total Points" available. *Exhibit 1* at 6. Each Settlement Class Member's net share of the Settlement Fund is then "calculated by dividing the sum of the Settlement Class Member's Individual Points by Total Points." *Id.* Notably, each Class Member's net share "will be determined inclusive of any Settlement Class Members who opt out." *Id.* But the cash payments available under Settlement Fund will only "be reduced by the dollar equivalent of the sum of half of the Net Shares of any Settlement Class Members who opt out," effectively increasing cash payments for Settlement Class Members who do not opt-out in the event some Settlement Class Members choose not to participate in this settlement. *Id.*; *Blankenship Dec.* ¶ 55.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Page 10

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

b.    *Payments to Settlement Class Members*

**FLSA Settlement Class Members**. Without the need to submit a claim verification form, all Settlement Class Members who opted into the FLSA class will receive payment in the amount of their net share of the Net Settlement Fund. *Exhibit 1* at 7.

**Non-FLSA Settlement Class Members**. The net share of each Settlement Class Member who did not opt into the FLSA class ("Non-FLSA Settlement Class Members") will be bifurcated based on the number of such Non-FLSA Settlement Class Member's relevant payroll periods ending on or before October 31, 2017 ("Pre-Net Share") and the number of their Relevant Payroll Periods ending after this date ("Post-Net Share"). *Id.* at 6-7.

Without the need to submit a verification form, all Non-FLSA Settlement Class Members will receive an automatic payment in the amount of their Pre-Net Share of the Net Settlement Fund. *Id.* at 7.

To receive any Post-Net Share of the Net Settlement Fund, Non-FLSA Settlement Class Members must timely submit a completed claim verification form providing their name, address, telephone number, and email address, and including a signed affirmation of having a good faith belief that they regularly worked unreported, uncompensated overtime after October 31, 2017. *Exhibit 1* at 7, 11; *Exhibit D*. Class Counsel will be available per the notice to field questions and assist. *Exhibit A*; *Blankenship Dec.* ¶ 66.

c.    *Class Representative Service Awards*

Class Representatives have spent over six years pursuing this case on behalf of the class. *Blankenship Dec.* ¶ 59. They have assisted extensively throughout litigation by providing vital information regarding their claims. *Id.* They dedicated a significant amount of personal time and effort to work in the best interest of their fellow Settlement Class Members. *Id.* at ¶¶ 59-60. Indeed, Class Representatives worked tirelessly to assist Class Counsel to prosecute this lawsuit. *Id.* And they did it throughout a pandemic during a time filled with great uncertainty. *Id.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Page 11

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Most notably, they lent their names to a very public case in a small industry. *Id.* at ¶ 61. This had the potential to impact their reputations and careers. They took great risk for this important class action. *Id.*

If approved by the Court, Class Representatives will each receive a service award of up to $20,000. *Exhibit 1* at 7-8. These awards compensate them for their time and effort serving as Class Representatives and the substantial risks and sacrifices they undertook in prosecuting this class action for the benefit of the Class. *Blankenship Dec.* ¶ 59-63. They took significant risks moving forward with this litigation, sacrificing time and reputation, but did so to correct what they believed are unlawful actions to recover damages for the Settlement Class Members. *Id.* at 61.

### d.    Class Counsel Fees and Litigation Expense Payment

The Agreement provides that Class Counsel will move the Court to approve awards for Fee and Litigation Expense payments. *Exhibit 1* at 7-8. Class Counsel will request a Fee Payment of up to one-third of the Settlement Fund. *Id.*; *Blankenship Dec.* ¶ 68. These fees compensate Class Counsel for this exceptional result (both in terms of cash payments and benefits conferred beyond cash payments), the six plus years of hard work that made it happen, and the substantial risks they faced by undertaking this lawsuit and spending hundreds of thousands in litigation expenses fronted on behalf of the class. *Blankenship Dec.* ¶¶ 6-9, 16-17, 64-66.

Class Counsel forwent many other opportunities to zealously litigate this case, especially because of the considerable time spent litigating multiple motions and defending against Defendant's significant efforts to extinguish their claims. *Id.* at ¶ 66. These fees also compensate Class Counsel for the substantial work that must be done to successfully resolve this case through the settlement administration process. *Id.* at ¶ 67. Class Counsel intends on actively assisting settlement class members as needed through this process. *Id.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 12

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Additionally, Class Counsel fronted substantial litigation expenses to zealously prosecute this case. *Id.* at ¶ 65. Despite the risk they faced, Class Counsel fronted these expenses for the benefit of the entire Class. By doing so, they minimized the risk of litigation for Settlement Class Members. *Id.* Thus, in addition to the fee request, Class Counsel will move this Court to award a Litigation Expense Payment, which will reimburse them for approximately $300,000[4] in out-of-pocket costs that they incurred prosecuting this class action to date. *Id.* at ¶ 68; *Exhibit 1* at 7-8.

