THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY BOLDING, MICHAEL MANFREDI, and SARAH WARD, individually and on behalf of a class of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>BANNER BANK, a Washington Corporation,<br><br>　　　　　　Defendant. | No. 2:17-cv-00601-RSL<br><br>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>NOTE ON MOTION CALENDAR: February 22, 2024 at 11:00 a.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page i

**The Blankenship Law Firm, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

## I.  RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure ("FRCP") 23(e), Plaintiffs Kelly Bolding, Michael Manfredi, and Sarah Ward ("Plaintiffs" or "Class Representatives") respectively move this Court for final approval of the class action settlement ("Settlement") reached between them and Banner Bank ("Defendant").

This Court should find that the Settlement is fair, reasonable, and adequate because it provides Settlement Class Members[1] with a substantial recovery. If this Court grants this Motion and Plaintiffs' Motion for Attorney's Fees and Costs and Class Representative Service Awards ("Petition"), accurate calculations show Defendant must pay over 93 percent of the $15 million Settlement Fund as a total benefit to Settlement Class Members. This includes Defendant paying Settlement Class Members cash payments totaling approximately $8.7 million. And it provides this substantial recovery to a Settlement Class of now less than 252 members, making Settlement Class Members' individual recovery remarkably high compared with settlements in similar class actions cases.[2]

Notably, although settlements often require compromise, this recovery would still be significant if obtained at trial. And this Settlement allows Settlement Class Members to obtain this substantial recovery without having to face the risks of trial or the inevitable appeal that would follow a jury-verdict in their favor.

The Settlement Class also has also received benefits beyond the Settlement. This lawsuit led to Defendant fixing its timekeeping system so Settlement Class Members and other MLOs could input the time they worked each day rather than just "8 hours." It also caused

---

[1] Unless defined herein, capitalized terms have the same meaning ascribed to them in the Settlement Agreement. *Dkt. 377-1* at 2-5.

[2] *See Thomas v. Kellogg Co.*, No. 3:13-cv-05136 (W.D. Wash. May 18, 2018), Dkts. 537 & 560 ($16.75 million settlement for 750 class members in a FLSA collective action); *Syed v. M-I, L.L.C.*, 1:12 Civ. 01718, 2017 WL 3190341, at *4 (E.D. Cal. July 27, 2017) ($7 million settlement for 467 class members in a FLSA collective action); *Bland v. PNC Bank, N.A.*, No. 2:15-cv-01042 (W.D. Pa. April 11, 2017), Dkts. 359 & 365 ($16 million settlement for 3,431 class members in a FLSA collective action).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Page 1

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Defendant's executives to officially notify MLOs to track all hours worked, including overtime. These efforts helped ensure MLOs received and would continue to receive pay for all hours worked.

The highly favorable reaction of Settlement Class Members to the proposed Settlement also strongly supports final approval. After the Court granted preliminary approval of the Settlement, Rust Consulting, Inc. ("Settlement Administrator") disseminated notice and claim forms to 252 Settlement Class Members. To date, 118 out of the assumed 162 Settlement Class Members who worked for Defendant after October 31, 2017 ("Post-Net") verified that they regularly worked unreported, uncompensated overtime for Defendant Post-Net. And many of these Settlement Class Members were highly compensated and worked for Defendant for several years, meaning their claims accounted for a larger percentage of the available Post-Net cash payments. Most importantly, *not a single Settlement Class Members requested exclusion from or objected to the Settlement*.

For the reasons set forth in this memorandum and the supporting documents, the settlement is fair and reasonable and serves the best interests of the Class. It also fully satisfies federal courts' substantial interest in utilizing settlements to encourage fair resolution of class action lawsuits. It is an excellent recovery for Settlement Class Members.

Accordingly, the Parties respectfully ask this Court to grant final approval of the Settlement.

## II. STATEMENT OF FACTS

### A. Litigation History

Class Counsel summarized the history of this case in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (hereinafter "Preliminary Approval Motion") and refrains from repeating that summary here. *Dkt. 376* at 3–8. The Court granted the motion on October 4, 2023. *Dkt. 380*.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 2

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

**B.    Settlement Negotiations**

As detailed in the Preliminary Approval Motion and the Petition, the Settlement is the product of serious, informed, and arm's-length negotiations by capable and experienced counsel. *Dkt. 376* at 6-7*; Dkt. 382* at 12-13.