### e.    Administration Costs

Class Counsel has retained a settlement administrator, Rust Consulting, Inc. ("Rust") to administer the settlement and process claims after soliciting bids from two other settlement administrator companies and with the input of Defense Counsel. *Blankenship Dec.* ¶ 69. Rust has provided an estimate of $30,000.00, which the Parties agree appears reasonable given the scope of the work and Rust's considerable experience and expertise in class action settlement administration. *Id.* at ¶¶ 69-70. Rust's duties will include preparing and mailing Notices (including notice to appropriate state and federal officials under the Class Action Fairness Act), establishing and maintaining a website for this class action settlement, fielding questions from Settlement Class Members regarding the settlement, processing claim verification forms and exclusion requests, issuing checks with required tax withholdings, and providing W-2 and 1099 forms to all Settlement Class Members who receive payment under the Agreement. *Id.* at ¶ 71.

### 3.    Scope of the Release

In exchange for the benefits allowed under the Agreement, Settlement Class Members (*i.e.*, Settlement Class Members who did not previously opt out or who do not timely submit

---

[4] In the Motion to Approve Fee And Litigation Expense Payments to Class Counsel and the Service Awards to the Class Representatives, Class Counsel will provide this Court with the exact amount of litigation expenses fronted as of the date of submission of that motion. Any additional expenses incurred afterwards will be submitted in the Motion for Final Approval.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 13

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

valid exclusion forms) will release and covenant not to sue for any and all claims that exist or might exist against Defendant or AWB "regarding compensation related to or arising out of claims for unpaid wages, overtime, meal periods, rest breaks, final pay, wage statements/records, including all associated liquidated, double, treble, or other exemplary damages, and penalties under federal, state, or other law." *Blankenship Dec.* ¶ 72; *Exhibit 1* at 12-13.

Moreover, Class Representatives will release and covenant not to sue for any and all claims that exist or might exist against Defendant or AWB "arising out of any conduct or omissions occurring as of [this Court's] Final Approval [of this proposed class action settlement] that might be attributable to Defendant or [AWB]." *Blankenship Dec.* ¶ 73; *Exhibit 1* at 13-14.

No Settlement Class Member, however, waives any claim based on conduct occurring after Final Approval, any claim arising under this Agreement, or any claim that he or she cannot waive under law. *Blankenship Dec.* ¶ 74; *Exhibit 1* at 12-14.

### 4. Settlement Notice, Exclusion Requests, and Objections

In conjunction with preliminary approval, the Parties respectfully ask this Court to approve the proposed Notice of Proposed Settlement of Class Action ("Notice") attached as *Exhibit A* to all Settlement Class Members. *Blankenship Dec.* ¶ 11. They will have 45 days from the date of mailing of the Notice to request exclusion from the Settlement, submit an objection to the Settlement, or return a completed claim verification form for Post-Net Share cash payments; all of which must be in accordance with the terms of the Agreement, as approved by the Court. *Exhibit 1* at 3, 9; *Exhibit A* at 4-7.

The Notice that the Settlement Administrator will mail to Settlement Class Members has been written in plain English, summarizes the settlement and clearly sets forth the deadlines to request exclusion, object to the settlement, or submit a completed claim verification form. *Blankenship Dec.* ¶ 75. The Notice also includes the amounts sought for the

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 14

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Class Counsel Fees, Class Counsel Litigation Expense Reimbursement, Class Representatives Service Awards, and the estimated Settlement Administrative Expenses. *Exhibit A* at 3-4. It provides Settlement Class Members with an explanation of the formula that will be used to calculate their cash award, if they do not opt out. *Id.* at 1-3. The Notice also directs Settlement Class Members to contact Class Counsel for questions and refers to the Settlement Website for further information. *Exhibit A* at 4-5; 8. The Settlement Website will provide additional information and copies of the Settlement Agreement, the Settlement Notice, this Court's Preliminary Approval Order, the complaint, the to-be-filed motion for an award of Class Counsel Fees Payment, Litigation Expense Payment, and Class Representatives' Service Awards, and other relevant pleadings. *Blankenship Dec.* ¶ 76; *Exhibit 1* at 9; *Exhibit A* at 8.