The Parties underwent two separate mediations before reaching the Settlement. They conducted extensive discovery and litigated several substantive and dispositive motions. And the Parties only underwent the second mediation once they were facing trial with no other pretrial motions to be filed.

The Parties finally agreed to the key terms of the Settlement after the second mediation. But the Parties did not stop negotiating then – they spent several more months negotiating every aspect of the Settlement. These negotiations continued even after this Court granted preliminary approval of the Settlement as Class Counsel pushed to ensure that qualifying Settlement Class Members could email their claim verification forms to the Settlement Administrator rather than be limited to mailing hard copies of the forms. *Dkt.383* ¶¶45-48.

Altogether, without even considering the first mediation, the Parties spent nearly a year negotiating the terms and execution of the Settlement. As the pleadings show, these negotiations were adversarial, non-collusive, and at arm's length. *Dkt. 377* ¶17.

**C.    Settlement Terms**

The terms of the Settlement are contained within the Agreement. *See Dkt. 377-1* at 1-18. For purposes of final approval, the following summarizes key provisions within the Agreement.

1.    <u>The Settlement Class</u>

When this Court granted preliminary approval of the Settlement, it conditionally certified the Settlement Class, which is defined as:

> All current and former [MLOs] who were employed by [Defendant] or its predecessor, American West Bank, in Washington State at any time from April 17, 2014, to [October 4, 2023].

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Page 3

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

> All current and former MLOs who were employed by [Defendant] or its predecessor, American West Bank, in Oregon at any time from April 17, 2011, to [October 4, 2023].

> All current and former MLOs who were employed by [Defendant] or its predecessor, American West Bank, in California at any time from April 17, 2013, to [October 4, 2023].

*Dkt. 380 at* ¶2. Ms. Garrison was also included as a Settlement Class Member, and her Settlement Class Period is April 17, 2014, to her last date of employment with Defendant.

Anyone who previously opted out of the Class after receipt of the original class notice is not subject to the Settlement's terms or benefits. *Id.* The Settlement Class also excluded any person who timely and validly requested exclusion from the Settlement Class, but nobody did so. *Id.*; *Supplemental Declaration of Scott C.G. Blankenship* ("*Dkt. 394*") ¶¶55-56.

       2.   <u>Settlement Relief</u>

Pursuant to the Agreement, if this Court's final approval, Defendant will pay approximately over $14 million of the $15 million Settlement Fund as consideration for the release of claims described further below. *Dkt. 377-1 at 4-5*; *Declaration of Tobin S. Klusty* ("*Dkt. 395*") ¶18. This amount covers attorney's fees and costs, Class Representative Service Awards, settlement administration costs, and cash payments to eligible Settlement Class Members. *Id.* The amount of cash payments Defendant will provide to Settlement Class Members, called the "Net Settlement Fund," is the Settlement Fund minus settlement administration costs, attorney's fees and costs, and Class Representative Service Awards. *Dkt. 377-1 at 3*. If this Court grants the Petition, Class Counsel estimates that Defendant will pay Settlement Class Members approximately $8,693,093 or more in cash payments. *Dkt. 395* ¶¶17-18. These cash payments will be paid to eligible Settlement Class Members based on their net share of the Net Settlement Fund. *Dkt. 377-1 at 5-7*.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Page 4

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

1

2    *a.    Net Share Calculations*

3        Net share is determined by first allocating points to each Settlement Class Member

based on the number of pay periods he or she had within the qualifying time period and

4    multiplying that by the average compensation (excluding any paid overtime) he or she received

5    for those pay periods. *Dkt. 377-1* at 5-6. The Agreement provides the specific equation for the

6    point allocation as follows:

7        multiply[] such Settlement Class Member's average pay period compensation,
         excluding any paid overtime, for the periods during which the individual held
8        the MLO position during their respective Settlement Class Periods ("Relevant
         Payroll Periods") by . . . such individual's total number of Relevant Payroll
9        Periods.  This number will be the Settlement Class Member's "Base Points."

10   *Id.* at 6.