### III. EVIDENCE RELIED UPON

The Parties rely on the declaration of Scott C. G. Blankenship, the exhibits attached thereto, and all pleadings and papers referenced herein.

### IV. AUTHORITY AND ARGUMENT

Preliminary approval of the proposed settlement contained with the Agreement is appropriate because the settlement provides substantial relief to Settlement Class Members, gives Defendant closure, fosters judicial efficiency, and is fair, adequate, and reasonable.

### A.    Class Action Settlement Approval Process

The Ninth Circuit has a "strong judicial policy" favoring class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. updated 2015) (citing cases). This is particularly true in class actions and other complex matters wherein the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit class members could hope to obtain. *See Class Plaintiffs*, 955 F.2d at 1276 (acknowledging a "strong judicial policy that favors settlements, particularly where complex class action

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 15

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

litigation is concerned"). Here, the proposed settlement is the best, most efficient vehicle for Settlement Class Members to receive relief to which they claim they are entitled.

Under Rule 23(e), class actions may only be settled with court approval, which is a two-step process. *Hunichen v. Atonomi LLC, C19-0615-RAJ-SKV, 2021 WL 5854964*, at *4 (W.D. Wash. Nov. 12, 2021), *report and recommendation adopted*, 19-0615-RAJ-SKV, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022). First, the court must preliminarily approve the proposed settlement. *Id.* The purpose of preliminary approval is to determine whether the proposed settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Hunichen*, 2021 WL 5854964 at *4. In other words, by preliminarily approving the settlement, the court authorizes the parties to notify class members of the proposed settlement. Fed. R. Civ. P. 23(e)(1). This Court has broad discretion to approve or reject a proposed settlement. *In re Online DVD-Rental Antitrust Litig.* ("*Online DVD-Rental*"), 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited"). If preliminary approval is granted, the court must set a final fairness hearing wherein it will determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). The final fairness hearing is the second and final step to the approval process. *Id.*

The Parties request that this Court take the first step by granting preliminary approval of the proposed settlement. Granting approval will give Settlement Class Members direct notice of the terms of the proposed settlement, provide them with a claim verification form[5] to seek cash payments for any uncompensated work performed after October 31, 2017, and notify them of the date and time for the final settlement approval hearing. It will also provide notice

---

[5] As explained above, only Non-FLSA Settlement Class Members need to submit a claim verification form if they wish to seek payment for uncompensated overtime after October 31, 2017, but they do not need to submit any forms to receive payment for uncompensated work performed on or before that date.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

to Settlement Class Members who wish to exclude themselves from the proposed settlement and provide a mechanism for any Settlement Class Member to object to the proposed settlement if he or she wishes to do so. *Blankenship Dec.* ¶ 75; *Exhibit A.*

**B.    The Settlement Meets the Criteria for Preliminary Approval**

To obtain preliminary approval, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). But a full fairness analysis is neither possible nor necessary before the final fairness hearing. *Hunichen*, 2021 WL 5854964 at *4. Instead, "preliminary approval is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal citation and quotations omitted).

While full and complete consideration of the requirements for final approval is not required at this stage, the proposed settlement here satisfies these requirements. Courts may grant final approval for a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Factors to consider when making this determination include, but are not limited to, the nature of the negotiations leading to the settlement; the experience and views of counsel; the amount offered in settlement; the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed, and the stage of the proceedings; the reasonableness of the attorney's fees and its relationship to the settlement; and the nature of the release for Settlement Class Members who are not named plaintiffs. *Staton v. Boeing Co.*, 327 F.3d 938, 959-961 (9th Cir. 2003); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (finding attorney's fees reasonable as part of final approval for class action settlement).

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Page 17

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Applying these factors to the proposed settlement here demonstrates that final approval would be appropriate. This proves the settlement is within the "range of possible approval" and should be preliminarily approved.

    1.    <u>The Proposed Settlement Is the Product of Serious, Informed, and Arm's-Length Negotiations by Capable and Experienced Counsel After Extensive Discovery, Completing Pretrial Motions, And Preparing For Trial.</u>

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (finding no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information). The trial court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* (internal citation and quotations omitted).