11       From there, the Settlement uses the following equation to adjust each Settlement Class

12   Member's base points to account for prejudgment interest:

13       Establish the mid-point between the Settlement Class Member's earliest payroll
         date during the Relevant Payroll Periods and the last date of payroll during the
14       Relevant Payroll Periods.  The midpoint of these two dates will be the "Average
         Effective Date of Payroll;"
15
         Calculate the number of years (including fractions of a year) between the
16       Average Effective Date of Payroll and the Settlement Date.  This is the
         "Effective Prejudgment Interest Period;"
17
         Calculate the "Interest Adjustment Factor" by multiplying the Effective
18       Prejudgment Interest Period by the appropriate prejudgment interest rate for the
         Settlement Class Member's state.  This results in the "Interest Adjustment
19       Factor;" and

20       Multiply half of the Base Points (previously calculated under Paragraph 3.01(a)
         of the Settlement Agreement) by the Interest Adjustment Factor and add that
21       product to the Base Points.  This results in the "Individual Points" allocation for
         the Settlement Class Member.
22
     *Id.* This has been vetted with and approved by the Parties' respective experts. *Dkt. 377* ¶¶ 56-
23
     57.
24

25

26

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

After this adjustment, Settlement Class Members' individual points are added together to establish the "Total Points" available. *Dkt. 377-1* at 6. Each Settlement Class Member's net share of the Settlement Fund is then "calculated by dividing the sum of the Settlement Class Member's Individual Points by Total Points." *Id.*

While the Agreement indicated that the Settlement will "be reduced by the dollar equivalent of the sum of half of the Net Shares of any Settlement Class Members who opt out," no Settlement Class Members opted out of the Settlement. *Id.*; *Dkt. 394* ¶56.

> b.    *Payments to Settlement Class Members*

All Settlement Class Members will automatically receive cash payments based on their net share of the Net Settlement Fund for time worked on or before October 31, 2017. *Dkt. 377-1* at 7. Those who previously opted into the FLSA collective action will also automatically receive cash payments based on their net share of the Net Settlement Fund for time worked between November 1, 2017, to October 4, 2023. *Id.*

Settlement Class Members who did not previously opt into the FLSA collective action will also receive cash payments based on their net share of the Net Settlement Fund for time worked between November 1, 2017, to October 4, 2023, if they timely submitted a claim form verifying that they regularly worked unreported, uncompensated overtime during their employment with Defendant between those dates. *Id.* 162 of the 252 Settlement Class Members worked for Defendant between those dates and 118 of them timely submitted completed claim verification forms. *Dkt. 395* ¶5. Those claimants account for over 83.5 percent of the cash payments available from the claims-made portion of the Settlement since many of them were high earners. *Dkt. 395* ¶16.

> c.    *Attorney's Fees and Costs and Class Representative Service Awards*

The Settlement Fund also covers attorney's fees and expenses and Class Representative Service awards, conferring a substantial benefit to all Settlement Class Members. Plaintiffs separately filed the Petition on November 3, 2023. *Dkt. 382*. The Petition summarizes the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 6

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

substantial benefits Class Counsel and the Class Representatives conferred upon the Settlement Class in obtaining this Settlement, which justifies the requested service awards, attorney's fees, and cost reimbursement to be taken from the Settlement Fund. *Id.* The Settlement Administrator posted the Petition on the Settlement Website so that Settlement Class Members could easily review it before the deadline to exclude themselves from the Settlement or object to the Settlement or the Petition. *Dkt. 394 ¶26.*

d.        Administration Costs

Class Counsel retained the Settlement Administer to administer the Settlement and process claims. The Settlement Administer provided an estimate of $30,000.00, which the Parties agreed was reasonable given the scope of the work and its vast experience administering class action settlements across the country. *Dkt. 377 ¶¶ 69-70.*

After this Court granted preliminary approval of the Settlement, the Settlement Administrator prepared and distributed Notices (including notice to appropriate state and federal officials under the Class Action Fairness Act), established and maintained the Settlement Website, and processed claim verification forms and exclusion requests. The Settlement Administrator also updated its estimate to administer the Settlement to approximately $17,000 – nearly half the price of its initial estimate. If the first estimate was reasonable, the same can certainly be said of the most recent estimate. *Dkt. 394 ¶6.*

With this Court's final approval, the Settlement Administrator will be responsible for making all distributions required under the Agreement, including cash payments to Settlement Class Members and payments to Class Counsel for attorney's fees and costs. *Dkt. 377-1* at 7. Notably, if any Settlement Class Member's check remains uncashed after 180 days, the amount of such check will be paid to the Legal Foundation of Washington. *Id.* at 12.