"When experienced and skilled class counsel support a settlement, their views are given great weight." *Pickett*, 145 Wn.2d at 200. Indeed, a "presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

The settlement here is the result of intensive, arm's-length negotiations between skilled and experienced attorneys who are highly familiar with class action litigation and with the legal and factual issues of this case. *Blankenship Dec.* ¶¶ 2-17. In negotiating this settlement, Class Counsel had the benefit of years of experience working on wage-and-hour class actions combined with over six years of working with the specific facts and law of this case. *Id.* Furthermore, the settlement is the result of substantial efforts to obtain and analyze data sufficient to evaluate the claims at issue in this case. *Id.* at ¶¶ 27-33. The docket reflects the massive efforts undertaken on behalf of getting this Class Action to this point. *Id.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 18

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Class Counsel spent a considerable amount of time engaging in discovery, speaking with Class Representatives and many Settlement Class Members, analyzing documents and data (including millions of emails), and researching and litigating several complex legal issues for this case. *Id.* After many years of hard work, including a prior mediation, Class Counsel were well prepared to negotiate and mediate this case again. *Id.* at ¶¶ 42-47.

The Parties had completed extensive discovery and litigated several substantive motions. *Id.* They had no other pretrial motions to file prior to trial. *Id.* The last mediation was one of the last opportunities the Parties had to reach a resolution short of trial. *Id.*

Ultimately, the last mediation was instrumental in bringing the Parties closer to a final resolution. *Id.* at ¶¶ 47-55. Following the mediation, the Parties spent several months in continued, hard-fought negotiations regarding the terms of the proposed settlement. *Id.* Eventually, the parties reached an agreement that will provide Settlement Class Members with substantial recovery while simultaneously limiting the risks associated with continued litigation. *Id.* Class Counsel and the Class Representatives support the settlement as fair, reasonable, adequate, and in the best interests of the Class. *Id.* at ¶ 78.

2.   The Proposed Settlement is Adequate and Reasonable Considering the Strength of Class Representatives' Case and the Risks of Further Litigation.

For the benefit of the Class, Defendant agreed to make available for cash payments to Settlement Class Members at least $7,500,000.00 exclusive of any costs whatsoever, which is a substantial sum. *Blankenship Dec.* ¶¶ 51-52; *Exhibit 1* at 4. By way of example, if this sum were paid *pro rata* to the 253 Settlement Class Members (without any opt outs), each would receive $29,644.27. While Settlement Class Members will actually receive payments based on their net shares, this example demonstrates the significant recovery Settlement Class Members are eligible to earn. While smaller individual recoveries in class actions that may result in a few dollars per class member are important, the proposed settlement here will create a significant economic opportunity to Settlement Class Members.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 19

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

This minimum payment funding obligation is also exclusive of notice and settlement administration costs, Class Representative Service Awards, the Class Counsel Fees, and the Class Counsel Litigation Expense Payment, as approved by the Court. *Blankenship Dec.* ¶¶ 51-52; *Exhibit 1* at 4. In total, Defendant has agreed to make available for payments a minimum of close to $13,000,000.00 to resolve this matter.[6] *Blankenship Dec.* ¶ 51; *Exhibit 1* at 4, 7-8. And if Settlement Class Members timely submit completed verification forms for their Post-Net Shares, which is expected, Settlement Class Members stand to earn more than the minimum payment. *Blankenship Dec.* ¶ 52; *Exhibit 1* at 4, 7-8.

The cash payments also adequately compensate Settlement Class Members for unpaid overtime. Based on calculations from Plaintiffs' expert, if the unlikely scenario occurs where Settlement Class Members only receive the minimum $7,500,000.00 to be made available for cash payments to Settlement Class Members, each Settlement Class Member should still receive the equivalent of somewhere between 5 to 10 hours of uncompensated overtime per week of his or her respective employment to the extent Defendant did not already pay it. *Blankenship Dec.* ¶ 57. Amounts Defendant did pay in overtime will be deducted from the pro rata share calculation. *Exhibit 1* at 6. For many, this will amount to tens of thousands of dollars in compensation and more. *Blankenship Dec.* ¶ 58. The interest component of the formula approximates prejudgment interest for participating and qualifying class members. *Id.*

Even without considering the uncertainties of litigation, this is an excellent settlement for the Class. The evidence Class Counsel obtained indicates that this is within the range of Plaintiffs' estimated overtime hours that class members worked uncompensated. *Id.* at ¶ 57. Defendant improved their practices and procedures after October 31, 2017, which creates additional risk of proving damages at trial. *Id.* at ¶ 34-36.