3.        <u>Scope of the Release</u>

Once the Settlement is final and effective, Settlement Class Members shall release and covenant not to sue for any and all claims that exist or might exist against Defendant or AWB

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 7

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

"regarding compensation related to or arising out of claims for unpaid wages, overtime, meal periods, rest breaks, final pay, wage statements/records, including all associated liquidated, double, treble, or other exemplary damages, and penalties under federal, state, or other law." *Dkt. 377*-1 at 12-13.

Moreover, Class Representatives shall release and covenant not to sue for any and all claims that exist or might exist against Defendant or AWB "arising out of any conduct or omissions occurring as of [this Court's] Final Approval [of this proposed class action settlement] that might be attributable to Defendant or [AWB]." *Id.* at 13-14.

No Settlement Class Member, however, will waive any claim based on conduct occurring after final approval, any claim arising under this Agreement, or any claim that he or she cannot waive under law. *Id.* at 12-14.

### D.     Notice of Settlement

With the order granting preliminary approval of the Settlement Agreement, the Court authorized dissemination of Notice in the manner stipulated in the Settlement Agreement. *Dkt. 380* at ¶7. Pursuant to that order, Notice was directly mailed and/or emailed to all 252 Settlement Class Members with multiple efforts to locate the correct contact information by Class Counsel.[3] *Dkt. 394* ¶¶20-25.

The Notice provided the best possible form of notice to Settlement Class Members about the Settlement. It summarized the Settlement in plain English and clearly set forth the deadlines to request exclusion, object to the settlement, and submit claim verification forms. *Dkt. 377* ¶75. It included the amounts sought for attorney's fees and costs, Class

---

[3] The Settlement Administrator mailed 255 Notices to addresses for Settlement Class Members. The Settlement Administrator also emailed the Notices to 197 email accounts listed for Settlement Class Members. Defendant provided the physical addresses and email addresses that it had for Settlement Class Members in its possession. Of the 255 mailed Notices, only 19 were initially returned as undeliverable. After obtaining forwarding addresses and running comprehensive traces, the Settlement Administrator re-mailed 14 Notices to Settlement Class Members with updated addresses. Throughout the Notice period, Class Counsel also notified the Settlement Administrator about changes of address for Settlement Class Members. *Dkt. 394* ¶¶19-24.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Representatives Service Awards, and the estimated costs for administration of the settlement. *Dkt. 377-1* at 20-22. It provided Settlement Class Members with an explanation of the formula that will be used to calculate their cash awards. *Id.* It also included a claim verification form that Settlement Class Members needed to submit to receive cash payments for uncompensated, unreported overtime that they regularly worked for Defendant after October 31, 2017.

The Notice also directed Settlement Class Members to contact Class Counsel for questions and refer to the Settlement Website for further information. *Id.* at 23-24, 27. The Settlement Website (www.bankwagematter.com) provided detailed information beyond the Notice – it included copies of the Settlement Agreement, Claim Verification Forms, this Court's Preliminary Approval Order, the complaint, the Petition, and other relevant pleadings. Like the Notice, the Settlement Website also instructed Settlement Class Members to contact Class Counsel if they had any questions about the Settlement. *Dkt. 394* ¶26.

The Notice was effective. Class Counsel received numerous calls and emails from Settlement Class Members seeking information about the Settlement. Class Counsel also directly contacted many Settlement Class Members to ensure that they received the Notice and answer any questions they may have had. *Dkt. 394* ¶¶19-26.

Based on these communications, Class Counsel firmly believes that the Notice sufficiently notified Settlement Class Members about the Settlement and how it implicated their rights. Indeed, Class Counsel personally emailed, called, and texted Settlement Class Member who worked for Defendant Post-Net after taking great efforts to find their phone numbers, addresses, and email addresses. *Dkt. 394* ¶¶17-26.