---

[6] *See supra* note 1.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 20

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

The proposed settlement, however, mitigates this risk by providing Settlement Class Members with cash payments within the range of uncompensated overtime they could potentially recover at trial. *Blankenship Dec.* ¶ 80. It also provides these payments without forcing them to endure further litigation, which will exponentially increase litigation fees and costs, delay, and add even more uncertainty in the likely event Defendant appeals after trial. *Id.*

The release of claims exchanged for these cash payments is also reasonable and not overbroad. If the proposed settlement is approved, Settlement Class Members only release Defendant from claims related to this lawsuit up until Final Approval. Only Class Representatives who asserted individual claims release Defendant from a broader range of claims. But no Settlement Class Member subject to the proposed settlement waives any claim based on conduct occurring after Final Approval, any claim arising under this Agreement, or any claim that he or she cannot waive under law. *Blankenship Dec.* ¶¶ 72-74; *Exhibit 1* at 12-14.

These factors demonstrate the proposed settlement is more than adequate and reasonable – the proposed settlement is an excellent result for Settlement Class Members.

      3.    <u>The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other</u>

The formulas in the proposed settlement fairly and adequately calculate cash payments for each Settlement Class Member. After all, Settlement Class Members will receive cash payments commensurate with their average compensation and the number of eligible pay periods they worked for Defendant, which is then adjusted for prejudgment interest. *Blankenship Dec.* ¶¶ 54-58; *Exhibit 1* at 6-7. This is an efficient cost-effective way to compensate them for unpaid overtime. *Blankenship Dec.* ¶¶ 54-58; *Exhibit 1* at 6-7. If a Settlement Class Member worked several hours every week of their employment without compensation, Defendant needs to use the number of pay periods each Settlement Class Member worked and his or her average pay to determine how much it should pay them for that

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Page 21

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

time. *Blankenship Dec.* ¶¶ 54-58; *Exhibit 1* at 6-7. It also considers productivity and commissions earned. *Blankenship Dec.* ¶¶ 54-58; *Exhibit 1* at 6-7. Additionally, Settlement Class Members will receive cash payments proportional to their share of the Net Settlement Fund, which Plaintiffs estimate should amount to approximately 5 to 10 hours of overtime pay for each eligible week of Settlement Class Members' employment with Defendant. *Blankenship Dec.* ¶¶ 54-58.

Moreover, no Settlement Class Member subject to the proposed settlement is excluded from relief or consigned to inferior benefits. Many Settlement Class Members will automatically receive cash payments in substantial amounts. Only Settlement Class Members who did not opt into the FLSA collective action and wish to receive cash payments for uncompensated overtime they regularly worked after October 31, 2017 need to submit verification claim forms, which is a fair compromise between the Parties since this is a date after Defendant instituted the new timekeeping system and its Senior Vice President instructed MLOs to "keep track o[f] their time on a daily basis." *Id.* at ¶ 81.

Considering the strength of the claims, this methodology treats each Settlement Class Member fairly and equally, and provides substantial relief for all of them based on available records.

> 4.     The Class Representatives' Service Awards Requests are Reasonable

Subject to Court approval at the final hearing, the Agreement provides that the Class Representatives may move for a reasonable incentive award not to exceed $20,000 each. *Exhibit 1* at 7-8.  "Incentive" or "service" awards "are intended to compensate class representatives for work undertaken on behalf of a class." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Such awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the Class Representatives. These awards, which serve as a premium in addition to individual recoveries from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 22

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

representative lawsuits. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). An incentive is also appropriate to "compensate class representatives for work done on behalf of the class, to make up for financial or *reputational risk* undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958 (emphasis added).

Here, the proposed service awards are in recognition of the Class Representatives substantial service to and efforts on behalf of the Class. Class Representatives assisted Class Counsel in every phase of the litigation. *Blankenship Dec.* ¶¶ 59-62. They helped investigate the claims, locate witnesses, and develop the factual background of the lawsuit for the initial claims. *Id.* They were committed to the Class throughout six years of uncertainty throughout this lawsuit, which has required their assistance for 17 depositions, several dispositive motions, and two mediations. *Id.* They notably put their reputations on the line by challenging their industry. *Id.*

Class Representatives participated in both full-day mediations and remained committed to a fair result for the entire class throughout the months of negotiation that followed each mediation. Unlike most unnamed Settlement Class Members, who will enjoy the benefits of Class Representatives' efforts without taking any personal action, Class Representatives initiated this litigation and have remained active and critical participants in it for what will be over six years. Their unwavering commitment to this case and the rest of the Class deserves to be recognized. *Id.*