E.    **Settlement Class Members' Response to the Settlement**

Settlement Class Members' response to the Settlement was overwhelmingly positive. The Notice, which was emailed and mailed to Settlement Class Members and posted on the Settlement Website, informed Settlement Class Members that objections to the Settlement had to be received by the Court and the parties' counsel by December 18, 2023. The Notice also

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 9

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

informed them that requests for exclusion from the Settlement also had to be postmarked or received by the Settlement Administrator by December 18, 2023. *Not a single Settlement Class Member, however, filed an objection or opted out. Dkt. 394* ¶47.

That is not all – an overwhelming majority of Settlement Class Members who could verify claims to qualify for Post-Net cash payments submitted did so. As stated above, 118 of the assumed 162 Settlement Class Members who worked for Defendant Post-Net verified their claims. And many of those Settlement Class Members were high earners, accounting for over 83.5 percent of the cash payments available from the claims-made portion of the Settlement. By submitting claim forms, not only did these Settlement Class Members tacitly support the Settlement, but they also ensured that Defendant will pay the Settlement Class well beyond $7.5 million in cash payments. *Dkt. 395* ¶¶16-18.

Class Counsel also spoke with many Settlement Class Members over the phone during the notice period to answer their questions and assist them with verifying their claims. During these calls, Settlement Class Members were overwhelmingly grateful for the results achieved under the Settlement. Many expressed relief that they were finally being fairly compensated for the hard work they performed for Defendant. *Dkt. 394* ¶48.

### F.    Plan of Distribution

No later than thirty-eight calendar days after this Court grants final approval of the Settlement, the Settlement Administrator "shall provide Class Counsel and Defendant's counsel with the (i) the names and addresses of Eligible Claimants whose claims have been approved, and (ii) the names and addresses of claimants deemed not eligible by the Settlement Administrator, and a brief statement of the reason(s) why the claim has been disallowed." *Dkt. 377-1* at 3, 11-12. Within seven days after receipt of this information, the Parties may submit a written objection to the Settlement Administrator's findings. *Id.* at 11-12. If a written objection is timely submitted and the Parties cannot resolve the dispute within five calendar days

thereafter, the Parties shall submit their disagreement to the Court or, upon mutual agreement, to Mediator David Rotman for disposition. *Id.*

Within thirty calendar days after the deadline for the Parties to object to the Settlement Administrator's list of eligible claimants or, if there is a dispute regarding those objections, fourteen calendar days after the day the dispute is resolved, the Settlement Administrator shall distribute issue checks to all eligible Settlement Class Members for their allocated Settlement amounts. *Id.* at 3, 12. The checks will be mailed to each Settlement Class Member's respective last-known home addresses, which includes any updated address the Settlement Administrator discovered or received during the Class Notice period. *Id.* at 12.

Having reviewed each of the claim verification forms submitted, however, Class Counsel cannot think of any legitimate reason to deem any of those forms ineligible. *Dkt. 394* ¶45.

All checks mailed to Settlement Class Members shall remain valid for 180 calendar days. *377-1* at 12. If any check remains uncashed for more than 180 calendar days, the amount of such checks shall be paid to the Legal Foundation of Washington. *Id.*

### III. EVIDENCE RELIED UPON

Plaintiffs rely on all pleadings and papers referenced herein.

### IV. AUTHORITY AND ARGUMENT

Final approval of the Settlement is appropriate because it is fair, adequate, and reasonable.

### A.    The Settlement is Fair, Reasonable, and Adequate

The standard for granting approval of a class action settlement is whether the settlement is "fair, reasonable, and adequate." FRCP 23(e). This determination rests within the sound discretion of the court. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). But courts begin their analysis with an "initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court

approval." Newberg on Class Actions § 11:41 (4th ed. 2006) ("Newberg"); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). This is because there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs*, 955 F.2d at 1276.

In deciding whether a proposed settlement is fair, adequate and reasonable, courts in the Ninth Circuit balance several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Ross v. Bar None Enters.*, No. 2:13-cv-00234-KJM-KJN, 2015 U.S. Dist. LEXIS 29327, at *9 (E.D. Cal. Mar. 9, 2015) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Here, these factors demonstrate that the Settlement is fair, reasonable, and adequate. It provides over $14 million in relief to a Settlement Class of only 252 members. This significant recovery was the product of arm's length negotiations that stretched out for two mediations and nearly seven years of extensive litigation. Altogether, this Settlement provides Settlement Class Members with the best, most efficient vehicle for Settlement Class Members to receive the relief they claim they are entitled.