Indeed, the Class Representatives' support of the settlement is independent of any service award and thus further evidence of their good faith in the process. *Id.* It is not conditioned on the Court awarding any particular amount or any award at all. *Id.* Moreover, the adequacy of the Class Representatives' efforts to diligently seek a fair resolution for the Class was not influenced by the proposed service awards, since they are awarded at the discretion of the Court. *Id.* A Service Award of $20,000 for each Class Representative is well within the

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 23

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

range of reasonable awards in other class action settlements.[7] *See, e.g., Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329–30 & n.9 (W.D. Wash. 2009) (approving $7,500 service awards and collecting decisions approving awards ranging from $5,000 to $40,000).

### 5.    Class Counsel's Future Request for Attorneys' Fees Is Reasonable

Class Counsel will separately move this Court for award of up to one-third of the Settlement Fund, which is equal to $5 million of the $15 million Defendant agreed to make available as the maximum amount to settle this case. *Exhibit 1* at 7-8. The proposed settlement is not dependent upon this Court granting Class Counsel's motion for fees and costs. *Id.*; *Blankenship Dec.* ¶¶ 64-68.

The percentage-of-recovery approach is frequently used in calculating fees in common fund cases. *Vizcaino*, 290 F.3d at 1047; *Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wn.2d 52, 72 (1993). When counsel's efforts result in substantial settlement for plaintiffs and class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund…is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton*, 327 F.3d at 967 ("there is no preclusion on recovery of common fund fees where a fee-shifting statute applies").

Public policy supports this approach. Indeed, "[w]hen attorney fees are available to prevailing class action plaintiffs, plaintiffs will have less difficulty obtaining counsel and greater access to the judicial system. Little good comes from a system where justice is available only to those who can afford its price." *Bowles*, 121 Wn.2d at 71. In other words, "[c]ommon fund fees are essentially an equitable substitute for private fee agreements where a class benefits from an attorney's work[.]" *Staton*, 327 F.3d at 968.

---

[7] In 2022, Class Counsel successfully moved U.S. Magistrate Judge Louise A. LaMothe to approve service awards of $20,000 for each class representative in *Romney et al. v. Franciscan Medical Group et al.*, a class action litigated within the American Arbitration Association under Case Number 01-18-0001-4763. *Blankenship Dec.* ¶ 63.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 24

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Courts review the circumstances of the case to determine whether class counsel's request for a particular percentage of the common fund requested is reasonable. *Vizcaino*, 290 F.3d at 1048. Relevant circumstances include, but are not limited to, the results achieved by class counsel, whether class counsel generated benefits for the class beyond the settlement fund, the risk and complexity class counsel faced when litigating the case, and the burden the case imposed on class counsel. *Id.* at 1048-50.

Here, while a determination regarding attorney's fees will not be made until Class Counsel moves this Court for Fee and Litigation Expense payments, Class Counsel's fee request is preliminarily reasonable and fair considering the exceptional results achieved for the Class. *Blankenship Dec.* ¶ 68. As described above, Class Counsel spent over six years zealously advocating for Settlement Class Members to reach this Agreement, which is an exceptional result for the Class. *Id.* at ¶¶ 6-9, 78-79. And this Court acknowledged "Plaintiffs and their counsel have amassed a wealth of knowledge regarding defendant's practices and *have obtained significant rulings in their favor*." *Dkt. 341* at 2 (emphasis added).

A Class of 253 MLOs are collectively guaranteed millions of dollars in cash payments. *Blankenship Dec.* ¶¶ 26, 51. Indeed, if only the minimum $7.5 million to be made available for payments were paid *pro rata* to the 253 Settlement Class Members (without any opt outs) and no claim verification forms are filed (a virtual impossibility), Plaintiffs estimate that each Settlement Class Member would still receive $29,644.27. *Id.* at ¶ 79. While Settlement Class Members will actually receive payments based on their net shares, this example demonstrates the significant recovery that Plaintiffs estimate Settlement Class Members are eligible to earn at a minimum without filing any claims. *Id.* And Settlement Class Members only stand to earn more if they timely complete claim verification forms for their Post-Net Shares. *Id.*

Additionally, Class Counsel generated benefits for Settlement Class Members beyond the proposed settlement. *Id.* at ¶¶ 34-36. Class Counsel's efforts in spearheading this case was a catalyst for positive changes for MLOs as set forth herein. *Id.*