1

      1.    <u>The relief provided to Settlement Class Members under the Settlement is</u>
<u>significant.</u>

     The amount of the Settlement – *over $14 million of the $15 million Settlement Fund* –

speaks for itself. This large sum benefits Settlement Class Members by providing substantial

cash payments and covering settlement administration costs, attorney's fees and costs, and

Class Representative Service Awards. And it provides this significant result to a class of only

252 Settlement Class Members. Settlements in similar cases often provide far less.[4]

     As part of this large sum, Settlement Class Members will receive substantial cash

payments that adequately compensate them for unpaid overtime. In total, if this Court grants

the Petition, Class Counsel estimates that Defendant will pay Settlement Class Members

approximately $8,693,093.45 in cash payments.[5] Based on calculations from Plaintiffs' expert,

these cash payments should compensate each Settlement Class Member receiving a cash

payment with between more than five to ten hours of uncompensated overtime pay per week of

his or her applicable period of employment with Defendant. *Dkt. 377* ¶57. In other words,

many Settlement Class Members will receive thousands of dollars.

     Moreover, under the Settlement, no Settlement Class Member is excluded from relief or

consigned to inferior benefits. Settlement Class Member will not pay a single dollar of their

pockets to cover the attorney's fees and costs that Class Counsel incurred to obtain this

significant result. And the only Settlement Class Members who will not receive cash payments

under the Settlement are the relatively few who only worked for Defendant after October 31,

2017, and failed to verify that they regularly worked uncompensated, unreported overtime after

that date. Those who failed to verify their claims did so knowingly as the Settlement gave them

the opportunity verify their claims for cash payments with little effort. *See Dkt. 377-1* at 46-47.

     Therefore, even without considering the other factors, the relief alone proves that this

Settlement is an excellent result for the Settlement Class.

---

[4] *Supra* note 2.
[5] *Dkt. 395* ¶17.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

2.    <u>The Settlement is the product of serious, arm's-length negotiations by capable and experienced counsel.</u>

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. *See Hanlon*, 150 F.3d at 1027 (finding no basis to disturb settlement where no evidence suggested the settlement was negotiated in haste). Indeed, a "presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).

The settlement here is the result of intensive, arm's-length negotiations between skilled and experienced attorneys who are highly familiar with class action litigation and the legal and factual issues of this case. *Dkt. 377* ¶¶2-17. In negotiating this Settlement, Class Counsel had the benefit of years of experience handling wage-and-hour class actions while working with the specific facts and law of this case for over seven years. *Id.* Furthermore, the Settlement only occurred after Class Counsel litigated and won several highly contested motions, which resulted in Plaintiffs obtaining and analyzing data sufficient to evaluate their claims. *Id.* ¶¶27-33. The docket reflects the massive efforts undertaken by Class Counsel on behalf of the Settlement Class to get to this point. *Id.*

Ultimately, the last mediation was instrumental in bringing the Parties closer to a final resolution. *Id.* ¶¶47-55. After agreeing to Settlement amount at that mediation, the Parties spent nearly an entire year in continued, hard-fought negotiations to finalize the Settlement's terms. *Id.* Eventually, the Parties executed the Settlement, which provides Settlement Class Members with substantial recovery while simultaneously limiting the risks associated with continued litigation.

Accordingly, Class Counsel and the Class Representatives support the Settlement as fair, reasonable, adequate, and in the best interests of the Class, which itself supports the reasonableness of this Settlement. *Id.* ¶78.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

3.    <u>The Parties reached the Settlement at an appropriate stage.</u>

The reasonableness of the Settlement is further evidenced by the fact that it was reached after six years of hard-fought litigation, which included certification of the collective and class actions, exhaustive discovery, numerous rounds of pre-trial motions, and Defendant's attempt to appeal this Court's order grant class certification to the Ninth Circuit. It also only occurred after trial preparations were well underway. The Parties had completed discovery and litigated all necessary pretrial motions. In fact, the last mediation was one of the last opportunities the Parties had to reach a resolution short of trial.

There is no question that the Parties reached this Settlement only after the claims were tested in litigation and both sides investigated the relevant facts and pertinent law.