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 25

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Class Counsel obtained these exceptional results despite facing non-stop risk and uncertainty. *Id.* at ¶¶ 37, 64-66, 79. Class Counsel did so in a high-risk case where this Court said it "falls very close to the line." *Dkt. 135* at 5. And yet, with Class Counsel's unrelenting efforts, this Court certified the collective and class actions for MLOs spanning multiple states. *Blankenship Dec.* ¶¶ 23-33, 37, 44. Class Counsel then continued to push forward all the other uncertainties associated with trial and the inevitable appeal that would follow a jury verdict in favor of the Class. *Id.* This includes the burdens and delays associated with potentially needing to prove individual damages. *Id.*

The burden Class Counsel faced cannot be overstated. Class Counsel spent hour after hour, day after day, week after week investigating and litigating this case when necessary for over six years. *Id.* at ¶ 16. The time Class Counsel's spent interviewing witnesses, analyzing data, and filing and arguing against motion after motion was all encompassing. *Id.* at ¶ 27. It took time away from other, less risky or complicated opportunities for the firm. *Id.* at ¶ 66. And Class Counsel did this all on a contingency fee basis, fronting what will be more than $300,000.00 in litigation expenses for the Class along the way. *Id.* at ¶ 65.

Thus, while Class Counsel will separately move this Court for an award of fees from the Settlement Fund, Class Counsel's anticipated motion for a Fees Payment of one-third of the Settlement Fund is fair and reasonable under the circumstances. *Id.* at ¶ 68. A lodestar cross-check with current rates will demonstrate that this payment will be less than two times the fees Class Counsel have already generated litigating this case. *Id.* And "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051 (citation and internal quotation marks omitted).

6. <u>The Litigation Expense Payment and the Settlement Administration Expenses are Reasonable</u>

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 26

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

(citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)). The litigation expenses Class Counsel have incurred in this case include the following: (1) filing and service fees; (2) copying and mailing expenses; (3) legal research expenses; (4) mediation expenses; (5) depositions and travel; and (6) expert witness expenses. *Blankenship Dec.* ¶ 65. Class Counsel have incurred approximately $300,000.00 in reasonable litigation costs related to the class to date. *Id.* These out-of-pocket costs were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–1178 (S.D. Cal. 2007) (finding that costs such as filing fees, copying costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).

Mr. William Partin, the expert economist Class Counsel retained, has provided critical support for the class claims. *Blankenship Dec.* ¶ 65. In its order denying Defendant's motion to exclude his testimony, this Court recognized that "[t]he formulas Mr. Partin created to perform these calculations are both reliable and helpful: without them, the jury would have no way to determine the damages arising from any unpaid work it finds that the class (or an individual) performed." *Dkt. 355* at 2-3. Moreover, the class benefited from discovery and depositions taken in the individual cases, which proved integral to certifying the class and determining damages here. *Blankenship Dec.* ¶¶ 27- 46. Class Counsel also utilized Mr. Partin's expertise to cross-check the formula utilized in this settlement for accuracy. *Id.* at ¶¶ 56-57, 65. Both experts for the Parties did this. *Id.* His assistance was integral in assuring the fairness of the settlement amounts. *Id.* Thus, the Litigation Expense Payment Class Counsel will be requesting here is reasonable. *Id.*

The Agreement also provides for payment of settlement administration expenses from the common settlement fund. *Exhibit 1* at 7. Here, Rust Consulting has agreed to administer the settlement, including providing Settlement Class Members notice of the settlement by mail, mailing settlement checks, and handling all tax reporting duties associated with the settlement.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 27

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*Blankenship Dec.* ¶¶ 69-71. The estimated settlement administration expenses are approximately $30,000.00. *Id.* at ¶ 70. The settlement administration expenses are reasonable in light of the size of the Class and the necessary duties that must be performed by the Settlement Administrator. *Id.*

**C.    The Proposed Notice Program Provides the Best Notice Practicable to Settlement Class Members**

After it grants preliminary approval of a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B).

Here, the Settlement Administrator will send Class Notices and Claim Verification Forms in the form attached as *Exhibit A* and *Exhibit D*, respectively, to the Settlement Agreement, via email and U.S. Mail to all Settlement Class Members' last known email and physical addresses. *Exhibit 1* at 8-9. The language of the proposed Class Notice is plain and easily understood, providing neutral and objective information about the nature of the settlement. *Blankenship Dec.* ¶ 75; *Exhibit A*. The Class Notice includes the definition of the Class, a statement of each Settlement Class Member's rights under the settlement, an explanation of how Settlement Class Members can object to or opt out of the settlement, and methods for contacting Class Counsel to obtain more information. *Blankenship Dec.* ¶ 75; *Exhibit A*.