4.    <u>The Settlement is reasonable and more than adequate considering the strength of Class Representatives' case and the risks of further litigation.</u>

Not only is the Settlement significant, but it provides Settlement Class Members with substantial benefits without forcing them to endure further litigation, which will exponentially increase litigation fees, costs, and delay, and add even more uncertainty in the likely event Defendant appeals after trial. *Dkt. 377* ¶80.

Even though they successfully certified collective and class actions for Settlement Class Members and defeated Defendant's summary judgment motion, the Settlement Class would face considerable risk at trial. Juries can be uncertain. And such uncertainty is compounded here because the issue as to whether Settlement Class Members must prove their damages on an individual basis is still yet to be decided. *Dkt. 347.* If this Court requires them to do so, the damages phase of the trial will require testimony from Settlement Class Members across several states, making such litigation costly and highly risky with many moving parts. And the issue of proving damages for time Settlement Class Members worked after October 31, 2017, is already inherently risky since Defendant purportedly improved its pay practices and procedures after that date. *Dkt. 383* ¶53.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Trial is not the only risk Settlement Class Members faced. Defendant would likely appeal any adverse finding from a jury. Indeed, Defendant already attempted to appeal class certification to the Ninth Circuit and vigorously pursued numerous issues – from statutes of limitations to class-wide proof of damages – that could have significantly limited Settlement Class Members' recovery. *Dkt. 383* ¶54.

Finally, even the Settlement Class saw this case through trial and appeals successfully, the facts would be staler and the costs and detriments of delay would continue to mount. Settlement Class Members would likely have to wait several more years before receiving payment, which could possibly be less than what they would obtain through this Settlement. Accordingly, by agreeing to this Settlement, Class Counsel has cemented a victory with a substantial recovery for Settlement Class Members and thus beaten the long odds they faced throughout. *Dkt. 383* ¶¶55-56.

5.   <u>Settlement Class Members' response to the Settlement was overwhelmingly positive.</u>

Notably, Settlement Class Members' response to the Settlement has been overwhelmingly positive. Not a single Settlement Class Member filed an objection or requested to be excluded. *Dkt. 394* ¶¶54-56. In fact, over 72.8 percent of Settlement Class Members who worked for Defendant Post-Net submitted claim verification forms and many of them were highly compensated and worked for Defendant for several years. *Dkt. 395* ¶¶10, 15-16. With these efforts, Class Counsel's calculations show Settlement Class Members not only tacitly supported the Settlement, but they claimed over 83.5 percent of the cash payments available from the claim verification portion of the Settlement. *Id.* ¶16. They ensured that the Settlement Class will receive well beyond $7.5 million in cash payments that Defendant agreed to make available as a minimum under the Settlement.

In fact, Class Counsel's calculations show that, if the Petition is granted, Settlement Class Members will avail themselves to over 93 percent of the Settlement Fund, which will likely amount to more than $14,083,578.76. *Id.* ¶17.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

Most importantly, Class Counsel spoke with many Settlement Class Members during the notice period and they were overwhelmingly grateful for the results achieved under the Settlement. *Dkt. 394* ¶54-56. This is not surprising – the Settlement helps ensure that Defendant pays them the money they are owed.

These factors demonstrate the Settlement is more than adequate and reasonable – the Settlement is an excellent result for Settlement Class Members.

## B.    The Requested Attorney's Fees and Costs and Class Representative Service Awards Are Reasonable

On November 3, 2023, Plaintiffs filed the Petition, which requested awards for attorney's fees and costs and Class Representative service awards. *Dkt. 382*. No Settlement Class Members lodged any objections to the Petition. *Dkt. 394* ¶56.

Plaintiffs will not repeat the arguments within the Petition, but in summary, Plaintiffs ask this Court to award one third of the $15 million Settlement Fund as attorney's fees. Given the result achieved here, the experience, skill, and effort required to achieve this result, the risks of continued litigation, the contingent fee nature of the case and the financial burden carried solely by Class Counsel, fee awards made in similar cases, and a lodestar multiplier of less than 1.409,[6] Class Counsel submits that the requested attorney fee award is reasonable and appropriate here. *Dkt. 382* at 2-24.