If any mailed Notice is returned, the Settlement Administrator must notify the Parties' counsel and take reasonable efforts to locate a current address for the intended recipient. *Exhibit 1* at 8-9. This approach will ensure direct notice reaches as many Settlement Class Members as possible. *Blankenship Dec.* ¶ 75. The Settlement Administrator will also alert Class Counsel to any undelivered Notices and will re-mail or email the Notice to any new address obtained from another source. *Exhibit 1* at 8-9.

The Settlement Administrator will also create a website that includes the full Settlement Notice, key documents, and information regarding important dates relating to the settlement.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 28

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

*See Blankenship Dec.* ¶ 75; Exhibit 1 at 5, 8-9. The Notice will inform Settlement Class Members that information will be available on the website and that they may contact the Settlement Administrator or Class Counsel with questions. *Exhibit A* at 4-5; 8. Furthermore, the Notice details the notice and settlement administration costs and the attorneys' fees and costs and Class Representative service awards that Class Counsel will request in their motion. *Exhibit A* at 3-4. Settlement Class Members will have a reasonable opportunity to respond to these requests if they wish to do so.

This notice program provides the best practicable notice under the circumstances of this case and will be highly effective.

**D.    The Scheduling of a Final Fairness Hearing is Appropriate**

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make a final evaluation. Fed. R. Civ. P. 23(e)(2)(B). Proponents of the settlement may explain the terms and conditions of the settlement and offer argument in support of final approval. *Id.* In addition, Settlement Class Members, or their counsel, who have submitted written objections may be heard in support of or in opposition to the settlement. Fed. R. Civ. P. 23(e)(5). After this hearing, the Court will determine whether the settlement should be finally approved.

The Parties request that this Court set a date for the Final Approval Hearing (the "Settlement Hearing") at least 100 days after this Court enters an order granting Preliminary Approval. This will allow sufficient time for the notice process, objections, and Class Counsel Fees, Class Counsel Litigation Expense Reimbursement, and Class Representatives Service Awards.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court take the following initial steps in the settlement approval process: (1) grant preliminary approval of the settlement agreement; (2) approve the proposed Class Notice; (3) approve the proposed

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Settlement Administrator; (4) approve the proposed procedure for exclusion from or objection

to the Settlement; and (5) schedule the final fairness hearing and related dates.



DATED this 25th day of September 2023.


We hereby certify that this motion contains 9933 words. Accompanying this motion is a Motion to File Overlength Brief.

THE BLANKENSHIP LAW FIRM, PLLC



By: */s/ Scott C. G. Blankenship*
      */s/ Tobin S. Klusty*
      Scott C. G. Blankenship, WSBA No. 21431
      Tobin S. Klusty, WSBA No. 52567
      1000 Second Avenue, Suite 3250
      Seattle, WA 98104
      Telephone: (206) 343-2700
      Facsimile: (206) 343-2704
      Email:    sblankenship@blankenshiplawfirm.com
                   tklusty@blankenshiplawfirm.com
Attorneys for Plaintiffs

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Page 30

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

1

2

## <u>DECLARATION OF SERVICE</u>

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant:

Kenneth E. Payson, WSBA No. 26369          ☐ by Electronic Mail
Sheehan Sullivan, WSBA No. 33189           ☐ by Facsimile Transmission
Davis Wright Tremaine LLP                  ☐ by First Class Mail
920 Fifth Ave., Suite 3300                 ☐ by Hand Delivery
Seattle WA 98104                           ☐ by Overnight Delivery
Email: kennethpayson@dwt.com               ■ by Notification via E-filing System
        sheehansullivan@dwt.com

Melissa K. Mordy, WSBA No. 41879           ☐ by Electronic Mail
Margaret Burnham, WSBA No. 47860           ☐ by Facsimile Transmission
Davis Wright Tremaine LLP                  ☐ by First Class Mail
929 108th Avenue NE, Suite 1500            ☐ by Hand Delivery
Bellevue, WA 98004                         ☐ by Overnight Delivery
Email:  missymordy@dwt.com                 ■ by Notification via E-filing System
        megburnham@dwt.com

DATED this 25th day of September 2023, at Seattle, Washington.

*/s/ Mark Miller*
Mark Miller
Paralegal

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700