Plaintiffs also asked this Court to award over $300,000 in litigation expenses from the Settlement Fund. Since filing the Fee Petition, Class Counsel has incurred an additional $2,227.58 in litigation expenses. Accordingly, Plaintiffs ask for a total reimbursement of $302,712.89 in outstanding expenses necessarily incurred in prosecuting this case on behalf of the Settlement Class. *Dkt. 394* ¶¶28-31. The outstanding expenses include filing and service

---

[6] Since the filing of the Petition, Class Counsel has performed more than 330 hours of additional work on behalf of the Settlement Class. This work included, but was certainly not limited to, several hours contacting and speaking with Settlement Class Members, drafting this Motion, and replying to the improper and misleading arguments Defendant made in response to the Fee Petition. These additional hours raised Class Counsel's lodestar to $3,528,287.75. *Dkt. 394*¶¶28-31.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 17

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

fees, copying and mailing expenses, legal research expenses, mediation expenses, depositions and travel expenses, and expenses related to the hiring of Mr. William Partin, a respected expert witness who analyzed voluminous and complex data to determine damages for the Settlement Class. *Dkt. 382* at 2-3, 24-25.

Lastly, Plaintiffs asked this Court to award $20,000 service awards from the Settlement Fund to each Class Representative, totaling $60,000. These awards reasonably compensate Class Representatives for the substantial work they performed on behalf of the Settlement Class. It also rewards for putting their professional reputations and livelihood at risk in the process. *Dkt. 382* at 3-4, 25-27.

### C.    The Settlement Administration Expenses Are Reasonable

The Agreement also provides for payment of Settlement Administration expenses from the Settlement Fund. *Dkt. 377-1* at 7. Here, Rust Consulting agreed to administer the Settlement, including providing Settlement Class Members notice of the settlement by mail and email, receiving and verifying claim forms, mailing checks, and handling all tax reporting duties associated with the Settlement. *Dkt. 377* ¶¶69-71. Rust estimated the Settlement Administration to cost $30,000.00. *Id.* ¶70. But after receiving the order granting preliminary approval of the Settlement, Rust submitted a new estimate of $17,000. *Dkt. 394* ¶6. These expenses are reasonable in light of the size of the Class and the necessary duties that must be performed by the Settlement Administrator. *Id.*

### V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully ask this Court to (1) finally approve the Settlement; (2) finally certify the Settlement Class; and (3) approve the proposed plan of distribution of the Settlement Funds.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

DATED this 8th day of January 2024.


THE BLANKENSHIP LAW FIRM, PLLC


By: */s/ Scott C. G. Blankenship*
    */s/ Tobin S. Klusty*
Scott C. G. Blankenship, WSBA No. 21431
Tobin S. Klusty, WSBA No. 52567
1000 Second Avenue, Suite 3250
Seattle, WA 98104
Telephone: (206) 343-2700
Facsimile: (206) 343-2704
Email:   sblankenship@blankenshiplawfirm.com
        tklusty@blankenshiplawfirm.com
Attorneys for Plaintiffs

We hereby certify that this motion contains 5942 words.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
Page 19

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

## <u>DECLARATION OF SERVICE</u>

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant:

Kenneth E. Payson, WSBA No. 26369
Sheehan Sullivan, WSBA No. 33189
Davis Wright Tremaine LLP
920 Fifth Ave., Suite 3300
Seattle WA 98104
Email: kennethpayson@dwt.com
       sheehansullivan@dwt.com

☐ by Electronic Mail
☐ by Facsimile Transmission
☐ by First Class Mail
☐ by Hand Delivery
☐ by Overnight Delivery
■ by Notification via E-filing System

Melissa K. Mordy, WSBA No. 41879
Margaret Burnham, WSBA No. 47860
Davis Wright Tremaine LLP
929 108th Avenue NE, Suite 1500
Bellevue, WA 98004
Email:  missymordy@dwt.com
       megburnham@dwt.com

☐ by Electronic Mail
☐ by Facsimile Transmission
☐ by First Class Mail
☐ by Hand Delivery
☐ by Overnight Delivery
■ by Notification via E-filing System

DATED this 8th day of January 2024, at Seattle, Washington.


*/s/ Mark Miller*         
Mark Miller
Paralegal

The Blankenship Law Firm, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700